Michael R. Johnson, Esq. (A7070)
Douglas M. Monson, Esq. (A2293)
David H. Leigh, Esq. (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  dmonson@rqn.com
Email:  dleigh@rqn.com
*Counsel for Gil A. Miller, Chapter 11 Trustee of the Consolidated Estate*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 10-37546 |
| **DEE ALLEN RANDALL; HORIZON AUTO FUNDING, LLC; INDEPENDENT COMMERCIAL LENDING, LLC; HORIZON FINANCIAL CENTER I, LLC; HORIZON MORTGAGE AND INVESTMENT INC.; and HORIZON FINANCIAL & INSURANCE GROUP INC.;** | (Substantively Consolidated with Case Nos. 11-34826, 11-34830, 11-34831, 11-34833 and 11-34834)<br><br>Chapter 11<br><br>Honorable Joel T. Marker |
| Debtors. | |

**[PROPOSED] CHAPTER 11 TRUSTEE'S LIQUIDATING PLAN OF
REORGANIZATION DATED SEPTEMBER 9, 2013**

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND CONSTRUCTION OF TERMS ........................... 1

ARTICLE II CLASSIFICATION OF CLAIMS ....................................................... 15
    2.1     Classified Claims. ................................................................................. 15
    2.2     Unclassified Claims. ............................................................................. 25

ARTICLE III VOTING ON, ACCEPTANCE, AND REJECTION OF THE PLAN ................. 25
    3.1     Voting Classes and Acceptance of Plan. .............................................. 25
    3.2     Non-Voting Classes. ............................................................................. 25
    3.3     Voting Rights of Holders of Disputed Claims...................................... 26
    3.4     Nonconsensual Confirmation. ............................................................... 26

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS ...................................... 26
    4.1     Classes 1 – 14: Secured Claims. .......................................................... 26
    4.2     Class 15 - Priority Unsecured Claims.................................................. 27
    4.3     Class 16 - Non-Investor Trade Creditor Unsecured Claims.............. 28
    4.4     Class 17 - Victim Claims. .................................................................... 28
    4.5     Class 18 - Equity Interests................................................................... 29

ARTICLE V TREATMENT OF UNCLASSIFIED CLAIMS - ALLOWED
           ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY
           TAX CLAIMS........................................................................................ 31
    5.1     Non-Classification. ............................................................................... 31
    5.2     Administrative Expense Claims. .......................................................... 31
    5.3     Priority Tax Claims. .............................................................................. 32

ARTICLE VI IMPLEMENTATION OF THE PLAN .............................................. 32
    6.1     General.................................................................................................. 32
    6.2     Administration of the Consolidated Estate by Trustee. ....................... 33
    6.3     Retention of Property of Consolidated Estate; Estate Assets to Remain in
           Consolidated Estate; No Revesting of Consolidated Estate Assets. ................. 33
    6.4     Liquidation of Property and Distribution of Net Proceeds................................. 33
    6.5     Restitution............................................................................................. 34
    6.6     Preservation of Causes of Action and Defenses. ................................. 34
    6.7     No Waiver of Legal Privileges. ............................................................ 35
    6.8     Common Interest Agreement Between and Among the Trustee and
           Private Actions Trust Participating Creditors. ................................................. 35
    6.9     Private Actions Trust. ........................................................................... 35
    6.10    Prosecution and Resolution of Estate Litigation Claims. .................... 39
    6.11    Non-Discharge of Randall and Corporate Debtors and Injunction. .................. 40

ARTICLE VII CLAIM OBJECTIONS AND DISTRIBUTION OF CONSIDERATION .......... 42
    7.1     Objections to Claims. ........................................................................... 42
    7.2     Disputed Claims. .................................................................................. 42

7.3    Estimation of Claims. ....................................................................................... 42
7.4    Disputed Claims Reserve, Operating Reserve, and Maintenance of Cash. ........ 43
7.5    Method of Distributions Under the Plan............................................................. 43
7.6    Unclaimed Funds. .............................................................................................. 44

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................... 45
8.1    Executory Contracts and Unexpired Leases. ...................................................... 45
8.2    Rejection Damage Claims And Contract Rejection Claim Bar Date. ................ 45

ARTICLE IX CONDITIONS PRECEDENT TO EFFECTIVE DATE...................................... 46
9.1    Conditions Precedent to Effectiveness. .............................................................. 46
9.2    Waiver of Conditions.......................................................................................... 46

ARTICLE X RETENTION OF JURISDICTION ...................................................................... 46

ARTICLE XI MISCELLANEOUS .............................................................................................. 48
11.1    Continuation of Injunctions or Stays Until Effective Date................................ 48
11.2    Notice of Effective Date. .................................................................................... 48
11.3    Limitation of Liability. ....................................................................................... 48
11.4    Execution of Documents and Corporate Action................................................. 49
11.5    Default of Plan.................................................................................................... 49
11.6    Setoffs and No Waiver. ...................................................................................... 49
11.7    Amendment or Modification of the Plan............................................................. 50
11.8    Revocation or Withdrawal of the Plan. .............................................................. 50
11.9    Severability......................................................................................................... 50
11.10    Exhibits............................................................................................................... 51
11.11    Binding Effect..................................................................................................... 51
11.12    Notices. ............................................................................................................... 51
11.13    Governing Law. .................................................................................................. 51
11.14    Post-Confirmation Administration - Fees, Reports, Final Decree...................... 51
11.15    Headings. ............................................................................................................ 52
11.16    Inconsistency. ..................................................................................................... 52

Gil A. Miller, the duly-appointed Chapter 11 Trustee in the above-captioned substantively consolidated bankruptcy case ("Trustee"), hereby proposes the following Chapter 11 Trustee's Liquidating Plan of Reorganization ("Plan") under Section 1121 of the Bankruptcy Code.

On December 20, 2010 (the "Randall Petition Date"), Dee Randall ("Randall") commenced Case No. 10-37546 (the "Randall Case") by filing a voluntary petition for relief under Chapter 11 of the title 11 of the United States Code with the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court").  The Trustee was appointed by the Bankruptcy Court as the Chapter 11 Trustee in the Randall Case on September 29, 2011.  On October 12, 2011 (the "Corporate Debtors Petition Date"), the Trustee, in his capacity as the Chapter 11 trustee in the Randall Case, caused the following bankruptcy petitions to be filed by the following entities owned by Randall (collectively, the "Corporate Debtors") under Chapter 11 of Title 11 of the United States Code:  (A) In re Horizon Auto Funding, LLC, Case No. 11-34826; (B) In re Independent Commercial Lending, LLC, Case No. 11-34830; (C) In re Horizon Financial Center I, LLC, Case No. 11-34831; (D) In re Horizon Mortgage and Investment Inc. ("Horizon Mortgage"), Case No. 11-34833; and (E) In re Horizon Financial & Insurance Group Inc. ("Horizon Financial"), Case No. 11-34834.  On January 27, 2012, the Bankruptcy Court entered its order substantively consolidating the separate bankruptcy estates of Randall and each of the Corporate Debtors (collectively the "Debtors"), with all cases being consolidated with and into the Randall Case, but effective only as of the date of the Bankruptcy Court's consolidation order.

Sent to you in the same envelope as this document is the Disclosure Statement that has been approved by the Bankruptcy Court and that is provided to help you understand the Plan. All holders of Claims are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.  The Disclosure Statement for the Plan contains a summary of the Plan and discusses the Debtors' history, assets and liabilities to the extent known to the Trustee.  Reading the summary of the Plan contained in the Disclosure Statement, however, is not a substitute for reading the Plan.  As the provisions of the Plan control, all holders of Claims are encouraged to carefully read the Plan.  No solicitation materials, other than the Disclosure Statement, the Disclosure Statement Exhibits, the Exhibits attached to this Plan, and the related materials transmitted with the Disclosure Statement or Plan, have been approved by the Bankruptcy Court for use in soliciting acceptances or rejections to the Plan.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of

construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Active Policy" shall mean a Policy held at any time by a Policyholder that is still in force and/or has not been terminated, and any Policy on which a death benefit has previously been paid or is due and payable as of the Effective Date.

"Administrative Expense Claim" shall mean a Claim that is allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including: (a) fees and expenses of Professionals allowed pursuant to an Order of the Bankruptcy Court; and (b) all fees and charges assessed against the Consolidated Estate pursuant to 28 U.S.C. § 1930.

"Administrative Expense Claim Bar Date" shall have the meaning attributed to this phrase in Section 5.2(c) of the Plan.

"Affiliates" shall have the meaning attributed to it in Section 101(2) of the Bankruptcy Code.

"Allowed . . . Claim" shall mean:

(a)     A Claim that is listed in the Schedules but is not listed in the Schedules as liquidated, disputed or contingent, as well as a Claim as to which a timely proof of Claim has been filed by the applicable Bar Date, including any and all amended claims filed in relation thereto, and either (i) no objection to such Claim, or no application to estimate, equitably subordinate or otherwise limit recovery for such Claim, has been made on or before any applicable deadline, or (ii) if an objection to such Claim, or an application to estimate, equitably subordinate or otherwise limit recovery for such Claim has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order, either as a result of suit or by settlement agreement; provided, that for each Victim Claim, the amount of such Allowed Victim Claim shall be no greater than the Victim Net Claim Amount for such Victim Claim;

(b)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code, to the extent allowed under Section 502(h) of the Bankruptcy Code;

(c)     a Claim allowed pursuant to a Final Order in the amount so ordered; or

(d)     any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

"Avoidance Actions" shall mean Causes of Action arising or held by the Consolidated Estate under Chapter 5 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

2

"Bankruptcy Case" shall mean collectively the above-captioned substantively consolidated Chapter 11 case pending in the Bankruptcy Court, including the substantively consolidated Chapter 11 cases of Horizon Auto Funding, LLC, filed under Bankruptcy Case No. 11-34826, Independent Commercial Lending, LLC, filed under Bankruptcy Case No. 11-34830, Horizon Financial Center I, LLC, filed under Bankruptcy Case No. 11-34831, Horizon Mortgage and Investment Inc., filed under Case No. 11-34833, and Horizon Financial & Insurance Group Inc., filed under Bankruptcy Case No. 11-34834.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. § 157, the unit of the United States District Court for the District of Utah specified pursuant to 28 U.S.C. § 151.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Bar Date" shall mean: (i) April 26, 2011 with respect to a Claim against Randall other than a Claim of a Governmental Unit against Randall, whether filed on the Randall Claim Docket or on any of the Corporate Debtors Claim Dockets; (ii) June 20, 2011 with respect to a Claim of a Governmental Unit against Randall, whether filed on the Randall Claim Docket or on any of the Corporate Debtors Claim Dockets; (iii) March 12, 2012 with respect to a Claim against any of the Corporate Debtors other than a Claim of a Governmental Entity against any of the Corporate Debtors, whether filed on the Randall Claim Docket or any of the Corporate Debtors Claim Dockets; and (iv) April 9, 2012 with respect to a Claim of a Governmental Unit against any of the Corporate Debtors, whether filed on the Randall Claim Docket or on any of the Corporate Debtors Claim Dockets.  For the sake of clarity, "Bar Date" does not include the Contract Rejection Bar Date, the Administrative Expense Claim Bar Date, or the Professional Administrative Expense Claim Bar Date, which are separately defined herein.

"Beneficial Interest Calculation" shall mean the formula to be used to calculate each Private Actions Trust Beneficiary's interest in the Private Actions Trust for distribution purposes as set forth in Section 2.8 of the Private Actions Trust.

"Boyce Trust" means The Boyce Family Living Trust, under the Trust Agreement originally dated September 9, 1999, and its trustee, David B.  Boyce.  The Boyce Trust was an Investor.

"Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday recognized in the State of Utah.

"Boyingtons" means Carl Boyington and Janice Boyington, who were Investors.

3

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Causes of Action" shall mean, any actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown or asserted or unasserted, in law, equity or otherwise, including any and all Avoidance Actions, and including Causes of Action against any of the Facilitators.

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean those classes designated in Articles II and III of this Plan.

"Collateral" shall mean any property or interest in property of the Consolidated Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Hearing" shall mean October 28, 2013, or any date to which the Bankruptcy Court continues said Confirmation Hearing on the record without the need for further notice.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

"Consolidated Estate" shall mean the consolidated estate of all of the Debtors created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code on the Randall Petition Date and on the Corporate Debtors Petition Date, including but not limited to: (i) as created as a result of the Consolidation Order; and (ii) the property that is retained by the Trustee under the Plan as of, and after the Effective Date.

"Consolidation Order" shall mean the Order Substantively Consolidating the Separate Estates of Dee Allen Randall, Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. and Horizon Financial & Insurance Group Inc., entered by the Bankruptcy Court on January 30, 2012 [Docket No. 449].

4

"<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"<u>Contract Rejection Claim Bar Date</u>" shall have the meaning attributed to it in Section 8.2 of the Plan.

"<u>Corporate Debtors</u>" shall mean Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage, and Horizon Financial.

"<u>Corporate Debtors Claim Dockets</u>" shall mean the dockets showing proofs of claims filed in the Bankruptcy Case under Case No. 11-34826 for Horizon Auto Funding, LLC, Case No. 11-34830 for Independent Commercial Lending, LLC, Case No. 11-34831 for Horizon Financial Center I, LLC, Case No. 11-34833 for Horizon Mortgage, and Case No. 11-34834 for Horizon Financial.

"<u>Corporate Debtors Petition Date</u>" shall mean October 12, 2011.

"<u>Creditor</u>" shall mean any Person who: (a) holds a Claim against the Consolidated Estates that arose prior to the Randall Petition Date with respect to a Claim against Randall or that arose prior to the Corporate Debtors Petition Date with respect to a Claim against any of the Corporate Debtors; (b) holds a Claim against the Consolidated Estate, which arose after the Randall Petition Date, other than an Administrative Expense Claim of the type specified in Bankruptcy Code Section 503(b); or (c) holds a Claim against the Consolidated Estate of the kinds specified in Bankruptcy Code Sections 502(g), 502(h) or 502(j).

"<u>Debtors</u>" shall mean any, each and all of Randall and the Corporate Debtors.

"<u>Debtors' Agent</u>" shall mean a Person, including an Insurance Agent, that acted as an agent, representative, independent contractor, officer, director, manager, or employee of any of the Debtors prior to the Corporate Debtors Petition Date, excluding the Debtors, the Trustee and any Professionals.

"<u>Deficiency Claim</u>" shall mean that portion of any Allowed Claim held by a Creditor of a Secured Claim which exceeds the value of the assets securing such Allowed Claim.

"<u>Disallowed . . . Claim</u>" shall mean:

(a)     a Claim that is listed in the Schedules as unliquidated, disputed or contingent for which no proof of Claim has been filed prior to the Bar Date;

(b)     a Claim disallowed under Section 502(d) of the Bankruptcy Code;

(c)     a Claim asserted in an amount greater than an amount fixed pursuant to a Final Order or pursuant to a settlement agreement entered into with the Trustee; or

(d)     for any Victim Claim, any amount that is greater than the Victim Net Claim Amount for such Victim Claim, even if the amount for such Victim Claim asserted in the

5

corresponding Victim Proof of Claim is larger than the Victim Net Claim Amount for such Victim Claim.

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including all Exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disclosure Statement Exhibit" shall mean the Exhibits attached to the Disclosure Statement which are incorporated into the Disclosure Statement and this Plan by reference.

"Disputed . . . Claim" shall mean:

(a)     a claim that is listed in the Schedules as unliquidated, disputed or contingent;

(b)     if a proof of Claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Trustee in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order;

(c)     Claims for which a proof of Claim has not been filed prior to any applicable Bar Date; or

(d)     a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claims Reserve" shall have the meaning set forth in Section 7.4(a) hereof.

"Distribution Record Date" shall mean the Confirmation Date.

"Effective Date" shall mean the date which is 30 days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have not been satisfied or waived, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Estate Litigation Claims" shall mean any of the Debtors' or the Consolidated Estate's Causes of Action.

"Equity Interest" shall mean any equity interest in any of the Corporate Debtors, regardless of form, arising under any contract, agreement, and/or under any applicable law.

"Face Amount" shall mean:  (i) when used with respect to a Claim, (a) if no Proof of Claim has been filed, the amount of the Claim set forth in the Schedules, or (b) if a Proof of Claim has been filed, the amount asserted in the Proof of Claim; (ii) when used with respect to an Estate Litigation Claim, the amount set forth in any complaint or other formal or informal

6

demand; and (iii) when used with respect to an asset or liability of the Consolidated Estate other than an Estate Litigation claim, (a) the most recent recorded amount on the Consolidated Estate's books and records, or (b) if no amount is recorded on the Consolidated Estate's books and records, then the fair market value or fair liability amount as determined by the Trustee.

"Facilitators" shall mean Persons who assisted, facilitated, or perpetuated the operations of the Ponzi Scheme by the Randall Enterprise.

"Final Decree" shall mean a Final Order of the Court closing the Bankruptcy Case.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, reargument or certiorari of the order has been sought, the order has been affirmed or the request for review, reargument or certiorari has been denied and the time to seek a further appeal, review, reargument or certiorari has expired, and as a result of which such order shall have become final and nonappealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Fort Lane Property" shall mean collectively the three parcels of real property located at approximately 768 Fort Lane, 790 Fort Lane, and 812 Fort Lane in Layton, Utah, that on the Corporate Debtors Petition Date were owned by Horizon Mortgage (100% interest in the 768 Fort Lane Parcel and the 790 Fort Lane Parcel), Deborah Jean Herbert (an undivided 40% interest in the 812 Fort Lane Parcel), and Horizon Mortgage (an undivided 60% interest in the 812 Fort Lane Parcel).

"Governmental Unit" shall have the meaning attributed to it in Section 101(27) of the Bankruptcy Code, and shall include the Utah Division of Securities.

"Hatch Trust" shall mean The Jack David Hatch Revocable Trust dated March 1, 2005, and its trustee, Jack David Hatch.  The Hatch Trust was an Investor.

"Horizon Financial" shall mean Horizon Financial & Insurance Group Inc.

"Horizon Mortgage" shall mean Horizon Mortgage and Investment Inc., dba Maple Apartments, also dba Independent Financial & Investment, also dba Independent Property Management.

"Initial Distribution Date" shall mean any date that the Trustee chooses, in the Trustee's sole discretion, prior to the entry of the Final Decree.

"Insurance Agents" shall mean all Persons who acted as insurance agents for Horizon Financial or Randall who were otherwise affiliated with the insurance business of the Debtors and Union Central.

7

"<u>Investment</u>" shall mean Cash and all other funds deposited by a Person with any of the Debtors for the purpose of obtaining a return on such funds.

"<u>Investor</u>" shall mean a Person who holds a Note, or who otherwise asserts a Claim against the Consolidated Estate arising out of an Investment with Randall or with any of the Corporate Debtors.

"<u>IRS</u>" shall mean the Internal Revenue Service, an agency of the United States.

"<u>IRS Priority Tax Claim</u>" shall mean collectively all of the Priority Tax Claims filed against any of the Debtors by the IRS on behalf of the United States.

"<u>Lien</u>" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.  A lien that has been avoided in accordance with Section 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall be preserved for the benefit of the Consolidated Estate pursuant to Section 551 of the Bankruptcy Code.

"<u>Liquidation Amount</u>" shall mean all Cash of the Consolidated Estate remaining after: (i) Payment in Full of all Allowed Administrative Claims, all Allowed Priority Tax Claims, and all Allowed Secured Claims in Classes 1-14; (ii) Payment in Full of all fees owing to the Clerk of the Bankruptcy Court, and fees owing to the United States Trustee; (iii) Payment in Full of all post-Confirmation Date fees and expenses, including such fees and expenses incurred or to be incurred by Professionals employed by the Trustee through the closing of this Bankruptcy Case and entry of a Final Decree (to the extent not included in the Operating Reserve); and (iv) funding of the Operating Reserve, from time to time.

"<u>McGuire Trust</u>" shall mean The Kristina McGuire Living Trust, under the Trust Agreement originally dated April 11, 2001, and its trustee, Kristina McGuire a/k/a Kristina Hyer. The McGuire Trust was an Investor.

"<u>Metamorphosis</u>" shall mean Metamorphosis Investments, L.C., the record title owner to an undivided 1.5% interest in the 1505 N. 1200 W. Property.

"<u>Non-Investor Trade Creditor Unsecured Claim</u>" shall mean a Claim that is not a Secured Claim, not a Claim that is entitled to priority of payment under Section 507 of the Bankruptcy Code, and not a Victim Claim.  The holders of Non-Investor Trade Creditor Unsecured Claims are Creditors who provided goods and services or financing to the Debtors and were not Investors.  A list of the Creditors that a preliminary review of the Debtors' books and records reflect are holders of Non-Investor Trade Creditor Unsecured Claims for less than $50,000.00 is attached hereto as Exhibit B.  The amounts set forth in Exhibit B are merely those stated in either the Statements and Schedules or in proofs of claim filed by the holders of Non-Investor Trade Creditor Unsecured Claims, and the Trustee reserves the right to contest the validity or amounts of the Non-Investor Trade Creditor Unsecured Claims set forth on Exhibit B.  The Non-Investor Trade Creditor Unsecured Claims that are Allowed in an amount of $50,000.00 or less shall be classified in Class 16(A) under this Plan.  The Non-Investor Trade Creditor Unsecured Claims

8

that are Allowed in an amount greater than $50,000.00 shall be classified in Class 16(B) under this Plan.

"Note" shall mean one or more promissory notes issued by any of the Debtors to a Person in exchange for such Person making an Investment.

"Operating Reserve" shall have the meaning ascribed to such term in Section 7.4(b) of this Plan.

"Payment in Full" shall mean payment of the full Allowed amount of any Allowed Claim, whether by distribution under this Plan or otherwise.

"Person" shall mean any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, trustee, unincorporated association or organization, Governmental Unit or political subdivision thereof.

"Plan" shall mean this Liquidating Plan of Reorganization, including the Disclosure Statement Exhibits and any Exhibits, supplements, appendices and schedules hereto, in their present form or as the same may be altered, amended or modified from time to time.

"Policy" shall mean an insurance policy or other insurance product that was issued by a Facilitator and: (i) produced by one of the Debtors and/or by a Debtors' Agent; or (ii) on which one of the Debtors and/or a Debtors' Agent received a commission from a Facilitator.

"Policyholder" shall mean a Person that: (i) as of the Corporate Debtors Petition Date, was the holder of a Claim that would qualify as a Class 17 Allowed Victim Claim; (ii) at any time, has been the owner, payor, or holder of a Policy; and (iii) if applicable, the successor(s) or assignee(s) of such Person.

"Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Priority Unsecured Claims" shall mean any Claim entitled to priority under Section 507(a) of the Bankruptcy Code, other than Priority Tax Claims and Administrative Expense Claims.

"Private Actions Trust" shall mean the trust established on the Effective Date pursuant to Section 6.9 of this Plan.

"Private Actions Trust Agreement" shall mean the Randall Victims Private Actions Trust Agreement to be executed as of the Effective Date establishing the Private Actions Trust pursuant to the Plan.  A copy of the Private Actions Trust Agreement is attached hereto as Exhibit A to this Plan.

"Private Actions Trust Election" means the irrevocable election of a Victim to assign his or her Victim Causes of Action to the Private Actions Trust, such election being evidenced (i) on the Victim's Ballot for his or her Class 17 Allowed Victim Claim, or (ii) in a writing filed with

9

the Private Actions Trustee on or before the date that is sixty (60) calendar days after the Effective Date;  provided, that the Private Actions Trustee, in his or her sole discretion, may choose to allow a Victim to make a Private Actions Trust Election after this deadline.

"Private Actions Trust Participating Creditors" and "Private Actions Trust Beneficiaries" mean those Victims who have made Private Actions Trust Elections and have thereby assigned their Victim Causes of Action to the Private Action Trust.

"Private Actions Trustee" means the trustee of the Private Actions Trust and any subsequent trustee of the Private Actions Trust.  The Trustee will be the initial trustee of the Private Actions Trust.

"Professionals" shall mean (i) the Trustee, or (ii) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330, 331 and 503 of the Bankruptcy Code.

"Professional Administrative Expense Claim Bar Date" shall have the meaning attributed to this phrase in Section 5.2(d)(ii) of the Plan.

"Randall" shall mean Dee Allen Randall, an individual.

"Randall Claim Docket" shall mean the docket showing proofs of Claim filed in the Bankruptcy Case under Case No. 10-37546.

"Randall Enterprise" shall mean Randall, the Corporate Debtors, all subsidiaries of the Debtors, all Affiliates of the Debtors, and/or any entity in which Randall or any of the Corporate Debtors held an equity interest.

"Randall Petition Date" shall mean December 20, 2010.

"Restitution" shall mean any Cash payments to be made by Randall or by the Insurance Agents or by any other Persons for the benefit of Victims as ordered by any state or federal court or as required by any Governmental Unit, including those required by any Governmental Unit in connection with any settlements by such Governmental Unit with the parties required to make the Restitution payments.

"Rising Tide Distribution Method" shall mean the method of distribution to be applied by the Trustee for the distribution of Victim Funds to holders of Allowed Victim Claims and holders of Class 16(B) Allowed Unsecured Claims (if any).  The Rising Tide Distribution Method shall govern all Victim Claims under this Plan, even if the amount asserted for any Victim Claim in its corresponding Victim Proof of Claim or in the Schedules or otherwise exceeds the Victim Net Claim Amount for such Victim Claim.  Under the Rising Tide Distribution Method, Investors who are not Winning Investors are allowed to retain the total Withdrawals they have previously received (whether such Withdrawals are prepetition Withdrawals or are funds received by such Investors from the proceeds of the Trustee's postpetition sale of properties or from postpetition settlements with the Trustee), but their total

10

Withdrawals are subtracted from the amount of their Investment to determine their Victim Net
Claim Amount as well as their initial recovery percentage (rather than their net loss) for
distribution purposes.  Under the Rising Tide Distribution Method, the Investors who previously
received Withdrawals or prior distributions that resulted in a percentage return of their
Investment that is less than the percentage return of other Investors will participate in each
distribution in such amounts as to raise their percentage returns closer to such other Investors
until all of the Investors have an equal percentage return on their Investment.  An example of
three hypothetical Investors will illustrate the application of the Rising Tide Distribution
Method.  Investor A invested the Investment amount of $150,000, and received Withdrawals of
$60,000.  Investor A's initial recovery percentage is calculated at 40% ($60,000 divided by
$150,000 = 40%).  Investor B invested the Investment amount of $150,000, and received
Withdrawals of $30,000.  Investor B's initial recovery percentage is calculated at 20% ($30,000
divided by $150,000 = 20%).  Investor C invested the Investment amount of $150,000, but
received no Withdrawals.  Investor C's initial recovery percentage is calculated at 0%.  If the
Trustee has Victim Funds of $60,000 for his initial distribution of Victim Funds, under the
Rising Tide Distribution Method, Investor B will receive $15,000 of the Victim Funds, Investor
C will receive $45,000 of the Victim Funds, and Investor A will receive none of the initial
distribution of $60,000 of Victim Funds.  Investor A's recovery percentage is still considered to
be 40% (from Investor A's prior Withdrawals), Investor B's recovery percentage will have
increased to 30% (consisting of Investor B's prior Withdrawals of $30,000 plus $15,000 from the
initial distribution of Victim Funds, for a total of $45,000 [$45,000 divided by $150,000 =
30%]), and Investor C's recovery percentage will also have increased to 30% ($45,000 divided
by $150,000 = 30%).  The result of the Rising Tide Distribution Method is to raise the recovery
percentages of Investor B and Investor C as close to the recovery percentage of Investor A as
possible, with the Trustee applying a consistent formula to calculate the Victim Net Claim
Amounts for all Victim Claims as well as the initial distribution of Victim Funds and all
subsequent distributions of Victim Funds, giving distribution preference to those holders of
Allowed Victim Claims who received no Withdrawals or small Withdrawals (i.e., little or no
return of their Investment) over other holders of Allowed Victim Claims who received larger
Withdrawals (i.e., larger distributions of their Investment), either prior to the Petition Date or
through postpetition payments on their Allowed Victim Claims.  Investor A will participate in
subsequent distributions of Victim Funds only at such time as the recovery percentages of
Investor B and Investor C have reached 40%, the same initial recovery percentage for Investor
A.  At such time that the recovery percentages for Investor A, Investor B and Investor C have
become equalized through distributions of Victim Funds, then each of Investor A, Investor B and
Investor C will share prorata in all subsequent distributions of Victim Funds.  For a holder of a
Class 16(B) Allowed Unsecured Claim (if any), the Rising Tide Distribution Method will be
applied as follows: With respect to the transaction (such as a lending transaction or a single
contract for goods or services) that gives rise to such Class 16(B) Allowed Unsecured Claim,
such holder will be allowed to retain the total payments such holder has previously received
arising out of such transaction (whether such payments are prepetition payments or are payments
received by such holder from the foreclosure or other disposition of such holder's original
Collateral or from a postpetition settlement with the Trustee), but such holder's total payments
will be subtracted from the amount that was originally owed to such holder to determine such
holder's initial recovery percentage (rather than such holder's net loss) for distribution purposes,

11

and the Rising Tide Distribution Method will then be applied to such Class 16(B) Allowed Unsecured Claim in the same manner that it will be applied to Allowed Victim Claims. The Rising Tide Distribution Method shall govern all Class 16(B) Allowed Unsecured Claims under this Plan.

"Sandy Office Building Property" means the real property located at approximately 9890 South 300 West in Sandy, Utah, that on the Corporate Debtors Petition Date was owned by Horizon Financial.

"Schedules" shall mean the various statements and schedules of assets and liabilities filed by the Debtors under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules have been or may be supplemented or amended from time to time.

"Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

"Small Payment Reserve" shall have the meaning outlined in Section 7.5(c) of the Plan.

"Sunset Property" means collectively the three parcels of real property located at approximately 124 West 800 North, 116 West 800 North, and 78 West 800 North in Sunset, Utah, that on the Randall Petition Date were owned by Horizon Mortgage (an undivided 50% interest in the 124 West 800 North Parcel and an undivided 50% interest in the 116 West 800 North Parcel), Danita Hooper (an undivided 50% interest in the 124 West 800 North Parcel and an undivided 50% interest in the 116 West 800 North Parcel), and Randall (100% of the interests in the 78 West 800 North Parcel).

"Terminated Policy" shall mean a Policy held at any time by a Policyholder that has been terminated and/or is no longer in force, excluding a Policy on which a death benefit has previously been paid or is due and payable as of the Effective Date.

"Thompsons" shall mean Leland Thompson and Phyllis Thompson, who were Investors.

"Trustee" shall mean Gil A. Miller in his capacity as Chapter 11 Trustee of the Debtors, in his capacity as liquidating trustee under this Plan, and/or in his capacity as trustee of the Private Actions Trust.

"Union Central" shall mean any or all of the following: Union Central Life Insurance Company, Ameritas Life Insurance Company, Ameritas Mutual Holding Company, and all Affiliates, officers, directors, agents, attorneys and employees of the foregoing companies.

"Union Central Adversary Proceedings" shall mean the Trustee's Adversary Proceeding No. 12-02385 and Adversary Proceeding No. 13-02023 that the Trustee has filed against Union Central.

"United States" shall mean the United States of America.

12

"Victim Causes of Action" shall mean Causes of Action of a Victim against any Facilitators, including Debtors' Agents, or any other Facilitator that, prior to the Randall Petition Date, acted as an attorney, accountant, auditor, financial advisor for Debtors; such Causes of Action shall include those arising out of: (i) the offering, solicitation, promotion, servicing, or repayment of a Policy or an Investment by a Facilitator, Debtors or any Debtors' Agent; (ii) the issuance, repayment, cancellation, extension, conversion, exchange, or modification of Notes by a Facilitator, Debtors or any Debtors' Agent; (iii) the provision of investment or financial advice or services by a Facilitator, Debtors or any Debtors' Agent; (iv) other actions of any Debtors' Agent; and (v) any Terminated Policy; provided, however, "Victim Causes of Action" shall not include any right or obligation of any Policyholder under any Active Policy.

"Victim" shall mean an Investor who is not a Winning Investor and who has not received Withdrawals in excess of such Victim's Investment, either from Withdrawals prior to the Randall Petition Date or the Corporate Debtors Petition Date, or from Withdrawals received from the Consolidated Estate after the Randall Petition Date or the Corporate Debtors Petition Date but prior to the Effective Date.

"Victim Claim" shall mean the unsecured non-priority Claim of a Victim, including any Deficiency Claim.  The amount of a Victim Claim is limited to the Victim Net Claim Amount for that Victim.

"Victim Funds" shall mean Restitution, if any, plus all Cash of the Consolidated Estate, less Cash necessary to fund and/or pay: (i) costs of administration of the Consolidated Estate, including any funds necessary to fund settlement agreements unrelated to Victim Claims; (ii) Allowed Administrative Expenses Claims; (iii) Allowed Priority Tax Claims; (iv) Allowed Secured Claims; (v) Allowed Priority Unsecured Claims; (vi) Allowed Non-Investor Trade Creditor Unsecured Claims classified in Class 16(A); (vii) the Disputed Claim Reserve; (viii) the Operating Reserve; and (ix) any Small Claim Reserve.

"Victim Net Claim Amount" shall mean, for the Victim Claim of any particular Victim, the difference between the Victim's total Investment and all Withdrawals received by the Victim.

"Victim Proof of Claim" shall mean a proof of Claim filed by a Victim in the Bankruptcy Case and docketed on either the Randall Claim Docket or any of the Corporate Debtors Claim Dockets.  Notwithstanding the amount of a Victim Claim asserted in any corresponding Victim Proof of Claim, the amount of an Allowed Claim for any Victim Claim shall not exceed the Victim Net Claim Amount for such Victim Claim.

"Winning Investor" shall mean an Investor who made an Investment with Randall or any of the Corporate Debtors and who received Withdrawals greater than the amount of the Investment prior to the Effective Date.

"Withdrawals" shall mean the total amount of funds received by an Investor from or attributable to Randall or from or attributable to any of the Corporate Debtors as a result of such Investor's Investment, regardless of whether such Withdrawals were characterized as a repayment or return of the Investment or as an interest payment or as a payment of a late fee or

13

as a payment of a commission or any other characterization. Withdrawals shall include not only the funds received by an Investor prior to the Randall Petition Date or the Corporate Debtors Petition Date, but also any additional funds received by an Investor from the Consolidated Estate as a result of the Trustee's sale of any assets (whether assets of the Consolidated Estate or other assets) or from the Trustee's settlement with an Investor with respect to a Secured Claim asserted by an Investor against any of the assets of the Consolidated Estate.

"87 N. Adamswood Property" means the real property located at approximately 87 North Adamswood in Layton, Utah, that on the Corporate Debtors Petition Date was owned by Horizon Mortgage (an undivided 39% interest) and Debbie Noorda, Trustee of the 2905 RRR Land Title Trust (an undivided 61% interest).

"715-721 N. 400 W. Property" means collectively the real properties located at approximately 715 North 400 West and 721 North 400 West in Kaysville, Utah, that on the Corporate Debtors Petition Date were owned by Horizon Mortgage (an undivided 58% interest), Jadrien Marble (an undivided 30% interest), and LeGrande Hafen and LuJuanna Hafen (an undivided 12% interest).

"811 S. Main Property" means the real property located at approximately 811 South Main in Layton, Utah, that on the Randall Petition Date was owned by Randall (a 71.9% undivided interest), Conrad O. Taysom (an undivided 12% interest), Steven D. Zimmerman (an undivided 9% interest), and Jack David Hatch, Trustee of the Jack David Hatch Revocable Trust (an undivided 7.1% interest).

"990 N. Rainbow Drive Property" means the real property located at approximately 990 North Rainbow Drive in Layton, Utah, that on the Randall Petition Date was owned by Randall.

"1072 S. Lloyd Property" means collectively the two parcels of real property located at approximately 1072 South Lloyd in Fruit Heights, Utah, that on the Randall Petition Date were owned by Randall ("Parcel 1") and Horizon Financial ("Parcel 2").

"1427 W. 1650 N. Property" means collectively the real properties located at approximately 1427 West 1650 North in Layton, Utah, that on the Randall Petition Date were owned by Horizon Mortgage (Units 101-104, 701-704, 801-804, and 1101-1104) and Randall (Units 901-904).

"1505 N. 1200 W. Property" means the real property located at approximately 1505 North 1200 West in Layton, Utah, that on the Randall Petition Date was owned by Randall (a 98.5% undivided interest) and Metamorphosis (record title to a 1.5% undivided interest).

"1634 N. Angel St. Property" means the real property located at approximately 1634 North Angel Street in Layton, Utah, that on the Randall Petition Date was owed by Randall.

"2905 RRR Trust" means the 2905 RRR Land Title Trust and its trustee, Debbie Noorda, which was an Investor.

# ARTICLE II

# CLASSIFICATION OF CLAIMS

## 2.1    Classified Claims.

As a result of the Consolidation Order, the Debtors and their respective bankruptcy estates have been substantively consolidated.  Thus, any and all Allowed Claims, to the extent claimed against any one of the Debtors, are deemed to be made against the Consolidated Estate, and the Plan does not provide for separate classification of Claims against any one Debtor, to the extent such Claims exist, and all Claims of one Debtor against another Debtor, to the extent such Claims exist, have been disregarded.  Rather, all holders of Allowed Claims are to be paid from the assets of the Consolidated Estate as provided for in this Plan.

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan must classify, with certain exceptions discussed below, all Claims, and such classification is for all purposes relating to the Plan, including voting on, confirmation of, and distributions pursuant to the Plan.  A Claim is classified in a particular Class only to the extent that: (a) the Claim falls with the description of that Class; and (b) unless otherwise noted, it has not already been paid, released or otherwise satisfied before the Effective Date.  In this case, Claims other than certain unclassified Claims discussed below, are classified as follows:

Classes 1 through 14 - Secured Claims.  Classes 1 through 14 consist of all Allowed Secured Claims, as follows:

1.    **Class 1** consists of all Allowed Secured Claims on the 1505 N. 1200 W. Property.

a.    Class 1(A) consists of the Allowed Secured Claim of US Bank or its successors or assigns (including AMRO/Regency Savings Bank) as the first priority Lien on the 1505 N. 1200 W. Property.

b.    Class 1(B) consists of the Allowed Secured Claim of the State of Utah on its 9/9/09 Tax Warrant against Randall in the amount of no more than $26,764.68 as the second priority Lien on the 1505 N. 1200 W. Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.    Class 1(C) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on the 1505 N. 1200 W. Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

d.    Class 1(D) consists of the Allowed Secured Claim of the State of Utah on its 7/12/10 Tax Warrant against Randall in the amount of no more than $44,124.43 as the fourth priority Lien on the 1505 N. 1200 W. Property.  The amount of the Claim of this Creditor and

15

whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

e.      Class 1(E) consists of the Allowed Secured Claim of Washington Federal Savings on its 8/30/10 Judgment Lien against Randall in the amount of no more than $78,600.59 as the fifth priority Lien on the 1505 N. 1200 W. Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

2.      **Class 2** consists of all Allowed Secured Claims on Randall's 71.9% undivided interest in the 811 S. Main Property.

a.      Class 2(A) consists of the Allowed Secured Claim of LaSalle Bank/Imperial Capital Bank as the first priority Lien on the 811 S. Main Property.

b.      Class 2(B) consists of the Allowed Secured Claim of the 2905 RRR Trust as the second priority Lien on Randall's undivided 71.9% interest in the 811 S. Main Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.      Class 2(C) consists of the Allowed Secured Claim of the Hatch Trust as the third priority Lien on Randall's undivided 71.9% interest in the 811 S. Main Property, to the extent that such Judgment Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

d.      Class 2(D) consists of the Allowed Secured Claim of the State of Utah on its 9/9/09 Tax Warrant against Randall in the amount of no more than $26,764.68 as the fourth priority Lien on Randall's undivided 71.9% interest in the 811 S. Main Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

e.      Class 2(E) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the fifth priority Lien on Randall's undivided 71.9% interest in the 811 S. Main Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

f.      Class 2(F) consists of the Allowed Secured Claim of the State of Utah on its 7/12/10 Tax Warrant against Randall in the amount of no more than $44,124.43 as the sixth priority Lien on an undivided 71.9% interest in the 811 S. Main Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

g.      Class 2(G) consists of the Allowed Secured Claim of Washington Federal Savings on its 8/30/10  Judgment Lien against Randall in the amount of no more than $78,600.59 as the seventh priority Lien on Randall's undivided 71.9% interest in the 811 S. Main Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

3.      **Class 3** consists of all Allowed Secured Claims on Horizon Mortgage's 39% undivided interest in the 87 N. Adamswood Property.

a.      Class 3(A) consists of the Allowed Secured Claim of US Bank National Association or its successors and assigns (including ABN AMRO/ Regency Savings Bank) as the first priority Lien on the 87 N. Adamswood Property.

b.      Class 3(B) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the second priority Lien on Horizon Mortgage's 39% interest in the 87 N. Adamswood Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.      Class 3(C) consists of the Allowed Secured Claim of the McGuire Trust and the Boyce Trust on their 3/24/11 Judgment Lien in the amount of no more than $2,715,731.95 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on Horizon Mortgage's 39% interest in the 87 N. Adamswood Property, to the extent that such Judgment Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

4.      **Class 4** consists of all Allowed Secured Claims on Randall's interest in the 990 N. Rainbow Drive Property.

a.      Class 4(A) consists of the Allowed Secured Claim of Washington Federal Savings as the first priority Lien on the 990 N. Rainbow Drive Property.

b.      Class 4(B) consists of the Allowed Secured Claim of the State of Utah on its 9/9/09 Tax Warrant against Randall in the amount of no more than $26,764.68 as the second priority Lien on the 990 N. Rainbow Drive Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.      Class 4(C) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on the 990 N. Rainbow Drive Property.  The amount of the Claim of this Creditor and whether

17

such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

        d.     Class 4(D) consists of the Allowed Secured Claim of Kate A. Rose on her 6/9/10 Trust Deed Lien in the amount of no more than $500,000 as the fourth priority Lien on the 990 N. Rainbow Drive Property, to the extent that such Trust Deed Lien is Allowed in whole or in part. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

        e.     Class 4(E) consists of the Allowed Secured Claim of the State of Utah on its 7/12/10 Tax Warrant against Randall in the amount of no more than $44,124.43 as the fifth priority Lien on the 990 N. Rainbow Drive Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

        f.     Class 4(F) consists of the Allowed Secured Claim of Washington Federal Savings on its 8/30/10 Judgment Lien against Randall in the amount of no more than $78,600.59 as the sixth priority Lien on the 990 N. Rainbow Drive Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

    5.    **Class 5** consists of all Allowed Secured Claims on Randall's interest in Parcel 1 of the 1072 S. Lloyd Property and/or on Horizon Financial's interest in Parcel 2 of the 1072 S. Lloyd Property.

        a.     Class 5(A) consists of the Allowed Secured Claim of the Thompsons and the Boyingtons on their 7/23/08 Trust Deed Lien in the amount of no more than $250,000 as the first priority Lien on Parcel 1 of the 1072 S. Lloyd Property, to the extent that such Trust Deed Lien is Allowed in whole or in part. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

        b.     Class 5(B) consists of the Allowed Secured Claim of the Satterfield Family Trust on its 8/18/08 Trust Deed Lien in the amount of no more than $200,000 as the second priority Lien on Parcel 1 of the 1072 S. Lloyd Property, to the extent that such Trust Deed Lien is Allowed in whole or in part. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

        c.     Class 5(C) consists of the Allowed Secured Claim of the Kendall Family Trust on its 8/18/08 Trust Deed Lien in the amount of no more than $100,000 as the third priority Lien on Parcel 1 of the 1072 S. Lloyd Property, to the extent that such Trust Deed Lien is Allowed in whole or in part. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

d.      Class 5(D) consists of the Allowed Secured Claim of the State of Utah on its 9/9/09 Tax Warrant against Randall in the amount of no more than $26,764.68 as the fourth priority Lien on Parcel 1 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

e.      Class 5(E) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the fifth priority Lien on Parcel 1 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

f.      Class 5(F) consists of the Allowed Secured Claim of the State of Utah on its 7/12/10 Tax Warrant against Randall in the amount of no more than $44,124.43 as the sixth priority Lien on Parcel 1 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

g.      Class 5(G) consists of the Allowed Secured Claim of Washington Federal Savings on its 8/30/10 Judgment Lien against Randall in the amount of no more than $78,600.59 as the seventh priority Lien on Parcel 1 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

h.      Class 5(H) consists of the Allowed Secured Claim of the United States of America on its 3/4/08 Federal Tax Lien against Horizon Financial in the amount of no more than $4,071.29 as the first priority Lien on Parcel 2 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

i.      Class 5(I) consists of the Allowed Secured Claim of RJT Excavating, Inc. on its 12/17/08 mechanic's Lien in the amount of no more than $24,136.57 as the second priority Lien on Parcel 2 of the 1072 S. Lloyd Property, to the extent that such mechanic's Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

j.      Class 5(J) consists of the Allowed Secured Claim of the State of Utah on its 8/3/09 Tax Warrants against Horizon Financial in the amount of no more than $12,650.07 as the third priority Lien on Parcel 2 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

k.      Class 5(K) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than

19

$13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the fourth priority Lien on Parcel 2 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

l.    Class 5(L) consists of the Allowed Secured Claim of the State of Utah on its 6/7/10 Tax Warrants against Horizon Financial in the amount of no more than $29,318.83 as the fifth priority Lien on Parcel 2 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

m.    Class 5(M) consists of the Allowed Secured Claim of the Thompsons and the Boyingtons on their 2/16/11 Trust Deed Lien in the amount of no more than $250,000 as the sixth priority Lien on Parcel 2 of the 1072 S. Lloyd Property, to the extent that such Trust Deed Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

n.    Class 5(N) consists of the Allowed Secured Claim of the State of Utah on its 6/6/11 Tax Warrant against Horizon Financial in the amount of no more than $11,529.19 as the seventh priority Lien on Parcel 2 of the 1072 S. Lloyd Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

6.    **Class 6** consists of all Allowed Secured Claims on Horizon Mortgage's 50% undivided interest in the two parcels of the Sunset Property at the addresses of 124 West 800 North and 116 West 800 North, Sunset, Utah.

a.    Class 6(A) consists of the Allowed Secured Claim of Washington Federal Savings as the first priority Lien on all of the Sunset Property.

b.    Class 6(B) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the second priority Lien on Horizon Mortgage's undivided 50% interest in these two parcels.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.    Class 6(C) consists of the Allowed Secured Claim of the McGuire Trust and the Boyce Trust on their 3/24/11 Judgment Lien in the amount of no more than $2,715,731.95 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on Horizon Mortgage's undivided 50% interest in these two parcels, to the extent that such Judgment Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

20

7.      **Class 7** consists of all Allowed Secured Claims on Randall's interest in the third parcel of the Sunset Property at the addresses of 78 West 800 North, Sunset, Utah.

a.      Class 7(A) consists of the Allowed Secured Claim of Washington Federal Savings as the first priority Lien on all of the Sunset Property.

b.      Class 7(B) consists of the Allowed Secured Claim of the State of Utah on its 9/9/09 Tax Warrant against Randall in the amount of no more than $26,764.68 as the second priority Lien on the third parcel of the Sunset Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.      Class 7(C) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on the third parcel of the Sunset Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

d.      Class 7(D) consists of the Allowed Secured Claim of the State of Utah on its 7/12/10 Tax Warrant against Randall in the amount of no more than $44,124.43 as the fourth priority Lien on the third parcel of the Sunset Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

e.      Class 7(E) consists of the Allowed Secured Claim of Washington Federal Savings on its 8/30/10 Judgment Lien against Randall in the amount of no more than $78,600.59 as the fifth priority Lien on the third parcel of the Sunset Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

8.      **Class 8** consists of all Allowed Secured Claims on Horizon Mortgage's 58% undivided interest in the 715 – 721 N. 400 W. Property.

a.      Class 8(A) consists of the Allowed Secured Claim of New York Mellon or its successors or assigns (including Homecomings Financial Network / JP Morgan Chase) as the first priority Lien on the 715 – 721 N. 400 W. Property.

b.      Class 8(B) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the second priority Lien on Horizon Mortgage's undivided 58% interest in the 715 – 721 N. 400 W. Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

c.      Class 8(C) consists of the Allowed Secured Claim of the McGuire Trust and the Boyce Trust on their 3/24/11 Judgment Lien in the amount of no more than

21

$2,715,731.95 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on Horizon Mortgage's undivided 58% interest in the 715 – 721 N. 400 W. Property, to the extent that such Judgment Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

9.     **Class 9** consists of all Allowed Secured Claims on Horizon Mortgage's interests in Lot 2 (768 Fort Lane) and Lot 3 (790 Fort Lane) of the Fort Lane Property.

a.     Class 9(A) consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. or its predecessors or successors or assigns (including Green Point Mortgage Funding / Wachovia Bank) as the first priority Lien on Lot 2 of the Fort Lane Property, and does not include the additional recorded junior priority Liens in favor of Green Point Mortgage Funding on Lot 2 and Lot 3 to secure home equity lines of credit, the Debtors' records not reflecting any amounts owed on such home equity lines of credit for Lot 2 and Lot 3 from Green Point Mortgage Funding.

b.     Class 9(B) consists of the Allowed Secured Claim of BAC Home Loan Servicing LP or its predecessors or successors or assigns (including Green Point Mortgage Funding / HSBC Bank, Trustee for the Holders of Deutsche Mortgage Securities Loan Trust) as the first priority Lien on Lot 3 of the Fort Lane Property.

c.     Class 9(C) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the second priority Lien on Lot 2 and Lot 3 of the Fort Lane Property.   The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

d.     Class 9(D) consists of the Allowed Secured Claim of the McGuire Trust and the Boyce Trust on their 3/24/11 Judgment Lien in the amount of no more than $2,715,731.95 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on Lot 2 and Lot 3 of the Fort Lane Property, to the extent that such Judgment Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

10.     **Class 10** consists of all Allowed Secured Claims on Horizon Mortgage's 60% undivided interest in Lot 4 (812 Fort Lane) of the Fort Lane Property.

a.     Class 10(A) consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. or its predecessors or successors or assigns (including Green Point Mortgage Funding / Wachovia Bank) as the first priority Lien on Lot 4 of the Fort Lane Property.

b.     Class 10(B) consists of the Allowed Secured Claim of Deborah Jean Herbert and Randy Herbert on their 12/27/04 Trust Deed Lien securing their Trust Deed Note

22

dated December 9, 2004, as the second priority Lien on Horizon Mortgage's 60% undivided interest in Lot 4 of the Fort Lane Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

   c. Class 10(C) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on Horizon Mortgage's 60% undivided interest in Lot 4 of the Fort Lane Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

   d. Class 10(D) consists of the Allowed Secured Claim of the McGuire Trust and the Boyce Trust on their 3/24/11 Judgment Lien in the amount of no more than $2,715,731.95 against Randall, Horizon Mortgage and Horizon Financial as the fourth priority Lien on Horizon Mortgage's 60% undivided interest in Lot 4 of the Fort Lane Property, to the extent that such Judgment Lien is Allowed in whole or in part. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

   11. **Class 11** consists of all Allowed Secured Claims on Horizon Mortgage's interest in Units 101-104, 701-704, 801-804, and 1101-1104 of the 1427 W. 1650 N. Property.

   a. Class 11(A) consists of the Allowed Secured Claim of United Financial Mortgage as the first priority Lien on Units 101-104 of the 1427 W. 1650 N. Property.

   b. Class 11(B) consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. or its successors or predecessors or assigns (including Green Point Mortgage Funding / Wachovia Bank) as the first priority Lien on Units 701-704 of the 1427 W. 1650 N. Property.

   c. Class 11(C) consists of the Allowed Secured Claim of Wells Fargo Bank, N.A. or its successors or predecessors or assigns (including Green Point Mortgage Funding / Wachovia Bank) as the first priority Lien on Units 801-804 of the 1427 W. 1650 N. Property.

   d. Class 11(D) consists of the Allowed Secured Claim of America's Wholesale Lender / Bank of America as the first priority Lien on Units 1101-1104 of the 1427 W. 1650 N. Property.

   e. Class 11(E) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the second priority Lien on Units 101-104, 701-704, 801-804, and 1101-1104 of the 1427 W. 1650 N. Property. The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

   f. Class 11(F) consists of the Allowed Secured Claim of the McGuire Trust and the Boyce Trust on their 3/24/11 Judgment Lien in the amount of no more than

$2,715,731.95 against Randall, Horizon Mortgage and Horizon Financial as the third priority Lien on Units 101-104, 701-704, 801-804, and 1101-1104 of the 1427 W. 1650 N. Property, to the extent that such Judgment Lien is Allowed in whole or in part.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

12.    **Class 12** consists of all Allowed Secured Claims on Randall's interest in Units 901-904 of the 1427 W. 1650 N. Property.

a.    Class 12(A) consists of the Allowed Secured Claim of Green Point Mortgage Funding / HSBC Bank USA as the first priority Lien on Units 901-904 of the 1427 W. 1650 N. Property.

b.    Class 12(B) consists of the Allowed Secured Claim of the FDIC as Receiver for America West Bank on its 2/22/10 Judgment Lien in the amount of no more than $13,683.56 against Randall, Horizon Mortgage and Horizon Financial as the second priority Lien on Units 901-904 of the 1427 W. 1650 N. Property.  The amount of the Claim of this Creditor and whether such Creditor's Claim is a Secured Claim or an Unsecured Claim will be determined in accordance with the provisions of Section 4.1(c) below.

13.    **Class 13** consists of all Allowed Secured Claims on Randall's interest in the 1634 N. Angel St. Property.

a.    Class 13(A) consists of the Allowed Secured Claim of Citimortgage, Inc., as the first priority Lien on the 1634 N. Angel St. Property.

14.    **Class 14** consists of all Allowed Secured Claims on Horizon Financial's interest in the Sandy Office Building Property.

a.    Class 14(A) consists of the Allowed Secured Claim of Barnes Banking Company as the first priority Lien on the Sandy Office Building Property.

15.    **Class 15** - <u>Priority Unsecured Claims</u>.  Class 15 consists of all Allowed Priority Unsecured Claims, if any.

16.    **Class 16** consists of all Allowed Unsecured Claims of the Non-Investor Trade Creditors.

a.    Class 16(A) consists of the Allowed Unsecured Claims of Non-Investor Trade Creditors that are equal to or less than the amount of $50,000.00.

b.    Class 16(B) consists of the Allowed Unsecured Claims of Non-Investor Trade Creditors that are greater than the amount of $50,000.00.

17.    **Class 17** - <u>Victim Claims</u>.  Class 17 consists of all Allowed Victim Claims.

24

18.     **Class 18** - <u>Equity Interests</u>.  Class 18 consists of all Equity Interests in the Debtors.

19.     **Class** 19 consists of the Allowed Secured Claim of Union Central against all compensation (including future compensation) of any kind that is or may become due from Union Central to Randall or Horizon Financial.

Treatment of each of these Classes of Claims under the Plan is set forth in Article IV below.

### 2.2     <u>Unclassified Claims.</u>

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not placed into Classes that are entitled to vote to accept or reject this Plan; instead, such Claims are "unclassified," and the holders of such Claims do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  As such, the Trustee has not placed these Claims in a Class.  The respective treatment of these Claims under the Plan is set forth in Article V below.

## ARTICLE III

## VOTING ON, ACCEPTANCE, AND REJECTION OF THE PLAN

### 3.1     <u>Voting Classes and Acceptance of Plan.</u>

Each holder of an Allowed Claim in Classes 16(A), 16(B), 17 and 19 of the Plan is entitled to vote to accept or reject the Plan as a member of an impaired Class which will retain or receive property under the Plan.  A Person holding an Allowed Claim in more than one Class is entitled to vote in each Class.  Persons who are holders of Allowed Claims in voting Classes 16(A), 16(B) and 17 should vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.  Unless otherwise ordered by the Bankruptcy Court, the amount of the Allowed Claim for which any holder of a Victim Claim in Class 17 is entitled to vote to accept or reject the Plan is limited to the Victim Net Claim Amount for such Victim Claim.  Each holder of an Allowed Claim in Classes 1 through 15 who has not previously been paid in full or settled with the Trustee is entitled to vote to accept or reject the Plan as a member of an impaired Class which will retain or receive property under the Plan.

### 3.2     <u>Non-Voting Classes.</u>

Each holder of an Allowed Claim in Classes 1 through 15 who has previously been paid in full or has settled with the Trustee pursuant to a settlement that has been approved by the Bankruptcy Court by a Final Order is not impaired under the Plan and, therefore, under Section 1126(f) of the Bankruptcy Code, such holders of Allowed Claims in these Classes are deemed to accept the Plan.  Accordingly, the Trustee will not solicit votes on the Plan from the holders of

25

Allowed Claims in Classes 1 through 15 who have previously been paid in full or have settled with the Trustee pursuant to a settlement that has been approved by the Bankruptcy Court by a Final Order.

Holders of Equity Interests, if any, in Class 18 are not entitled to receive or retain any property under the Plan and, therefore, under Section 1126(g) of the Bankruptcy Code, holders of Equity Interests in Class 18 are deemed to have rejected the Plan.  Accordingly, the Trustee will not solicit votes on the Plan from the holders of Equity Interests in this Class.

### 3.3    Voting Rights of Holders of Disputed Claims.

Pursuant to Bankruptcy Rule 3018(a), a Disputed Claim will not be counted for purposes of voting on the Plan to the extent it is Disputed, unless the Court enters an order temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a).  Such disallowance for voting purposes is without prejudice to the holder's right to seek to have its Disputed Claim be determined to be an Allowed Claim for purposes of distribution under the Plan.

### 3.4    Nonconsensual Confirmation.

If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Section 1126(c) or (d) of the Bankruptcy Code, as applicable, or if any impaired Class is deemed to have rejected the Plan, the Trustee reserves the right (a) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, (b) to amend the Plan in accordance with Section 11.7 hereof, to the extent necessary to obtain entry of a Confirmation Order, and/or (c) to convert the Chapter 11 Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS

### 4.1    Classes 1 – 14: Secured Claims.

(a)    Classification:  Classes 1 through 14 consist of all Allowed Secured Claims, other than the Allowed Secured Claim of Union Central in Class 19.

(b)    Treatment of First Lien Holders:  The holders of the Secured Claims in Class 1(A), Class 2(A), Class 3(A), Class 4(A), Class 6(A), Class 7(A), Class 8(A), Class 9(A), Class 9(B), Class 10(A), Class 11(A), Class 11(B), Class 11(C), Class 11(D), Class 12(A), Class 13(A), and Class 14(A) (collectively the "First Lien Holders") have been Paid in Full on all of their Claims against the Debtors from the sale proceeds that they received pursuant to Bankruptcy Court Final Orders from the sales of their respective Collateral.  Such payments to the First Lien Holders shall be in full satisfaction of their Secured Claims and in full satisfaction of any indebtedness and any other obligations owed by any of the Debtors to the First Lien

26

Holders, and the First Lien Holders shall have no deficiency Claims or any other Claims (whether Secured Claims or Unsecured Claims or otherwise) against the Consolidated Estate.

(c)     Treatment of Other Secured Claims Under Classes 1 through 14.  Unless the Trustee and the holder of any other Secured Claim agree to different treatment, or unless (with respect to any Secured Claim as to which the Trustee has filed an objection with the Bankruptcy Court) the Bankruptcy Court has entered a Final Order with respect to the treatment to be afforded to any or all other holders of any other Allowed Secured Claims with respect to their Claims or their Collateral, each holder of all other Allowed Secured Claims other than the Secured Claims of the First Lien Holders and the Allowed Secured Claim of Union Central in Class 19 will receive Cash in an amount equal to such Allowed Secured Claim, including any interest thereon required to be paid pursuant to Section 506(b) of the Bankruptcy Code, on the later of the Initial Distribution Date and five (5) Business Days of the date such Secured Claim becomes an Allowed Secured Claim, in full and complete satisfaction thereof on the later of the Initial Distribution Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable.  For those Allowed Secured Claims that were secured by Collateral on multiple real properties, the holders of such Allowed Secured Claims shall only receive one satisfaction of their Allowed Secured Claims, and the Trustee shall retain the discretion to determine which proceeds from which real properties secured by such Allowed Secured Claims will be used to satisfy such Allowed Secured Claims in full.  To the extent that the proceeds from the sale of the Collateral securing any asserted Secured Claim are insufficient to pay any portion or all of such asserted Secured Claim, after the priority of such asserted Secured Claim to the sale proceeds has been determined, either by agreement with the Trustee or by the Bankruptcy Court, the unpaid deficiency balance of such asserted Secured Claim shall not be Allowed as a Secured Claim, but shall be Allowed as an Allowed Victim Claim (but only if the holder of such asserted Secured Claim is also a Victim) or otherwise as a Non-Investor Trade Creditor Unsecured Claim, to the extent that the Trustee has not otherwise objected to such Claim.

(d)     Voting:  The Allowed Secured Claims in these Classes are unimpaired and, therefore, holders of such Allowed Secured Claims are presumed to vote in favor of the Plan.  Accordingly, their votes for or against the Plan will not be solicited by the Trustee.  To the extent that the unpaid deficiency balance of an asserted Secured Claim is Allowed as an Allowed Victim Claim or as an Allowed Non-Investor Trade Creditor Unsecured Claim as outlined in Section 4.1(c) above, such Allowed Non-Investor Trade Creditor Unsecured Claim or such Allowed Victim Claim (as the case may be) will be entitled to vote for or against the Plan as part of Class 16(A) or Class 16(B) or as part of Class 17 (as the case may be).

**4.2     Class 15 - Priority Unsecured Claims.**

(a)     Classification:  Class 15 consists of all Allowed Priority Unsecured Claims.

(b)     Treatment:  Unless the Trustee and the holder of such Claim agree to different treatment, each holder of an Allowed Priority Unsecured Claim, if any, will be paid in

27

full on the later of (i) the Effective Date, or (ii) within five (5) Business Days of the date that the holder's Priority Unsecured Claim is an Allowed Claim.

(c)     <u>Voting</u>:  Claims in this Class are unimpaired and, therefore, holders of such Claims are presumed to vote in favor of the Plan.  Accordingly, their vote for or against the Plan will not be solicited by the Trustee.

### 4.3     <u>Class 16 - Non-Investor Trade Creditor Unsecured Claims</u>.

(a)     <u>Classification for Class 16(A)</u>:  Class 16(A) consists of all Allowed Unsecured Claims of Non-Investor Trade Creditors that are equal to or less than the amount of $50,000.00.  A Non-Investor Trade Creditor who has asserted an Unsecured Claim in excess of $50,000.00 can agree with the Trustee to have its Unsecured Claim Allowed in the amount of $50,000.00 or less and thereby become eligible for treatment in Class 16(A).

(b)     <u>Treatment for Class 16(A)</u>:  Unless the Trustee and the holder of such Claim agree to different treatment, each holder of an Allowed Unsecured Claim of a Non-Investor Trade Creditor that is equal to or less than the amount of $50,000.00, if any, will be paid Ten Percent (10.0%) of the Allowed Claim on the later of (i) the Effective Date, or (ii) within five (5) Business Days of the date that the holder's Non-Investor Trade Creditor Claim is an Allowed Claim, in full satisfaction of such Allowed Claim.

(c)     <u>Classification for Class 16(B)</u>:  Class 16(B) consists of all Allowed Unsecured Claims of Non-Investor Trade Creditors that are greater than the amount of $50,000.00.

(d)     <u>Treatment for Class 16(B)</u>:  Unless the Trustee and the holder of such Claim agree to different treatment, each holder of an Allowed Unsecured Claim of a Non-Investor Trade Creditor that is greater than the amount of $50,000.00, if any, shall be paid from the Victim Funds (but excluding any Restitution funds that are part of the Victim Funds) as follows:  (i) on the Initial Distribution Date, such holder will receive a distribution of available Victim Funds pursuant to the Rising Tide Distribution Method at the same time as and consistent with the Trustee's distribution of available Victim Funds to the holders of Allowed Victim Claims in Class 17; and (ii) any subsequent distribution will be made from the Victim Funds (but excluding any Restitution funds that are part of the Victim Funds), when appropriate in the Trustee's sole discretion, using the same Rising Tide Distribution Method, such subsequent distribution to be made at the same time as and consistent with the Trustee's subsequent distribution of Victim Funds to the holders of Allowed Victim Claims in Class 17.

(e)     <u>Voting</u>:  Claims in Class 16(A) and in Class 16(B) are impaired and, therefore, holders of such Claims will be solicited by the Trustee to vote for the Plan.

### 4.4     <u>Class 17 - Victim Claims</u>.

(a)     <u>Classification</u>:  Class 17 consists of all Allowed Victim Claims.

28

(b)     Treatment: Each holder of an Allowed Victim Claim shall be paid from the Victim Funds as follows:  (i) on the Initial Distribution Date, such holder will receive a distribution of available Victim Funds pursuant to the Rising Tide Distribution Method; and (ii) any subsequent distribution on account of Allowed Victim Claims will be made, when appropriate in the Trustee's sole discretion, using the same Rising Tide Distribution Method.  In addition, each holder of an Allowed Victim Claim that has made a timely Private Actions Trust Election and thereby assigned his or her Victim Causes of Action to the Private Actions Trust shall receive outside of the Plan the additional distributions (if any) to which such holder of any Allowed Victim Claim becomes entitled pursuant to the terms of the Private Actions Trust.

(c)     Effect of Restitution: In the event that Restitution is ordered, the following alternative scenarios will apply that will affect the treatment of Allowed Victim Claims as set forth herein:

(i)     In the event that Restitution is assigned to the Consolidated Estate or otherwise turned over to the Consolidated Estate by a Governmental Unit, such Restitution will be Victim Funds for distribution under the Rising Tide Distribution Method to Victims holding Allowed Victim Claims as provided for in the Plan. In the event that future Restitution payments are still to be made at the time of the entry of a Final Decree in the Bankruptcy Case, the Trustee shall assign such future Restitution payments back to the relevant Governmental Unit for distribution to Victims outside of the Plan, and the Trustee shall recommend that the relevant Governmental Unit distribute such Restitution pursuant to the Rising Tide Distribution Method, consistent with the terms of this Plan.

(ii)     In the event that Restitution is not assigned to the Consolidated Estate or otherwise turned over to the Consolidated Estate, but rather is distributed to Victims by the relevant Governmental Unit, the Trustee shall treat any such Governmental Unit distribution as a distribution to the Victim outside of the Plan, and such distribution shall be considered by the Trustee to have been applied pursuant to the Rising Tide Distribution Method for purposes of calculating any additional distributions to be made to the holder of the Allowed Victim Claim.

(d)     Voting:  Claims in this Class are impaired and, therefore, holders of such Claims will be solicited by the Trustee to vote for the Plan.

**4.5     Class 18 - Equity Interests.**

(a)     Classification:  Class 18 consists of any and all Equity Interests.

(b)     Treatment:  Any and all Equity Interests shall be cancelled on the Effective Date, and holders of Equity Interests will neither receive nor retain any property under the Plan.  However, to the extent that there is any personal property of Randall listed on the Randall Statements and Schedules that has not been administered as of the Final Decree, such property shall be deemed to be revested in Randall as of the date of the Final Decree.

Voting: Equity Interests are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan.  Accordingly, the Trustee will not solicit votes on the Plan from the holders of Equity Interests.

### 4.6    Class 19 – Allowed Secured Claim of Union Central.

(a)    Classification:  Class 19 consists of the Allowed Secured Claim of Union Central.

(b)    Treatment:  Union Central has filed Claim No. 745-1 in the amount of $977,101.16, asserting repayment obligations owed by Randall and Horizon Financial to Union Central to repay chargebacks and other advances by Union Central to Randall or Horizon Financial, and that such repayment obligations are secured by all compensation (including future compensation) of any kind that is or may become due from Union Central to Randall or Horizon Financial.  The Trustee has objected to Claim No. 745-1 as part of the Trustee's Adversary Proceedings against Union Central filed as Adversary Proceeding No. 12-02385 and Adversary Proceeding No. 13-02023 (collectively referred to as the "Union Central Adversary Proceedings"), and the Union Central Claim is therefore currently a Disputed Claim.  Union Central asserts that because it has a Secured Claim against the compensation referred to above, it is entitled to offset or assert recoupment rights against such compensation until the repayment obligations are paid in full, or until Union Central's obligation to pay compensation to Randall or Horizon Financial expires (at which point the balance of the unpaid repayment obligations would become an Unsecured Claim against the Debtors).  The Trustee contends pursuant to the Union Central Adversary Proceedings that there are no repayment obligations owed by Randall and Horizon Financial to Union Central, that Union Central has not have a Secured Claim against the Debtors, and that Union Central does not have any offset or recoupment rights,  Unless the Trustee and Union Central agree to different treatment, the Allowed Secured Claim of Union Central (once it is determined by a Final Order to be an Allowed Secured Claim) will be paid consistent with such Final Order of the Bankruptcy Court in the Union Central Adversary Proceedings.  If such Final Order rules that part of the Union Central Claim No. 745-1 is an Unsecured Claim, such Unsecured Claim (to the extent that it has become an Allowed Claim) will be a Class 16 Non-Investor Trade Creditor Unsecured Claim that will be classified as a Class 16(A) Claim if the Allowed Claim amount is $50,000 or less, or a Class 16(B) Claim if the Allowed Claim amount is more than $50,000.

(c)    Voting:  The Allowed Secured Claim of Union Central is impaired, but the Trustee has objected to the Union Central Claim, so the Union Central Claim is currently a Disputed Claim.  Union Central will be permitted to vote a Class 19 Secured Claim for or against the Plan only if Union Central obtains by the deadline outlined in this Plan an order from the Court temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a), as outlined in Section 3.3 of this Plan.

## ARTICLE V

## TREATMENT OF UNCLASSIFIED CLAIMS - ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

**5.1**    **Non-Classification.**

As discussed in Section 2.2 above, under Section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan.  The holders of all such Claims do not vote on the Plan and are instead treated separately in accordance with applicable law as set forth in this Article V.

**5.2**    **Administrative Expense Claims.**

(a)    _General_.  Except as otherwise agreed to by the Trustee and the holder of an Allowed Administrative Expense Claim, and except as specifically provided for in subsections (c) and (d) below, each such holder shall be paid in full in Cash on the later of: (i) the Effective Date, or (ii) within five (5) Business Days of the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

(b)    _U.S. Trustee's Fees_.  The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 28 U.S.C. § 1930 on or before the Effective Date. Any dispute related to the amount of the fees shall be resolved by the Court at the Confirmation Hearing.

(c)    _Administrative Expense Bar Date and Procedures_.  Other than the Claims of Professionals which are provided for below, the Trustee is not aware of any Administrative Expense Claims other than the Claims that are listed in any Exhibit to the Disclosure Statement. But, to the extent Administrative Expense Claims are alleged by Persons other than Professionals, requests for payment of such Claims must be filed and served on the Trustee and the United States Trustee no later than thirty (30) days after the Effective Date, which shall be the "Administrative Expense Claim Bar Date."  Any holder of an Administrative Expense Claim to which the Administrative Expense Claim Bar Date applies who fails to file a request seeking to have its Claim allowed on or before said Bar Date shall be forever barred from seeking the allowance of its Administrative Expense Claim or any other Claim, and the Trustee, the Debtors and the Consolidated Estate shall be discharged of any obligation on such Claim or any other Claim related to the Administrative Expense Claim.

(d)    _Professionals—Bar Dates and Procedures_.  All Professionals requesting compensation or reimbursement of expenses under Sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code for services rendered before the Effective Date shall file and serve on the Trustee and the United States Trustee an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date, which shall be the "Professional Administrative Expense Claim Bar Date."  Any Professional to which this Professional Administrative Expense Claim Bar Date applies who fails to file a request to have

31

its Claim allowed on or before said Bar Date shall be forever barred from seeking the allowance of its Administrative Expense Claim or any other Claim, and the Trustee, the Debtors and the Consolidated Estate shall be discharged of any obligation on such Claim or any other Claim related to such Professional's Administrative Expense Claim.

### 5.3    Priority Tax Claims.

At the sole election of the Trustee, the holder of an Allowed Priority Tax Claim other than the IRS Priority Tax Claim shall be paid either (i) upon such terms as may be agreed to between the Trustee and such holder of an Allowed Priority Tax Claim, (ii) in full in Cash on the later of the Effective Date or within five (5) Business Days of the date that such Allowed Priority Tax Claim becomes an Allowed Priority Tax Claim, or (iii) in deferred Cash payments to be agreed upon by the Trustee and the holder of the Allowed Priority Tax Claim, not to exceed a period of five (5) years after the Randall Petition Date.  The Trustee has requested that the United States, the holder of the IRS Priority Tax Claim, agree to different treatment of the IRS Priority Tax Claim than the options outlined above.  Notwithstanding the provisions above that apply to an Allowed Priority Tax Claim other than the IRS Priority Tax Claim, the IRS, on behalf of the United States, has agreed that the Trustee may hold the amount of the IRS Priority Tax Claim in reserve until after the United States has made a final determination on the Trustee's request that the United States agree to different treatment of the IRS Priority Tax Claim. Therefore, no payments on the IRS Priority Tax Claim will be made until after such final determination by the United States is made and has been communicated to the Trustee, and the deadline for any objection by the Trustee to the IRS Priority Tax Claim as outlined below has expired. Once such final determination by the United States has been made, then the treatment of the IRS Priority Tax Claim shall be as follows:  (i) the IRS Priority Tax Claim shall be treated upon such terms as may be agreed to between the Trustee and the IRS, (ii) the IRS Priority Tax Claim shall be paid in full in Cash within five (5) Business Days of the date that the IRS Priority Tax Claim becomes an Allowed Priority Tax Claim, and the Trustee shall have sixty (60) Business Days from the date that the final determination by the United States has been made and communicated to the Trustee to object to the IRS Priority Tax Claim, and if the Trustee does not object to the IRS Priority Tax Claim by such deadline, the IRS Priority Tax Claim shall be deemed to be an Allowed Priority Tax Claim upon the expiration of such deadline, or (iii) the IRS Priority Tax Claim shall be paid in deferred Cash payments to be agreed upon by the Trustee and the IRS after the IRS Priority Tax Claim becomes an Allowed Priority Tax Claim (consistent with the deadline for any objection by the Trustee to the IRS Priority Tax Claim as outlined above), not to exceed a period of five (5) years after the Randall Petition Date.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

### 6.1    General.

The Plan will be implemented and consummated through means contemplated by Section 1123(a)(5)(A), and (D), and Section 1123(b) of the Bankruptcy Code, including:

(a)      Retention of property of the Consolidated Estate for liquidation;

(b)      Where appropriate, the sale of property of the Consolidated Estate, and the distribution of net sale proceeds among the holders of Allowed Claims as provided for herein;

(c)      Where appropriate, the distribution of all or any part of the property of the Consolidated Estate among those having an interest in such property;

(d)      Compromising certain Claims; and

(e)      Retention and enforcement by the Trustee, post-confirmation, of any and all Claims and Causes of Action, including any and all Chapter 5 Claims.

**6.2**      **Administration of the Consolidated Estate by Trustee.**

The Trustee shall be appointed as the representative of the estate and shall administer the Consolidated Estate after confirmation of the Plan, including but not limited to by holding all rights, powers, and duties of a trustee under Chapter 11 of the Bankruptcy Code, as well as those rights, powers and duties afforded by this Plan and the Confirmation Order.  Unless expressly stated otherwise herein, the Trustee is the representative of the Consolidated Estate for all purposes after the entry of the Confirmation Order.

**6.3**      **Retention of Property of Consolidated Estate; Estate Assets to Remain in Consolidated Estate; No Revesting of Consolidated Estate Assets.**

At all relevant times, including after entry of the Confirmation Order and the occurrence of the Effective Date, the Trustee shall retain property of the Consolidated Estate including the retention of all Claims and Causes of Action, including as set forth in Section 6.6 below. Notwithstanding Section 1141(b) of the Bankruptcy Code, except as otherwise provided for in this Plan, property of the Estate, including Estate Litigation Claims, shall not revest in the Debtors but shall remain property of the Consolidated Estate subject to the jurisdiction of the Bankruptcy Court, under the exclusive control of the Trustee, until distributed to holders of Allowed Claims in accordance with the provisions of this Plan and the Confirmation Order.

**6.4**      **Liquidation of Property and Distribution of Net Proceeds.**

At all times relevant, including after the entry of the Confirmation Order and the occurrence of the Effective Date, the Trustee shall continue his orderly liquidation of property of the Consolidated Estate consistent with the terms of the Plan.  The Trustee shall continue to reduce all property of the Consolidated Estate to Cash, and distribute such Cash pursuant to the provisions of this Plan.  The Trustee shall use such Cash, less costs of administration, to pay the holders of Allowed Claims as provided for in the Plan and Confirmation Order until such Cash is exhausted.  In addition, the net proceeds from the sale of the 1505 N. 1200 W. Property that are attributable to the 1.5% undivided interest in the 1505 N. 1200 W. Property owned by Metamorphosis shall be distributed by the Trustee to the Consolidated Estate, free and clear of any interest or claim to such proceeds by Metamorphosis, and no distribution will be made to Metamorphosis by the Trustee with respect to the 1505 N. 1200 W. Property.

33

**6.5**    **Restitution.**

In the event that Restitution is ordered, the alternative scenarios set forth in Section 4.4(c) above will apply to the Restitution funds.

**6.6**    **Preservation of Causes of Action and Defenses.**

Except to the extent rights, Claims, Causes of Action, defenses, and counterclaims are expressly and specifically released in connection with the Plan or in any settlement agreement approved by the Bankruptcy Court during the Bankruptcy Case, (a) any and all rights, Claims, Causes of Action, defenses, and counterclaims accruing to or assertable by the Debtors or the Trustee on behalf of the Consolidated Estate, shall remain assets of the Consolidated Estate and may be asserted by the Trustee on behalf of the Consolidated Estate, and as the representative of the Consolidated Estate, after the Effective Date, and (b) the Trustee does not waive, relinquish or abandon (nor shall he be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Consolidated Estate or is assertable by the Consolidated Estate: (i) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Schedules, the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (ii) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Trustee, and (iii) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim filed a proof of Claim in the Bankruptcy Case, filed a notice of appearance or any other pleading or notice in the Bankruptcy Case, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, laches or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in the Schedules, the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that the Trustee, the Debtors and/or the Consolidated Estate has or may have as of the Confirmation Date.  The Trustee may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, Causes of Action, defenses, and counterclaims in his sole discretion in accordance with the best interests, and for the benefit of, the post-Effective Date Consolidated Estate.  Confirmation of this Plan will have no impact upon, and will not render *res judicata* any: (i) Estate Litigation Claim, (ii) any defenses any of the Debtors may have (including rights of setoff) in any action brought against any of the Debtors; or (iii) any party's right to object to any Claim against the Consolidated Estate, subject to any limitation expressly set forth in this Plan.  A partial listing of Estate Litigation Claims already asserted by the Trustee as well as potential parties against whom the Trustee may assert additional Estate Litigation Claims is attached as Exhibit C to this Plan.  This list is not comprehensive.  **In voting on this Plan, Creditors should not rely on the fact that they are not listed on Exhibit C of this Plan in voting to accept this Plan.  Estate Litigation Claims may be brought against parties not listed on Exhibit C, and those Estate Litigation Claims are expressly preserved under this Plan and may still be brought.**

34

**6.7     No Waiver of Legal Privileges.**

Confirmation of this Plan will not waive the attorney/client, work product or other legal privileges of any of the Debtors or the Trustee or the Consolidated Estate, including any such privileges that belong to the Trustee as the Private Actions Trustee.

**6.8     Common Interest Agreement Between and Among the Trustee and Private Actions Trust Participating Creditors.**

From and after the Confirmation Date, (i) the Trustee may share his own information or information of any of the Debtors or the Consolidated Estate with any of the Private Actions Trust Participating Creditors, and (ii) any Private Actions Trust Participating Creditor may share his or her or its own information with the Trustee, and the shared information will be considered shared pursuant to a common interest agreement, and the sharing of information will not constitute a waiver of any attorney/client privilege, work product privilege, or other similar privilege recognized by applicable law.

**6.9     Private Actions Trust.**

        (a)     _Establishment_.  On the Effective Date, the Private Actions Trust will be established pursuant to the terms of the Private Actions Trust Agreement to pursue the Victim Causes of Action and to receive, hold, liquidate, and distribute the proceeds of recoveries on the Victim Causes of Action on the terms set forth in the Private Actions Trust Agreement.

        (b)     _Eligibility to Participate in Private Actions Trust_.  Notwithstanding anything to the contrary in the Private Actions Trust Agreement or in this Plan, only Creditors who held Claims as of the Corporate Debtors Petition Date that would otherwise be Class 17 Allowed Victim Claims (or their successor(s) or assignee(s), if applicable) may assign their Victim Causes of Action to the Private Actions Trust and thereby be entitled to participate in any distributions from or other rights appurtenant to the Private Actions Trust.

        (c)     _Election to Assign Victim Causes of Action to the Private Actions Trust_. A Creditor who held a Claim as of the Corporate Debtors Petition Date that would otherwise be a Class 17 Allowed Victim Claim (or such Creditor's successor(s) or assignee(s), if applicable) may assign his or her Victim Causes of Action to the Private Actions Trust by making a Private Actions Trust Election and thereby become a Private Actions Trust Participating Creditor.

        (d)     _The Private Actions Trustee_.  Notwithstanding anything to the contrary in the Private Actions Trust Agreement or in this Plan, (i) the initial trustee of the Private Actions Trust will be the Trustee, and (ii) any successor trustee of the Private Actions Trust shall be appointed pursuant to the terms of the Private Actions Trust Agreement.

        (e)     _Participation in Private Actions Trust by Secondary Purchasers of Claims of Policyholders against the Debtor_.  Subject to the deadlines outlined in Section 7.5(e) of this Plan and applicable law, any Person that purchases or otherwise takes an assignment of a Class 17 Allowed Victim Claim prior to the Effective Date may participate in the Private Actions Trust

35

and qualify as a Private Actions Trust Participating Creditor, but only if such assignee makes a Private Actions Trust Election.

(f)     No Requirement for Bankruptcy Court Approval.  From and after the Effective Date, the Trustee may prosecute, waive, decline to pursue or otherwise resolve Victim Causes of Action in the Private Actions Trust without the approval or consent of the Bankruptcy Court or any of the Private Actions Trust Participating Creditors; provided, that the Trustee shall not consummate any settlement or compromise or release of the Victim Causes of Action in the Private Actions Trust without the prior approval of the Bankruptcy Court and after notice and an opportunity for a hearing having been given to the Private Actions Trust Participating Creditors.

(g)     Loans to Private Actions Trust from Consolidated Estate.  As contemplated by Sections 1.6 and 3.8(p) of the Private Actions Trust Agreement, the Trustee may elect to make one or more loans from the Consolidated Estate to the Private Actions Trust. All such loans in excess of $25,000 will be made only after receiving approval from the Bankruptcy Court after notice and an opportunity for a hearing.  Notice of a proposed loan and an opportunity for a hearing shall be given to only the United States Trustee and those Creditors who have filed with the Bankruptcy Court after the date of this Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date.  As outlined in Section 5.1 of the Private Actions Trust Agreement, any distributions from the Private Actions Trust will first be made to repay any loans or other funding obtained pursuant to Sections 1.6 or 3.8(p) of the Private Actions Trust Agreement.

(h)     Distributions from the Private Actions Trust.  The distribution from the Private Actions Trust (or the aggregate of all distributions from the Private Actions Trust if there is more than one distribution from the Private Actions Trust) shall be made in accordance with Section 5.1 of the Private Actions Trust Agreement as follows:

First, to repay the loans and/or other funding (including any fees, costs, or interest incurred in connection therewith) described in Sections 1.6 or 3.8(p) of the Private Actions Trust Agreement.

Second, to the Consolidated Estate in accordance with the following conditions and corresponding applicable amounts and/or percentages:

(i)  Thirty Percent (30%) for distributable amounts equal to or less than One Million Dollars ($1,000,000), plus

(ii) Twenty Percent (20%) for distributable amounts greater than One Million Dollars ($1,000,000) but equal to or less than Ten Million Dollars ($10,000,000), plus

(iii) Ten Percent (10%) for distributable amounts greater than Ten Million Dollars ($10,000,000).

Third, to the Private Actions Trust Beneficiaries on a prorata basis based upon the

36

respective percentages attributable to each Private Actions Trust Beneficiary for distribution purposes in accordance with the Beneficial Interest Calculation formula and other provisions outlined in Section 2.8 of the Private Actions Trust Agreement.[1]

Fourth, if all of the Private Actions Trust Beneficiaries have received the total amounts of their respective Victim Net Claim Amounts, then any remaining funds shall be distributed to the Consolidated Estate.

(i)      Trustee's Evaluation of Victim Causes of Action and Estate Litigation Claims and Determination of the Appropriate Distribution Methodology.  Based upon the information currently available, the Trustee has made a preliminary evaluation of the Victim Causes of Action and the Estate Litigation Claims against the Facilitators,  including Debtors' Agents, and any other Facilitator that, prior to the Randall Petition Date, acted as an attorney, accountant, auditor, or financial advisor for Debtors.  Based upon this preliminary evaluation, the Trustee believes that the Victim Causes of Action collectively have a greater value than the Estate Litigation Claims against the same parties.  The Trustee based the distribution methodology for the Private Actions Trust proposed in Section 2.8 of the Private Actions Trust Agreement, as outlined in Section 6.9(h) above of this Plan, pursuant to his preliminary evaluation as outlined above, but the Trustee has also determined that the Consolidated Estate should receive the distribution percentages from the Private Actions Trust outlined in Section 2.8 of the Private Actions Trust Agreement and in Section 6.9(h) of this Plan above for the following reasons:

―――――――――――――――――

[1] **The Beneficial Interest Calculation formula from Section 2.8 of the Private Actions Trust Agreement is the following:**

**Each Private Actions Trust Beneficiary's interest for Private Actions Trust distribution purposes will be calculated by the Private Actions Trustee as the percentage resulting from the following Beneficial Interest Calculation:**

**Step 1: divide (i) the sum of such Private Action Trust Beneficiary's Victim Net Claim Amount and all premiums (if any) paid on such Private Action Trust Beneficiary's Terminated Policy or Terminated Policies, by (ii) the sum of all of the Victim Net Claim Amounts for all of the Private Action Trust Beneficiaries and all premiums (if any) paid on all Terminated Policies of all of the Private Action Trust Beneficiaries; and**

**Step 2: multiply the resulting fraction by 100.**

Section 2.8 of the Private Actions Trust Agreement also describes the circumstances under which the Private Actions Trustee may correct and adjust the percentage interests of the Private Actions Trust Beneficiaries upon receipt of more accurate information to make the correct Beneficial Interest Calculations for all Private Actions Trust Beneficiaries.

(A)   The Consolidated Estate has incurred all of the initial setup expenses for creating the Private Actions Trust Agreement, which is the mechanism the Trustee will be using to investigate and potentially pursue the Victim Causes of Action.

(B)   The Chapter 11 structure provides a more workable mechanism for gathering together the Victims as a group to disclose to the Victims their opportunity to participate in the Private Actions Trust, and also facilitates the assignment by the participating Victims of their Victim Causes of Action to a common representative (i.e., the Private Actions Trustee) for the investigation and potential pursuit of the Victim Causes of Action.  The Victim Causes of Action should be more valuable when pursued as a group of multiple assigned Victims of Action, rather than each Victim locating his or her own individual attorney to pursue individual Victim Causes of Action.

(C)   The Chapter 11 process, which has extensive reporting requirements and requires the formulation and confirmation of a plan of reorganization and accompanying disclosure statement, is much more expensive than a Chapter 7 case.  The Trustee elected to keep this Bankruptcy Case in Chapter 11, rather than converting the Bankruptcy Case to a Chapter 7 case, in order to pursue the creation of the Private Actions Trust for the investigation and potential pursuit of the Victim Causes of Action.  The Consolidated Estate should be compensated for these additional expenses that the Consolidated Estate has incurred by keeping this Bankruptcy Case in Chapter 11.

(D)   The defendants of any Victim Causes of Action pursued by the Private Actions Trust will undoubtedly prefer to negotiate the final resolution of all Victim Causes of Action and Estate Litigation Claims against such defendants, and the Consolidated Estate is entitled to be compensated for the enhanced settlement value that arises in connection with the simultaneous pursuit of Victim Causes of Action and Estate Litigation Claims against the same defendants.

The Trustee has developed the distribution methodology for the Private Actions Trust outlined above based upon his preliminary evaluation and the current information available to the Trustee, which may or may not be consistent with future developments as they unfold. The Victims voting for the Plan acknowledge the foregoing criteria used by the Trustee in order to develop the distribution methodology for the Private Actions Trust and acknowledge and agree that the Trustee has used his reasoned judgment and acted in good faith in developing this distribution methodology.

(j)   <u>Interpretation</u>.  If the terms of this Plan conflict with the terms of the Private Actions Trust Agreement on matters arising from or related to the Private Actions Trust, the terms of the Private Actions Trust Agreement will govern.

(k)   **Continued Investigation of Victim Causes of Action.  The Trustee has not fully investigated the Victim Causes of Action in this Bankruptcy Case.  This investigation is ongoing and may occur after confirmation of this Plan.  Creditors and other parties in interest are advised that, notwithstanding that no specific reference is made**

38

to particular Victim Causes of Action in this Plan, the Disclosure Statement, or in other documents filed in the Bankruptcy Case, Victim Causes of Action may, at the sole discretion of the Private Actions Trustee, still be asserted under the terms of the Private Actions Trust Agreement at any time (subject to any applicable statute of limitations and other limitations, if any, set forth in this Plan).

(l)      **Discretion of Trustee**.  The assignment of any Victim Causes of Action to the Private Actions Trust does not obligate the Private Actions Trustee to prosecute or assert such Victim Causes of Action.  The Private Actions Trustee shall have the sole discretion to prosecute, settle, compromise, waive, release, decline to pursue or otherwise resolve any Victim Causes of Action assigned to the Private Actions Trust.

(m)      **Waiver of Conflicts of Interest by the Private Actions Trust Beneficiaries**.  By making a Private Actions Trust Election, a Private Actions Trust Beneficiary acknowledges and agrees that: (i) the Private Actions Trustee shall have the sole discretion to decide whether to pursue any Victim Causes of Action; (ii) conflicts of interest could arise as a result of the Trustee simultaneously acting as the Trustee of the Consolidated Estate and as the Private Actions Trustee; (iii) there is a risk that the Trustee, acting in both capacities, could take actions that may adversely impact the interests of the Consolidated Estate, such Private Actions Trust Beneficiary, and/or the interests of the Private Actions Trust, and that the risks from such potential conflicts of interest have been adequately disclosed to such Private Actions Trust Beneficiary; (iv) the Private Actions Trust Beneficiary has had the opportunity to consult with legal counsel of such Private Actions Trust Beneficiary's choosing with respect to the risks of such potential conflicts of interest; and (v) the Private Actions Trust Beneficiary expressly waives any and all conflicts of interest that may arise as a result of the Trustee simultaneously acting as the Trustee of the Consolidated Estate and as the Private Actions Trustee.

(n)      **Waiver of Conflicts of Interest Between the Private Actions Trustee and the Consolidated Estate**.  All conflicts of interest that may exist between the Private Actions Trustee and the Consolidated Estate are hereby waived.

**6.10**      **Prosecution and Resolution of Estate Litigation Claims.**

(a)      Trustee's authority to bring, prosecute and settle Estate Litigation Claims. After confirmation of this Plan, the Trustee shall have the full right and authority to prosecute, settle, compromise, waive, release, decline to pursue or otherwise resolve any Estate Litigation Claims in this Bankruptcy Case in accordance with the terms of this Plan, whether the Estate Litigation Claim was commenced prior to or after the Effective Date.

(b)      Deadline for bringing Estate Litigation Claims.  Nothing in this Plan limits the time by which the Trustee must bring an Estate Litigation Claim.  The deadline for bringing Estate Litigation Claims is any applicable statute of limitations, as such statute of limitations may be altered or amended by the terms of the Bankruptcy Code.  For purposes of determining the applicable statute of limitations, Section 108 of the Bankruptcy Code and all statutory and

equitable tolling principles will be applicable to all Estate Litigation Claims, and confirmation of this Plan will not limit any time periods contained therein.

(c)     Bankruptcy Court Approval.  From and after the Effective Date, the Trustee may settle or otherwise resolve Estate Litigation Claims without the approval or consent of the Bankruptcy Court where the Face Amount of the Estate Litigation Claim is $100,000 or less.  The Bankruptcy Court must approve the settlement of any Estate Litigation Claim where the Face Amount of the Estate Litigation Claim is more than $100,000.  Notice of any proposed settlement and an opportunity for a hearing shall be given to only the United States Trustee and those Creditors who have filed with the Bankruptcy Court after the date of this Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date.

**(d)     Continued investigation of Estate Litigation Claims.  THE TRUSTEE HAS NOT FULLY INVESTIGATED THE ESTATE LITIGATION CLAIMS IN THIS BANKRUPTCY CASE.  THIS INVESTIGATION IS ONGOING AND WILL CONTINUE AFTER CONFIRMATION OF THIS PLAN.  CREDITORS AND OTHER PARTIES IN INTEREST ARE ADVISED THAT, NOTWITHSTANDING THAT NO SPECIFIC REFERENCE IS MADE TO A PARTICULAR ESTATE LITIGATION CLAIM IN THIS PLAN, THE DISCLOSURE STATEMENT, OR IN OTHER DOCUMENTS FILED IN THE BANKRUPTCY CASE, THE TRUSTEE MAY STILL BRING ESTATE LITIGATION CLAIMS AGAINST ANY PARTY AT ANY TIME (SUBJECT TO ANY APPLICABLE STATUTE OF LIMITATIONS).  A PARTIAL LISTING OF PARTIES AGAINST WHOM THE TRUSTEE HAS ALREADY ASSERTED ESTATE LITIGATION CLAIMS OR MAY ASSERT ESTATE LITIGATION CLAIMS IN THE FUTURE IS ATTACHED AS EXHIBIT C TO THIS PLAN.  THIS LIST IS NOT COMPREHENSIVE.  IN VOTING ON THIS PLAN, CREDITORS SHOULD NOT RELY ON THE FACT THAT THEY ARE NOT LISTED ON EXHIBIT C OF THIS PLAN IN VOTING TO ACCEPT THIS PLAN.  ESTATE LITIGATION CLAIMS MAY BE BROUGHT AGAINST PARTIES NOT LISTED ON EXHIBIT C AND THOSE ESTATE LITIGATION CLAIMS ARE EXPRESSLY RESERVED UNDER THIS PLAN AND MAY STILL BE BROUGHT.**

**6.11     Non-Discharge of Randall and Corporate Debtors and Injunction.**

**THIS PLAN PROVIDES FOR AN INJUNCTION OF CERTAIN ACTIONS AND CLAIMS AGAINST THE DEBTORS.  ANY HOLDER OF ANY CLAIMS, RIGHTS, CAUSES OF ACTION OR INTERESTS AGAINST THE DEBTORS MAY NOT PURSUE (a) PROPERTY OF THE CONSOLIDATED ESTATE OTHER THAN THROUGH SEEKING ALLOWANCE OF ITS CLAIM, IF ANY, FOR DISTRIBUTION IN ACCORDANCE WITH THIS PLAN; OR (b) THE TRUSTEE AND HIS AGENTS.**

**PURSUANT TO SECTION 1141(d)(3) OF THE BANKRUPTCY CODE, THE CONFIRMATION ORDER SHALL NOT DISCHARGE CLAIMS AGAINST THE CORPORATE DEBTORS.  IN ADDITION, PURSUANT TO SECTION 1141(d)(3) OF THE BANKRUPTCY CODE, RANDALL IS NOT DISCHARGED UNDER THE PLAN**

BECAUSE (A) THE PLAN IS A LIQUIDATING PLAN, (B) THE DEBTORS WILL NOT BE ENGAGED IN BUSINESS AFTER CONSUMMATION OF THE PLAN, AND (C) RANDALL WOULD BE DENIED A DISCHARGE UNDER SECTION 727(a) OF THE BANKRUPTCY CODE IF THE BANKRUPTCY CASE WERE A CHAPTER 7 CASE BECAUSE, PURSUANT TO 727(a)(12), SECTION 522(q)(1) OF THE BANKRUPTCY CODE MAY BE APPLICABLE TO RANDALL.   HOWEVER, NO HOLDER OF A CLAIM MAY RECEIVE ANY PAYMENT FROM OR SEEK RECOURSE AGAINST ANY ASSETS THAT ARE PROPERTY OF THE CONSOLIDATED ESTATE, EXCEPT FOR THOSE ASSETS REQUIRED TO BE DISTRIBUTED TO SUCH HOLDER AS EXPRESSLY PROVIDED FOR IN THE PLAN.

AS OF THE EFFECTIVE DATE, ALL PERSONS ARE PRECLUDED FROM ASSERTING AGAINST ANY PROPERTY OF THE CONSOLIDATED ESTATE AND ASSETS THAT ARE DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN ANY CLAIMS, RIGHTS, CAUSES OF ACTION, LIABILITIES OR INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, OTHER THAN AS EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, REGARDLESS OF THE FILING, LACK OF FILING, ALLOWANCE OR DISALLOWANCE OF SUCH CLAIM, AND REGARDLESS OF WHETHER SUCH PERSON HAS VOTED TO ACCEPT THE PLAN.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A DEBT, RIGHT, CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY OR INTEREST AGAINST OR IN THE CORPORATE DEBTORS THAT WOULD BE DISCHARGED UPON CONFIRMATION OF THE PLAN ON THE EFFECTIVE DATE BUT FOR THE PROVISIONS OF SECTION 1141(d)(3) OF THE BANKRUPTCY CODE SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH DEBT, RIGHT, CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY OR INTEREST: (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING ON ACCOUNT OF SUCH DEBT, RIGHT, CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY OR INTEREST AGAINST ASSETS OR PROCEEDS THEREOF THAT ARE PROPERTY OF THE CONSOLIDATED ESTATE AND WHICH ARE TO BE DISTRIBUTED UNDER THE PLAN, OTHER THAN TO ENFORCE ANY RIGHT TO A DISTRIBUTION WITH RESPECT TO SUCH ASSETS OR THE PROCEEDS THEREOF AS PROVIDED UNDER THE PLAN; (ii) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY ASSETS TO BE DISTRIBUTED TO CREDITORS UNDER THE PLAN, OTHER THAN AS PERMITTED UNDER SUBPARAGRAPH (i) ABOVE; and (iii) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY ASSETS TO BE DISTRIBUTED UNDER THE PLAN, OTHER THAN AS PERMITTED BY THE PLAN, PROVIDED THAT NOTHING CONTAINED HEREIN SHALL LIMIT THE RIGHTS OF ANY DISTRIBUTEE UNDER THE PLAN FROM TAKING ANY

41

ACTIONS IN RESPECT OF PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED
TO IT UNDER THE PLAN.

## ARTICLE VII

## CLAIM OBJECTIONS AND DISTRIBUTION OF CONSIDERATION

### 7.1    Objections to Claims.

Unless otherwise extended by an order entered by the Bankruptcy Court, objections to the allowance of Claims shall be filed and served upon the Persons asserting such Claims as follows: (a) for known Priority Tax Claims other than the IRS Priority Tax Claim, Secured Claims, Priority Unsecured Claims, Non-Investor Trade Creditor Unsecured Claims listed on Exhibit B, and Victim Claims, no later than one hundred and twenty (120) days after the Effective Date; (b) for any and all Claims to which the Administrative Claims Bar Date, the Professional Administrative Claims Bar Date or the Contract Rejection Claims Bar Date applies, thirty (30) days after the expiration of the respective Bar Date; (c) for any Claim that is not listed on any Exhibit to the Disclosure Statement or to which the Administrative Claims Bar Date, the Professional Administrative Claims Bar Date or the Contract Rejection Claims Bar Date applies, thirty (30) days after the Trustee is provided notice of such Claim; and (d) for the IRS Priority Tax Claim, within the deadline outlined in Section 5.3 of this Plan.

The Trustee shall (i) be responsible for filing objections to any and all Claims that are Disputed Claims asserted against the Consolidated Estate; (ii) have authority to settle and compromise any objection to a Disputed Claim, if appropriate, without further order of the Bankruptcy Court, provided that the total Cash settlement amount does not exceed $100,000; and (iii) he may assert any and all Claims, rights of action, Causes of Action, counterclaims and defenses held by the Consolidated Estate after the Effective Date as they existed prior to the Effective Date.  Distributions made under the Plan to the holder of a Claim shall not be considered to be a waiver or release by the Trustee and the Consolidated Estate of any Claims against the holder of the Claim.

### 7.2    Disputed Claims.

On the Effective Date or thereafter, no distributions shall be made unless a Claim is an Allowed Claim on the Effective Date.  Except as may otherwise be agreed with respect to any Disputed Claim, no payment or distribution will thereafter be made with respect to all or any portion of a Disputed Claim until such Claim is an Allowed Claim.  Payments and distributions to each holder of a Disputed Claim (to the extent that such Claim, or any portion thereof, ultimately becomes an Allowed Claim) must be made in accordance with the Plan.

### 7.3    Estimation of Claims.

The Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including to establish the amount of the Claim for voting purposes, the amount of the Disputed Cash Reserve, or during any litigation

42

concerning or an objection to such Claim.  The Trustee shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim.  If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Trustee from pursuing any additional proceedings to object to any ultimate payment of such Claim.  If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan.  All such proceedings are cumulative and not exclusive remedies.

### 7.4     Disputed Claims Reserve, Operating Reserve, and Maintenance of Cash.

(a)     The Disputed Claims Reserve.  On the Effective Date, the Trustee will establish and maintain a reserve (the "Disputed Claims Reserve") to reserve for and fund the payment of Disputed Claims.  The amount of the Disputed Claims Reserve will be equal to the sum of the following: (i) the Face Amount of all unpaid Disputed Priority Tax Claims, (ii) the Face Amount of all unpaid Disputed Administrative Claims, (iii) the Face Amount of all Disputed Claims for the Secured Claims in Classes 1-14, (iv) the Face Amount of all Class 15 Disputed Claims, (v) the Face Amount of all Class 16(A) and Class 16(B) Disputed Claims, and (vi) the Victim Net Claim Amount of all Class 17 Disputed Claims.  The Trustee will, from time to time, recalculate the amount of the Disputed Claims Reserve.  The Trustee may use any Cash withdrawn from the Disputed Claims Reserve for distributions in accordance with the terms of this Plan.

(b)     The Operating Reserve.  From and after the Effective Date, the Trustee will establish and maintain a reserve (the "Operating Reserve") to fund the payments required to be made under this Plan on account of distributions to be made to holders of Allowed Claims, fees to the Clerk of the Bankruptcy Court, and fees to the United States Trustee, as well as to enable the Trustee to pay post-Effective Date fees and expenses, including those incurred or to be incurred by Professionals employed by the Trustee through the closing of this Bankruptcy Case and entry of a Final Decree.  The Trustee will determine the amount of the Operating Reserve and may, from time to time, recalculate the amount of the Operating Reserve.  The Trustee will not be liable if the Operating Reserve is inadequate.

(c)     Maintenance of the Disputed Claims Reserve, the Operating Reserve, and other Cash of the Debtor and the Estate.  Except as otherwise provided in this Plan, the Trustee may hold Cash of the Estate in one or more accounts that the Trustee determines to be in the best interests of the Estate.  Any reference to the establishment or maintenance of any reserves contained in this Plan, including the Disputed Claims Reserve and the Operating Reserve, will not require the Trustee to establish separate deposit or similar accounts for such reserves.  The establishment of reserves under this Plan may be accomplished by accounting, general ledger, paper, or other book entry, as the Trustee may determine.

### 7.5     Method of Distributions Under the Plan.

(a)     General.  After the Initial Distribution Date, the Trustee, in his sole discretion, may make one or more additional distributions if he determines, in his sole discretion, that sufficient funds exist to warrant such additional distributions.

43

(b)    Mailing.  All distributions under the Plan to be made by the Trustee to the holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the respective addresses of such holders as listed on the Distribution Record Date (i) on the respective proofs of Claim by such holders, including amendments thereto, (ii) on any written notices of address changes delivered to the Trustee after the date of the filing of any applicable proof of Claim, or (iii) at the addresses reflected on the Schedules if no proof of Claim is filed and the Trustee has not received a written notice of change of address.

(c)    Form of Distributions.  Any payment of Cash made by the Trustee pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Trustee; provided, however, that after the occurrence of the Effective Date, the Trustee is not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10.00); provided, further, that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to ten dollars ($10.00) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars ($10.00) is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.  To the extent that a final distribution would require a distribution of ten dollars ($10.00) or less to a holder of an Allowed Claim, such amount shall be deemed forfeited, and shall be redistributed to holders of Allowed Claims who are to receive a final distribution in excess of ten dollars ($10.00) on account of their Allowed Claim.  If, in the sole discretion of the Trustee, excess Cash exists as of the time of a final distribution that is so *de minimis* in amount that it cannot be reasonably redistributed to the holders of Allowed Claims, the Trustee may deposit such Cash in the unclaimed funds account of the Bankruptcy Court.

(d)    Distributions to be on Business Days/Timeliness.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after the Effective Date and, in any event, within thirty (30) days after the Effective Date.

(e)    Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the Randall Claim Docket and the Corporate Debtors Claim Dockets shall be closed.  The Trustee shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

(f)    Compliance with Tax Requirements.  In connection with the Plan, to the extent applicable, the Trustee shall comply with all withholding and reporting requirements imposed on it by a Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**7.6    Unclaimed Funds.**

44

If (a) at the time a distribution to holders of Allowed Claims is to be made under this Plan, the Trustee is unable to deliver the portion of such distribution due to a holder of an Allowed Claim, (b) any amount paid to the holder of an Allowed Claim is returned as undeliverable and the Trustee is unable, with reasonable effort, to ascertain a correct address for the holder entitled thereto within thirty (30) days of its return, or (c) any check distributed in payment of an Allowed Claim is neither returned nor negotiated within six (6) months of the date distributed, in every such case, the Allowed Claim shall be deemed reduced to zero in amount and the holder thereof shall have no further right to payment against or distribution from the Debtors, the Trustee or the Consolidated Estate in any way. The Cash that, but for this section, would have been payable to the holders of such Allowed Claims shall, to the extent applicable, revert to the Consolidated Estate and be available for application or distribution in accordance with the terms of the Plan. In regard to locating holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned, the Trustee shall be required to take no more steps other than to compare the returned mail against addresses held for the holder of the Claim through filed documents or correspondence and general internet search for an alternative address.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1     **Executory Contracts and Unexpired Leases**.

Although the Trustee is not aware of any executory contracts or unexpired leases to which the Debtors are a party, any such executory contracts or unexpired leases shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date of the Plan.

### 8.2     **Rejection Damage Claims And Contract Rejection Claim Bar Date**.

If the rejection of an executory contract or unexpired lease by the Debtors pursuant to this Article VIII results in a Claim for damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Consolidated Estate or their respective properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served on the Trustee on or before thirty (30) days following the Effective Date, which shall be the "Contract Rejection Claim Bar Date." Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of Claim are timely filed will be treated as Non-Investor Trade Creditor Unsecured Claims subject to the provisions of the Plan. The Trustee shall have the right to object to any rejection damage Claims.

45

# ARTICLE IX

# CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1     Conditions Precedent to Effectiveness.**

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived:

(a)     The Confirmation Order, in form and substance reasonably acceptable to the Trustee, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)     All actions, other documents and agreements necessary to implement the Plan, if any, shall have been executed, delivered, and, if necessary, properly recorded, and shall have become effective; and

(c)     The Consolidated Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date and the Initial Distribution Date.

**9.2     Waiver of Conditions.**

The Trustee in his sole discretion may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 above, except that the Trustee may not waive the condition that the Consolidated Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date and the Initial Distribution Date.

# ARTICLE X

# RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Bankruptcy Case, the assets and liabilities of the Consolidated Estate existing both prior to and after entry of the Consolidation Order, and the Plan to the fullest extent permitted by law, including, but not limited to:

(a)     Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim, resolving any objection to the allowance or priority of Claims, and resolving any dispute as to the subordination of any Claim;

46

(b)      Approving compromises and settlements under Bankruptcy Rule 9019 to the extent required under or included in the Plan;

(c)      Hearing and determining any and all Claims, Causes of Action or rights that have been or may be asserted or commenced by the Trustee;

(d)      Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of Professionals for work performed after the Effective Date shall be made in the ordinary course of business by the Trustee and shall not be subject to approval by the Bankruptcy Court;

(e)      Hearing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Bankruptcy Case;

(f)      Effectuating performance of and payment under the provisions of any settlement agreement entered into by the Trustee on behalf of the Consolidated Estate and payment under any Final Order and judgment obtained in any Causes of Action or related to any Claims or Causes of Action asserted by the Trustee against any Person;

(g)      Entering such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(h)      Hearing and determining all matters and disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Disclosure Statement, the Plan and the Confirmation Order, including but not limited to disputes arising under agreements, documents or instruments executed in connection with the Plan;

(i)      Modifying the Plan and/or any documents executed in conjunction with the Plan at the request of the Trustee and as provided by applicable law, including to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(j)      Issuing injunctions, entering and implementing other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(k)      Entering and implementing orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)      Enforcing all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

47

(m)     Determining any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein;

(n)     Hearing and determining all matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     Hearing and determining any and all matters relating to the administration of the Consolidated Estate by the Trustee either prior to or after the Effective Date; and

(p)     Entering a Final Decree and closing the Bankruptcy Case.

# ARTICLE XI

# MISCELLANEOUS

## 11.1    Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## 11.2    Notice of Effective Date.

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the Trustee shall file and serve on each holder of an alleged Claim a written notice of the occurrence of the Effective Date.

## 11.3    Limitation of Liability.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Trustee, his employees, officers, directors, agents or representatives, any Professionals, and the Consolidated Estate, shall not have or incur any liability to any Person for any authorized act taken or authorized omission made in good faith in connection with or related to the Bankruptcy Case or the Consolidated Estate, including the objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan or otherwise.

Consistent with Section 1125(e) of the Bankruptcy Code, to the extent acceptances or rejections of the Plan have been solicited, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Trustee and the Professionals are not liable on account of such solicitation or participation or for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

All actions by the Trustee and his employees, officers, directors, agents or representatives, including any Professionals, as contemplated in the Plan or otherwise in the

48

administration of the Bankruptcy Case shall be conclusively deemed to be actions within the scope of the Bankruptcy Code.  Except as prohibited by applicable law, and excluding acts or omissions constituting gross negligence or willful misconduct, the Trustee and his employees, officers, directors, agents or representatives, including any Professionals, shall not be liable to any Person for any act taken or omitted by any of them in good faith and in compliance with the applicable provisions of the Bankruptcy Code or pursuant to the discretion, power, and authority conferred by this Plan or Court Orders.  Except as prohibited by applicable law, the Trustee and his employees, officers, directors, agents or representatives, including any Professionals, shall not be liable to any individual Creditor, and shall be liable only to the Consolidated Estate, for acts or omissions related to performance of their duties for the Consolidated Estate that constitute willful misconduct or gross negligence.  In all respects, and except as prohibited by applicable law, the Trustee shall be entitled to rely upon the advice of counsel with respect to his duties and responsibilities under the Plan, and such reliance shall in no event constitute gross negligence or willful misconduct.  The Trustee shall not be responsible for any obligations or duties of the Debtors with respect to corporate or limited liability company governance, corporate or limited liability company reporting, or provision of information for securities law compliance, except any such duties that are expressly delegated to the Trustee in this Plan.

### 11.4   Execution of Documents and Corporate Action.

The Trustee may execute such documents or take such other action as is necessary to effectuate the transactions provided for in this Plan, to wind-down or dissolve any of the Debtors or any entities in the Randall Enterprise.

### 11.5   Default of Plan.

In the event of any default of the provisions of this Plan, a Creditor or party in interest aggrieved by such default may provide written notice to the Trustee.  The written notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default.  The Trustee shall have thirty (30) days after receipt of notice of default to cure such default.  If the Trustee does not cure such default within thirty (30) days after receipt of a notice of default, then a Creditor or party in interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan.  The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured.  Upon finding a material default, the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan.

### 11.6   Setoffs and No Waiver.

Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Trustee and the Consolidated Estate of any rights of setoff the Consolidated Estate may have against any Person.  The failure of the Debtors or any other Person to object to any Claim for the purposes of voting shall not be deemed a waiver of the Trustee's right to object to or examine such Claim, in whole or in part.

**11.7    Amendment or Modification of the Plan.**

Alterations, amendments or modifications of the Plan may be proposed in writing by the Trustee at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Trustee shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Trustee may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any Exhibit attached to the Disclosure Statement or the Plan.

**11.8    Revocation or Withdrawal of the Plan.**

The Trustee reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of liquidation.  If the Trustee revokes or withdraws the Plan, or if confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the allowing, fixing or limiting to an amount certain any Claim or Class of Claims, rejection or assumption of any executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan) shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute a waiver or release of any Claims by or against the Consolidated Estate, the Debtors or the Consolidated Estate, (ii) prejudice in any manner the rights of the Debtors or Trustee in any further proceedings involving the Debtors or the Consolidated Estate, or (iii) constitute an admission of any sort by the Debtors or the Trustee.

**11.9    Severability.**

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Trustee, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

**11.10** **Exhibits.**

Any Disclosure Statement Exhibits or Exhibits to the Plan not filed herewith will be filed no later than ten (10) days prior to the commencement of the Confirmation Hearing.  Unless otherwise ordered by the Bankruptcy Court, the Exhibits, if any, to the Plan may not be served with the Plan, but rather copies of all such Exhibits may be provided to the requesting parties upon written request to Trustee's counsel.

**11.11** **Binding Effect.**

The Plan and all rights, duties and obligations hereunder shall be binding upon and inure to the benefit of the Debtors, the Trustee and the Consolidated Estate, and any successors and assigns.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**11.12** **Notices.**

All notices, requests and demands to or upon the Trustee shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by e-mail, when received and confirmed, addressed as follows:

> Michael R. Johnson
> **RAY QUINNEY & NEBEKER P.C.**
> 36 South State Street, 14th Floor
> Salt Lake City, Utah  84111
> Email:  mjohnson@rqn.com

**11.13** **Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.14** **Post-Confirmation Administration - Fees, Reports, Final Decree.**

On and after the Effective Date, the Trustee shall no longer be required to file monthly operating reports with the United States Trustee.

Until the entry of a Final Decree, the Trustee shall:

(a)     Pay the costs of administering the Consolidated Estates and any post-confirmation fees due pursuant to 28 U.S.C. §1930;

(b)     Unless otherwise ordered, file status reports related to the consummation of the Plan when, in his discretion, such reports would be beneficial to Creditors; and

(c)     Once the Consolidated Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Trustee shall file a final report and account of all receipts and disbursements, and serve that report via ECF with notice of said report served on Persons entitled to notice in the Bankruptcy Case.  Any such report shall include a request that the Bankruptcy Court enter a Final Decree in the Bankruptcy Case.

**11.15   Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**11.16   Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

# ARTICLE XII

# REQUEST FOR CONFIRMATION

The Trustee hereby requests that the Court confirm the Plan pursuant to Section 1129 of the Bankruptcy Code.

DATED this 11th day of September, 2013.

RAY QUINNEY & NEBEKER P.C.

/s/Michael R. Johnson
Michael R. Johnson
Douglas M. Monson
David H. Leigh
*Counsel for Gil A. Miller, Chapter 11*
*Trustee of the Consolidated Estate*

1215801.12/dmm/rqn

52

**EXHIBIT A TO**
**CHAPTER 11 TRUSTEE'S LIQUIDATING PLAN OF REORGANIZATION DATED**
**SEPTEMBER 9, 2013**

**RANDALL PRIVATE ACTIONS TRUST AGREEMENT**

## TABLE OF CONTENTS

ARTICLE 1 ESTABLISHMENT OF THE PRIVATE ACTIONS TRUST ................................ 3
    1.1.    Establishment of Private Actions Trust and Appointment of the Original
        Trustee.................................................................................................................. 3
    1.2.    Transfer of Assets and Rights to the Private Actions Trustee............................. 3
    1.3.    Title to Victim Causes of Action ......................................................................... 5
    1.4.    Nature and Purpose of the Private Actions Trust. ............................................... 5
    1.5.    Incorporation of Plan. .......................................................................................... 6
    1.6.    Funding of the Private Actions Trust. .................................................................. 6
    1.7.    Appointment as Representative in Lieu of Assignment. ...................................... 7

ARTICLE 2 PRIVATE ACTIONS TRUST INTERESTS ................................................... 7
    2.1.    Allocation of Private Actions Trust Interests. ..................................................... 7
    2.2.    Interests Beneficial Only. ..................................................................................... 7
    2.3.    Evidence of Beneficial Interests. .......................................................................... 7
    2.4.    Securities Law Registration.................................................................................. 7
    2.5.    Interests Nontransferable. ..................................................................................... 8
    2.6.    Access to the Trust Register by the Private Actions Trust Beneficiaries. ............ 8
    2.7.    Absolute Owners. ................................................................................................. 8
    2.8.    Private Actions Trust Beneficiary's Trust Interest. ............................................. 8

ARTICLE 3 THE PRIVATE ACTIONS TRUSTEE ......................................................... 9
    3.1.    Private Actions Trust Proceeds............................................................................. 9
    3.2.    Collection of Income. ........................................................................................... 9
    3.3.    Payment of Private Actions Trust Expenses......................................................... 9
    3.4.    Distributions. ...................................................................................................... 10
    3.5.    Tenure, Removal, and Replacement of the Private Actions Trustee.................. 10
    3.6.    Acceptance of Appointment by Successor Private Actions Trustee. ................. 11
    3.7.    Role of the Private Actions Trustee.................................................................... 11
    3.8.    Authority of Private Actions Trustee.................................................................. 11
    3.9.    Limitation of Private Actions Trustee's Authority............................................. 13
    3.10.   Books and Records. ............................................................................................ 14
    3.11.   Inquiries into Trustee's Authority. ..................................................................... 14
    3.12.   Compliance with Laws. ...................................................................................... 14
    3.13.   Compensation of the Private Actions Trustee. ................................................... 14
    3.14.   Reliance by Private Actions Trustee. ................................................................. 15
    3.15.   Investment and Safekeeping of Private Actions Trust Assets............................ 15

i

3.16.    Standard of Care; Exculpation...........................................................................16

ARTICLE 4   TAX MATTERS .........................................................................................16
4.1.    Federal Income Tax Reporting. .............................................................16
4.2.    Allocations of Private Actions Trust Taxable Income. ...........................17

ARTICLE 5   DISTRIBUTIONS ........................................................................................17
5.1.    Annual Distribution; Withholding..........................................................18
5.2.    Manner of Payment or Distribution.........................................................19
5.3.    Delivery of Private Actions Trust Distributions......................................19
5.4.    Cash Distributions. .................................................................................19

ARTICLE 6   REPORTS TO PRIVATE ACTIONS TRUST BENEFICIARIES.......................19
6.1.    Reports.....................................................................................................19

ARTICLE 7   TERM; TERMINATION OF THE PRIVATE ACTIONS TRUST .....................20
7.1.    Term; Termination of the Private Actions Trust. .....................................20
7.2.    Continuance of Trust for Winding Up......................................................20

ARTICLE 8   AMENDMENT AND WAIVER .......................................................................21
8.1.    Amendment and Waiver. ..........................................................................21

ARTICLE 9   MISCELLANEOUS PROVISIONS ...............................................................22
9.1.    Intention of Parties to Establish the Private Actions Trust......................22
9.2.    Reimbursement of Trust Costs. ................................................................22
9.3.    Laws as to Construction. ..........................................................................22
9.4.    Jurisdiction...............................................................................................22
9.5.    Severability. .............................................................................................23
9.6.    Notices. ....................................................................................................23
9.7.    Fiscal Year. ..............................................................................................23
9.8.    Headings. .................................................................................................23
9.9.    Counterparts.............................................................................................24
9.10.   Confidentiality. ........................................................................................24
9.11.   Entire Agreement......................................................................................24

## RANDALL VICTIMS PRIVATE ACTIONS TRUST AGREEMENT

This Randall Victims Private Actions Trust Agreement (the "Private Actions Trust Agreement"), dated as of September 9, 2013, by and between those Creditors of the Substantively Consolidated Bankruptcy Estate of Dee Allen Randall, Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc., and Horizon Financial & Insurance Group Inc. (collectively the "Debtors") who were the holders as of the Corporate Debtors Petition Date of claims that would be classified as Class 17 Victim Claims under the "Chapter 11 Trustee's Liquidating Plan of Reorganization" dated as of September 9, 2013, as the same may be modified, amended, or supplemented, and including all exhibits and schedules thereto (the "Plan"), that have timely made a Private Actions Trust Election (collectively, the "Grantors"), and Gil A. Miller, as the original Private Actions Trustee (the "Original Trustee"), is executed in order to establish a liquidating litigation trust in connection with the Plan.  Capitalized terms used in this Private Actions Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

### WITNESSETH

WHEREAS, on December 20, 2010 (the "Randall Petition Date"), Dee Allen Randall ("Randall") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court");

WHEREAS, Gil A. Miller (the "Chapter 11 Trustee") was appointed by the Bankruptcy Court as the Chapter 11 Trustee in the Randall case on September 29, 2011;

WHEREAS, on October 12, 2011 (the "Corporate Debtors Petition Date"), the Chapter 11 Trustee, in his capacity as the Chapter 11 trustee in the Randall Case, caused the following bankruptcy petitions to be filed by the following entities owned by Randall (the "Corporate Debtors") under Chapter 11 of Title 11 of the United States Code:

A.      In re Horizon Auto Funding, LLC, Case No. 11-34826;

B.      In re Independent Commercial Lending, LLC, Case No. 11-34830;

C.      In re Horizon Financial Center I, LLC, Case No. 11-34831;

D.      In re Horizon Mortgage and Investment Inc. ("Horizon Mortgage"), Case No. 11-34833; and

E.      In re Horizon Financial & Insurance Group Inc. ("Horizon Financial"), Case No. 11-34834;

WHEREAS, on January 27, 2012, the Bankruptcy Court entered its Order substantively consolidating the separate bankruptcy estates of Randall and each of the Corporate Debtors, with all cases being consolidated with and into the Randall case, but effective only as of the date of the Bankruptcy Court's consolidation order;

WHEREAS, the Trustee filed the Plan on September 9, 2013;

WHEREAS, on September 11, 2013, the Bankruptcy Court entered its Order finding that the Disclosure Statement for the Plan contained adequate information within the meaning of section 1125 of the Bankruptcy Code;

WHEREAS, on _____, 2013, the Bankruptcy Court entered the Confirmation Order confirming the Plan;

WHEREAS, this Private Actions Trust is created pursuant to, and to effectuate certain provisions of the Plan, and to hold certain Creditors' Victim Causes of Action;

WHEREAS, each Grantor elected to assign his or her Victim Causes of Action to the Private Actions Trust by making a Private Actions Trust Election;

WHEREAS, each Grantor making an assignment has agreed to reasonably cooperate with the Private Actions Trustee in the investigation and prosecution of any assigned Victim Causes of Action;

WHEREAS, this Private Actions Trust is established for the benefit of the Grantors who elect to assign their Victim Causes of Action to the Private Actions Trust (the "Private Actions Trust Beneficiaries" or the "Private Actions Trust Participating Creditors") and the Private Actions Trust Beneficiaries have a beneficial interest in the Private Actions Trust (the "Private Actions Trust Interest");

WHEREAS, the Private Actions Trust is organized for the primary purpose of pursuing the Victim Causes of Action and liquidating and distributing assets transferred to the Private Actions Trust, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Private Actions Trust; and

WHEREAS, this Private Actions Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and operate in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Grantors and the Original Trustee agree as follows:

2

ARTICLE 1

ESTABLISHMENT OF THE PRIVATE ACTIONS TRUST

1.1.     Establishment of Private Actions Trust and Appointment of the Original Trustee.

(a)     Pursuant to the Plan, the Grantors and the Original Trustee hereby
establish a trust which shall be known as the "Randall Victims Private Actions Trust" on behalf
of the Private Actions Trust Beneficiaries.

(b)     The Original Trustee is hereby appointed as trustee of the Private Actions
Trust effective as of the Effective Date of the Plan and agrees to accept and hold the assets of the
Private Actions Trust in trust for the Private Actions Trust Beneficiaries subject to the terms of
the Plan and this Private Actions Trust Agreement.  The Original Trustee and each successor
trustee serving from time to time hereunder (the "Private Actions Trustee") shall have all the
rights, powers and duties set forth herein.

1.2.     Transfer of Assets and Rights to the Private Actions Trustee.

(a)     Effective as of the Effective Date (even if assigned at a later date), each
Private Actions Trust Beneficiary hereby transfers, assigns, and delivers (i) to the Private
Actions Trust, without recourse, all of such Private Actions Trust Beneficiary's right, title, and
interest in and to Victim Causes of Action free and clear of any and all Liens, Claims,
encumbrances or interests of any kind in such property of any other Person or entity and (ii) to
the Private Actions Trustee, without waiver, all of such Private Actions Trust Beneficiary's right,
title and interest in and to any attorney-client privilege, work-product privilege, or other privilege
or immunity attaching to any documents or communications (whether written or oral) associated
with the Victim Causes of Action (collectively, "Privileges"), which shall vest in the Private
Actions Trustee, in trust, and, consistent with Section 1123(b)(3)(B) of the Bankruptcy Code, for
the benefit of the Private Actions Trust Beneficiaries.

(b)     On or as promptly as practicable after the date that each Private Actions
Trust Beneficiary makes a Private Actions Trust Election, such Private Actions Trust Beneficiary
shall: (i) locate and preserve any documents relating to the Victim Causes of Action (including
those maintained in electronic format and original documents) within his or her possession,
custody, or control; (ii) deliver or cause to be delivered to the Private Actions Trustee any
documents in connection with the Victim Causes of Action (including those maintained in
electronic format and original documents) within his or her possession, custody, or control; (iii)
provide to the Private Actions Trustee access to such Private Actions Trust Beneficiary, his or
her agents, advisors, attorneys, accountants or any other professionals hired by such Private
Actions Trust Beneficiary with knowledge of matters relevant to the Victim Causes of Action;
and (iv) otherwise assist the Private Actions Trustee and his professionals in their investigation
and pursuit of the Victim Causes of Action.  Upon the reasonable request of the Private Actions
Trustee, a Private Actions Trust Beneficiary shall use good faith efforts to provide the Private
Actions Trustee with a list of all documents in connection with the Victim Causes of Action
known to such Private Actions Trust Beneficiary but not held by such Private Actions Trust
Beneficiary or any of his or her employees, agents, advisors, attorneys, accountants or any other

3

professionals.  Such list shall contain a description of each document, to the extent feasible, as well as the name of the entity or Person holding such document.

(c)     At any time and from time to time on and after the Effective Date, Private Actions Trust Beneficiaries agree (i) at the reasonable request of the Private Actions Trustee to execute or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), (ii) to take, or cause to be taken, all such further actions as the Private Actions Trustee may reasonably request in order to evidence or effectuate the transfer of the Victim Causes of Action and the Privileges to the Private Actions Trust and the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan, and (iii) to cooperate with the Private Actions Trustee in the prosecution, compromise, settlement or other resolution of the Victim Causes of Action.

(d)     Each Private Actions Trust Beneficiary shall reasonably cooperate with the Private Actions Trustee in the investigation, prosecution, compromise, settlement or other resolution of any Victim Causes of Action.

(e)     If the Private Actions Trustee is unable or unwilling to prosecute any Victim Causes of Action, then the Private Actions Trustee may, but is not required to, re-assign such Victim Causes of Action to the appropriate Private Actions Trust Beneficiary.

(f)     **THE PRIVATE ACTIONS TRUSTEE SHALL ALSO BE ENTITLED TO ACT IN HIS CAPACITY AS THE TRUSTEE OF THE CONSOLIDATED ESTATE FOR THE PURPOSE OF COORDINATING THE PURSUIT OF BOTH ESTATE LITIGATION CLAIMS (TO THE EXTENT BROUGHT BY THE CONSOLIDATED ESTATE) AND VICTIM CAUSES OF ACTION (TO THE EXTENT THAT THE PRIVATE ACTIONS TRUSTEE, IN HIS SOLE DISCRETION, CHOOSES TO PURSUE SUCH VICTIM CAUSES OF ACTION) IN ORDER TO MINIMIZE THE ADMINISTRATIVE EXPENSES TO THE PRIVATE ACTIONS TRUST BENEFICIARIES AND TO THE CONSOLIDATED ESTATE.  TO THE EXTENT THAT BOTH ESTATE LITIGATION CLAIMS AND VICTIM CAUSES OF ACTION ARE BEING PURSUED AGAINST THE SAME DEFENDANTS, SUCH ESTATE LITIGATION CLAIMS AND SUCH VICTIM CAUSES OF ACTION MAY BE SETTLED OR RESOLVED BY THE PRIVATE ACTIONS TRUSTEE AT THE SAME TIME, BUT WILL BE SETTLED OR RESOLVED BY THE PRIVATE ACTIONS TRUSTEE PURSUANT TO SEPARATE SETTLEMENTS OR RESOLUTIONS WITH SEPARATE PROCEEDS (IF SETTLEMENT PROCEEDS ARE BEING PAID BY SUCH DEFENDANTS).  BY MAKING A PRIVATE ACTIONS TRUST ELECTION, A PRIVATE ACTIONS TRUST BENEFICIARY ACKNOWLEDGES AND AGREES THAT: (i) THE PRIVATE ACTIONS TRUSTEE SHALL HAVE THE SOLE DISCRETION TO DECIDE WHETHER OR NOT TO PURSUE ANY VICTIM CAUSES OF ACTION; (ii) CONFLICTS OF INTEREST COULD ARISE AS A RESULT OF THE PRIVATE ACTIONS TRUSTEE SIMULTANEOUSLY ACTING AS THE TRUSTEE OF THE CONSOLIDATED ESTATE AND AS THE PRIVATE ACTIONS TRUSTEE; (iii) THERE IS A RISK THAT THE PRIVATE ACTIONS TRUSTEE ACTING IN BOTH**

4

**CAPACITIES COULD TAKE ACTIONS THAT MAY ADVERSELY IMPACT THE INTERESTS OF THE CONSOLIDATED ESTATE, SUCH PRIVATE ACTIONS TRUST BENEFICIARY, AND/OR THE INTERESTS OF THE PRIVATE ACTIONS TRUST, AND THE RISKS FROM SUCH POTENTIAL CONFLICTS OF INTEREST HAVE BEEN ADEQUATELY DISCLOSED TO SUCH PRIVATE ACTIONS TRUST BENEFICIARY; (iv) SUCH PRIVATE ACTIONS TRUST BENEFICIARY HAS HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF SUCH PRIVATE ACTIONS TRUST BENEFICIARY'S CHOOSING WITH RESPECT TO THE RISKS OF SUCH POTENTIAL CONFLICTS OF INTEREST; AND (v) SUCH PRIVATE ACTIONS TRUST BENEFICIARY EXPRESSLY WAIVES ANY AND ALL CONFLICTS OF INTEREST THAT MAY ARISE AS A RESULT OF THE PRIVATE ACTIONS TRUSTEE SIMULTANEOUSLY ACTING AS THE TRUSTEE OF THE CONSOLIDATED ESTATE AND AS THE PRIVATE ACTIONS TRUSTEE.**

     1.3.    <u>Title to Victim Causes of Action</u>.

     The transfer of the Victim Causes of Action to the Private Actions Trust shall be made for the ratable benefit of the Private Actions Trust Beneficiaries, based upon the respective percentages attributable to each Private Actions Trust Beneficiary as outlined in Section 2.8 below (or as such values are subsequently adjusted by the Private Actions Trustee pursuant to the terms of Section 2.8 below), to the extent such Private Actions Trust Beneficiaries are entitled to Private Actions Trust Interests under the Plan.  In this regard, the Victim Causes of Action will be treated for federal income tax purposes as being a transfer by the Private Actions Trust Beneficiaries to the Private Actions Trust in exchange for Private Actions Trust Interests for the ratable benefit of the Private Actions Trust Beneficiaries, in accordance with the Plan.  Upon the transfer of the Victim Causes of Action, the Private Actions Trust shall succeed to all of the Grantors' rights, titles and interests in and to the Victim Causes of Action and the Grantors will have no further interest in or with respect to the Victim Causes of Action or this Private Actions Trust apart from their Private Actions Trust Interests.

     1.4.    <u>Nature and Purpose of the Private Actions Trust</u>.

     (a)    <u>Purpose</u>.  The Private Actions Trust is organized and established as a trust pursuant to which the Private Actions Trustee, subject to the terms and conditions contained herein and in the Plan, is to (i) hold the assets of the Private Actions Trust and dispose of the same in accordance with this Private Actions Trust Agreement and the Plan in accordance with Treasury Regulation Section 301.7701-4(d) and Rev. Proc. 94-45, 1994-2 C.B. 684, and (ii) oversee and direct the expeditious but orderly liquidation of the assets of the Private Actions Trust. Accordingly, the primary purpose of this Private Actions Trust is to liquidate the assets transferred to the Private Actions Trust with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Private Actions Trust.

     (b)    <u>Actions of the Private Actions Trustee</u>.  The Private Actions Trustee, except as set forth in <u>Section 3.12</u> herein, and the exercise of his or her reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of

the Private Actions Trust, make timely distributions and not unduly prolong the duration of the Private Actions Trust. The liquidation of the Victim Causes of Action may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all Claims, Causes of Action, or otherwise. The Private Actions Trustee, except as set forth in Section 3.12 herein, shall have the absolute right to pursue, settle and compromise, or not pursue, any and all Victim Causes of Action and he or she determines is in the best interests of the Private Actions Trust Beneficiaries, and consistent with the purposes of the Private Actions Trust, and the Private Actions Trustee shall have no liability for the outcome of any such decision except for any damages caused by recklessness, gross negligence, willful misconduct, or knowing violation of law.

(c)     Relationship. This Private Actions Trust is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Private Actions Trust is not intended to be, and shall not be deemed or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Private Actions Trustee or the Private Actions Trust Beneficiaries, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Private Actions Trust Beneficiaries to the Private Actions Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Private Actions Trust Agreement.

1.5.     Incorporation of Plan.

The Plan and the Confirmation Order are each hereby incorporated into this Private Actions Trust Agreement and made a part hereof by this reference; provided however, if there is conflict on matters arising from or related to the Private Actions Trust between the provisions of this Private Actions Trust Agreement, the provisions of the Plan, or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) this Private Actions Trust Agreement; and (3) the Plan.

1.6.     Funding of the Private Actions Trust.

On or after the Effective Date, upon the determination of the Private Actions Trustee, the Private Actions Trust may be funded from (i) a loan, including a loan secured by the assets of the Private Actions Trust or (ii) reserves maintained from the proceeds of the liquidation of Victim Causes of Action in accordance with Section 5.1. If the Private Actions Trustee determines that it is appropriate to obtain any loans from the Consolidated Estate, any such loans in excess of $25,000 may only be made with the approval, after notice and a hearing, of the Bankruptcy Court. Notice of the proposed loan in excess of $25,000 and an opportunity for a hearing shall be given to only the United States Trustee and those Creditors who have filed with the Bankruptcy Court after the date of the Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date. Any failure or inability of the Private Actions Trust to obtain funding will not affect the enforceability of this Private Actions Trust Agreement.

6

1.7.    Appointment as Representative in Lieu of Assignment.

If any Victim Causes of Action cannot be transferred to the Private Actions Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Victim Causes of Action shall be deemed to have been retained by the Grantor, as applicable, and the Private Actions Trustee shall be deemed to have been designated as a representative of such Grantor to enforce and pursue such Victim Causes of Action on behalf of such Grantor. Notwithstanding the foregoing, all net proceeds of the Victim Causes of Action shall be transferred to the Private Actions Trust Beneficiaries consistent with the provisions of this Private Actions Trust Agreement.

ARTICLE 2
PRIVATE ACTIONS TRUST INTERESTS

2.1.    Allocation of Private Actions Trust Interests.

The allocation and distribution of the Private Actions Trust Interests shall be made pursuant to Sections 2.8 and 5.1 below. In no event shall the number of Private Actions Trust Interests distributed exceed the number of such interests issuable pursuant to the Plan.

2.2.    Interests Beneficial Only.

The ownership of a Private Actions Trust Interest shall not entitle any Private Actions Trust Beneficiary to any title in or to the assets of the Private Actions Trust as such (which title shall be vested in the Private Actions Trustee) or to any right to call for a partition or division of the assets of the Private Actions Trust or to require an accounting.

2.3.    Evidence of Beneficial Interests.

The Private Actions Trust Interests shall be represented by book entries on the books and records of the Private Actions Trust. Any Person to whom a book entry is issued, shall be deemed to assent to and be bound by the terms and conditions of this Private Actions Trust Agreement and the Plan.

2.4.    Securities Law Registration.

The offering and issuance of Private Actions Trust Interests under the Plan shall be exempt from registration under any of the following, as applicable: Section 1145 of the Bankruptcy Code, Sections 3(a)(7), 3(a)(10) or 4(2) of the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. If the Private Actions Trustee determines, with the advice of counsel, that the Private Actions Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Private Actions Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "SEC"). Notwithstanding the foregoing

7

procedure, nothing herein shall be deemed to preclude the Private Actions Trustee from amending this Private Actions Trust Agreement to make such changes as are deemed necessary or appropriate by the Private Actions Trustee, with the advice of counsel, to ensure that the Private Actions Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act.

2.5.    Interests Nontransferable.

(a)    Private Actions Trust Interests may not be transferred, assigned, pledged, hypothecated or otherwise encumbered, without the prior written consent of the Private Actions Trustee.

(b)    The Private Actions Trustee shall appoint a registrar, which may be the Private Actions Trustee (the "Registrar") for the purpose of recording ownership of the Private Actions Trust Interests as herein provided. For its services hereunder, the Registrar, unless it is the Private Actions Trustee, shall be entitled to receive reasonable compensation from the Private Actions Trust as a cost of administering the Private Actions Trust.

(c)    The Private Actions Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by them from time to time, a registry of the Private Actions Trust Beneficiaries of the Private Actions Trust (the "Trust Register") which shall be maintained pursuant to such reasonable regulations as the Private Actions Trustee and the Registrar may prescribe.

2.6.    Access to the Trust Register by the Private Actions Trust Beneficiaries.

Private Actions Trust Beneficiaries and their duly authorized representatives may, upon reasonable prior written notice to the Registrar and the Private Actions Trustee, and in accordance with the reasonable regulations prescribed by the Registrar and the Private Actions Trustee, inspect and, at the sole expense of the Private Actions Trust Beneficiary seeking the same, make copies of the Trust Register, in each case for a purpose reasonably related to such Private Actions Trust Beneficiary's interest in the Private Actions Trust.

2.7.    Absolute Owners.

The Private Actions Trustee may deem and treat the Private Actions Trust Beneficiaries of record in the Trust Register as the absolute owner of their respective Private Actions Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever, and the Private Actions Trustee shall not be charged with having received notice of any claim or demand to such Private Actions Trust Interests or the interest therein of any other Person.

2.8.    Private Actions Trust Beneficiary's Trust Interest.

**A Private Actions Trust Beneficiary's interest in the Private Actions Trust shall be calculated to equal the percentage assigned to such Private Actions Trust Beneficiary's Victim Causes of Action as calculated by the methodology in the following sentence. Each**

8

Private Actions Trust Beneficiary's interest shall be calculated as the percentage resulting from the following (the "Beneficial Interest Calculation"):

Step 1: divide (i) the sum of such Private Action Trust Beneficiary's Victim Net Claim Amount and all premiums (if any) paid on such Private Action Trust Beneficiary's Terminated Policy or Terminated Policies, by (ii) the sum of all of the Victim Net Claim Amounts for all of the Private Action Trust Beneficiaries and all premiums (if any) paid on all Terminated Policies of all of the Private Action Trust Beneficiaries; and

Step 2: multiply the resulting fraction by 100.

The Private Actions Trustee shall make the Beneficial Interest Calculations based upon the totality of the group of Private Actions Trust Beneficiaries who are participating in the Private Actions Trust by having made their Private Actions Trust Elections. If the Private Actions Trustee determines that his calculation of either the Victim Net Claim Amount of any Private Actions Trust Beneficiary or the amount of premiums on a Terminated Policy paid by any Private Actions Trust Beneficiary was incorrect, or if the Private Actions Trustee receives additional updated information (including information from the Private Actions Trust Beneficiaries) on the correct Victim Net Claim Amount of any Private Actions Trust Beneficiary or the correct amount of premiums paid on a Terminated Policy by any Private Actions Trust Beneficiary, then the Private Actions Trustee shall correct the percentage attributable to such Private Actions Trust Beneficiary pursuant to the Beneficial Interest Calculation (as applied with the correct information) and then adjust the values of all other participating Private Actions Trust Beneficiaries, so that the total of all of the percentages is still equal to 100.000%.

ARTICLE 3
THE PRIVATE ACTIONS TRUSTEE

3.1.     Private Actions Trust Proceeds.

All of the proceeds and avails of the prosecution, compromise and settlement of Victim Causes of Action (collectively, the "Private Actions Trust Proceeds") shall be added to the assets of the Private Actions Trust and held as a part thereof (and title to which shall be vested in the Private Actions Trustee).

3.2.     Collection of Income.

The Private Actions Trustee shall collect all income earned with respect to the assets of the Private Actions Trust, which shall thereupon be added to the assets of the Private Actions Trust and held as a part thereof (and which title shall be vested in the Private Actions Trustee).

3.3.     Payment of Private Actions Trust Expenses.

(a)     The Private Actions Trustee shall maintain a private actions expense fund (the "Private Actions Expense Fund") and expend such assets of the Private Actions Expense

Fund (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Private Actions Trust during liquidation, (ii) to pay reasonable administrative costs, including but not limited to, the costs and expenses of the Private Actions Trustee (including reasonable fees, costs, and expenses of professionals), any taxes imposed on the Private Actions Trust, and any other fees and expenses incurred in connection with, arising out of or related to the Victim Causes of Action, and (iii) to satisfy other liabilities incurred or assumed by the Private Actions Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Private Actions Trust Agreement.

(b)     The Private Actions Trustee may retain from the Private Actions Trust Proceeds and add to the Private Actions Expense Fund, at any time and from time to time, such amounts as the Private Actions Trustee deems reasonable and appropriate to ensure that the Private Actions Expense Fund will be adequate to meet the expenses and liabilities described in subsection (a) of this Section.

(c)     Notwithstanding any other provision of this Private Actions Trust to the contrary, the Private Actions Trustee shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Private Actions Trust unless it shall have sufficient funds in the Private Actions Expense Fund for that purpose.  The Private Actions Trustee shall have the right to, but shall not be obligated to, prosecute, settle, or choose to not pursue any Victim Causes of Action, notwithstanding the assignment of any Victim Causes of Action to the Private Actions Trust.

3.4.   Distributions.

The Private Actions Trustee shall distribute the net distributable assets of the Private Actions Trust in accordance with the provisions of Section 5.1 below.

3.5.   Tenure, Removal, and Replacement of the Private Actions Trustee.

(a)     Each Private Actions Trustee will serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, Disability (as defined in Section 3.17(c)(ii)), or death (if applicable).

(b)     The Private Actions Trustee may resign by giving not less than thirty (30) days' prior written notice to the Bankruptcy Court.  Such resignation will become effective on the later to occur of: (i) the day specified in such notice, and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment.  If a successor trustee is not appointed or does not accept his or her appointment within thirty (30) days following delivery of notice of resignation, the Private Actions Trustee may file a motion with the Bankruptcy Court, upon notice and hearing, for the appointment of a successor trustee.

(c)     In the event of a vacancy in the position of the Private Actions Trustee (whether by removal, resignation, Disability or death, if applicable), the vacancy will be filled by the appointment of a successor trustee by (i) the acceptance of the Private Actions Trust by the successor trustee in accordance with Section 3.6, or (ii) an order of the Bankruptcy Court after notice to the United States Trustee and those Creditors who have filed with the Bankruptcy Court

10

after the date of the Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date.

(d)     Immediately upon the appointment of any successor trustee, all rights powers, duties, authority, and privileges of the predecessor Private Actions Trustee hereunder will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Private Actions Trustee.

(e)     Upon the appointment of a successor trustee, the predecessor Private Actions Trustee (or the duly appointed legal representative of a deceased Private Actions Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Private Actions Trustee, all the estates, properties, rights, powers and trusts of such predecessor Private Actions Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Private Actions Trust, the Victim Causes of Action, or the Private Actions Trust Interests then in his or her possession and held hereunder.

    3.6.   <u>Acceptance of Appointment by Successor Private Actions Trustee.</u>

Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Private Actions Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of his or her predecessor in the Private Actions Trust hereunder with like effect as if originally named herein.

    3.7.   <u>Role of the Private Actions Trustee.</u>

In furtherance of and consistent with the purpose of the Private Actions Trust and the Plan, the Private Actions Trustee, subject to the terms and conditions contained herein and in the Plan, shall have the power to (i) prosecute, compromise and settle, abandon or dismiss for the benefit of the Private Actions Trust Beneficiaries all claims, rights and causes of action transferred to the Private Actions Trustee (whether such suits are brought in the name of the Private Actions Trustee or otherwise), and (ii) to otherwise perform the functions and take the actions provided or permitted in the Plan or in this Private Actions Trust Agreement.  In all circumstances, the Private Actions Trustee shall act in the best interests of all the Private Actions Trust Beneficiaries of the Private Actions Trust and in furtherance of the purpose of the Private Actions Trust.

    3.8.   <u>Authority of Private Actions Trustee.</u>

Subject to any limitations contained herein or in the Plan, the Private Actions Trustee shall have the following powers and authority:

(a)    to hold in trust legal title to any and all rights of the holders of the Private Actions Trust Interests in or arising from the Victim Causes of Action, including collecting, receiving any and all money and other property belonging to the Private Actions Trust and the right to vote any claim or interest relating to Victim Causes of Action in a case under the Bankruptcy Code and receive any distribution therein;

(b)    to perform the duties, exercise the powers, and assert the rights analogous to those of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges; provided, however, that the Private Actions Trustee shall exercise those powers in a manner consistent with the Plan.

(c)    to protect and enforce the rights to the Victim Causes of Action by any method deemed appropriate including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)    to obtain reasonable insurance coverage with respect to the liabilities and obligations of the Private Actions Trustee under this Private Actions Trust (in the form of an errors and omissions policy or otherwise);

(e)    to obtain insurance coverage with respect to real and personal property that may become assets of the Private Actions Trust, if any;

(f)    to retain and approve compensation arrangements of counsel and other professionals for the Private Actions Trustee, including any professionals previously retained by the Private Actions Trust Beneficiaries or the Consolidated Estate, as the Private Actions Trustee shall select to assist the Private Actions Trustee in his or her duties, on such terms as the Private Actions Trustee deems reasonable and appropriate, without Bankruptcy Court approval; subject to the foregoing, the Private Actions Trustee may commit the Private Actions Trust to and shall pay such counsel and other professionals reasonable compensation (including on an hourly, contingency, or modified contingency basis) for services rendered and reasonable and documented out-of-pocket expenses incurred;

(g)    to retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Private Actions Trust as may be required by the SEC and applicable securities laws and as may be reasonable and appropriate in the Private Actions Trustee's discretion and to prepare and file any tax returns, informational returns, or periodic or current reports as required by applicable securities laws, for the Private Actions Trust as may be required; subject to the foregoing, the Private Actions Trustee may commit the Private Actions Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(h)    to retain and approve compensation arrangements of such third parties, including consultants and experts in order to assist counsel retained in accordance with Section 3.8(f) above, to assist the Private Actions Trustee in carrying out his or her powers and duties under this Private Actions Trust; subject to the foregoing, the Private Actions Trustee may

12

commit the Private Actions Trust to and shall pay all such persons or entities reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, as well as commit the Private Actions Trust to indemnify any such parties in connection with the performance of services (provided that such indemnity shall not cover any losses, costs, damages, expenses or liabilities that result from the recklessness, gross negligence, willful misconduct, or knowing violation of law by such party);

(i)     to waive any privilege (including the Privileges) or any defense on behalf of the Private Actions Trust or, with respect to the Victim Causes of Action, on behalf of the Private Actions Trust Beneficiaries, as applicable; provided, however, that such waiver shall be effectively limited to such matters;

(j)     to compromise, settle, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, waive, release, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Private Actions Trust;

(k)     to invest any moneys held as part of the Private Actions Trust in accordance with the terms of <u>Section 3.15</u> hereof, limited, however, to such investments that are consistent with the Private Actions Trust's status as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684;

(l)     to request any appropriate tax determination with respect to the Private Actions Trust, including a determination pursuant to Section 505 of the Bankruptcy Code;

(m)     subject to applicable securities laws, if any, to establish and maintain a website for the purpose of providing notice of Private Actions Trust activities in lieu of sending written notice to holders of Private Actions Trust Interests, subject to providing notice of such website to such holders;

(n)     to seek the examination of any entity, subject to the provisions of Bankruptcy Rule 2004, to the extent applicable, or any other applicable law or rule;

(o)     to incur indebtedness and grant security interests in the assets of the Private Actions Trust in order to obtain funding for the Private Actions Trust; and

(p)     to take or refrain from taking any and all other actions that the Private Actions Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Victim Causes of Action or to carry out the purposes hereof.

3.9.     <u>Limitation of Private Actions Trustee's Authority</u>.

(a)     Notwithstanding anything herein to the contrary, the Private Actions Trustee may not (i) be authorized to engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Private Actions Trust, (ii) take such actions inconsistent with the orderly and timely liquidation of the assets of

13

the Private Actions Trust as are required or contemplated by applicable law, the Plan and this Private Actions Trust Agreement, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Private Actions Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

(b)     The Private Actions Trust shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the assets of the Private Actions Trust.

3.10.    <u>Books and Records</u>.

(a)     The Private Actions Trustee shall maintain books and records relating to the assets of the Private Actions Trust and income of the Private Actions Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Private Actions Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements of the Private Actions Trust.  Nothing in this Private Actions Trust Agreement requires the Private Actions Trustee to file any accounting or seek approval of any court with respect to the administration of the Private Actions Trust, or as a condition for managing any payment or distribution out of the assets of the Private Actions Trust.

(b)     The Private Actions Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Private Actions Trustee, to inspect and, at the sole expense of such Private Actions Trust Beneficiary seeking the same, make copies of the books and records relating to the Private Actions Trust on any business day and as often as may be reasonably desired, in each case for a purpose reasonably related to such Private Actions Trust Beneficiary's interest in the Private Actions Trust.

3.11.    <u>Inquiries into Trustee's Authority</u>.

Except as otherwise set forth in the Private Actions Trust or in the Plan, no Person dealing with the Private Actions Trust shall be obligated to inquire into the authority of the Private Actions Trustee in connection with the protection, conservation or disposition of the Victim Causes of Action.

3.12.    <u>Compliance with Laws</u>.

Any and all distributions of assets of the Private Actions Trust and proceeds of borrowings, if any, shall be in compliance with applicable laws, including applicable federal and state securities laws.

3.13.    <u>Compensation of the Private Actions Trustee</u>.

14

(a)     The Original Trustee shall be compensated for his services at the rate of $350.00 per hour, and reimbursed for his out of pocket expenses.  If a successor trustee is appointed, such successor shall be compensated for his or her services, and reimbursed for his or her expenses, as a cost of administering the Private Actions Trust, in accordance with and pursuant to the terms of, a separate agreement to be approved by the Bankruptcy Court.  Notice of such agreement and an opportunity for a hearing shall be given to only the United States Trustee and those Policyholders who have filed with the Bankruptcy Court after the date of the Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date.

(b)     If the Private Actions Trustee's appointment terminates by reason of (i) the death of the Private Actions Trustee, or (ii) the Private Actions Trustee's Disability, the Private Actions Trustee, or his or her estate, as applicable, shall be entitled to payment of any earned but unpaid portion of compensation, any earned but unpaid bonus, and any un-reimbursed business expenses incurred prior to such death, Disability or effective date of removal.

(c)     For purposes of <u>Section 3.13(b)</u>, the following term shall have the following meaning:

(i)     "<u>Disability</u>" of the Private Actions Trustee shall have occurred if, as a result of the Private Actions Trustee's incapacity due to physical or mental illness as determined by a physician selected by the Private Actions Trustee, the Private Actions Trustee shall have been substantially unable to perform his or her duties hereunder for three consecutive months, or for an aggregate of 180 days during any period of twelve consecutive months.

3.14.   <u>Reliance by Private Actions Trustee</u>.

Except as otherwise provided herein:

(a)     The Private Actions Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Private Actions Trustee to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Persons dealing with the Private Actions Trustee shall look only to the assets of the Private Actions Trust to satisfy any liability incurred by the Private Actions Trustee to such Person in carrying out the terms of this Private Actions Trust, and neither the Private Actions Trustee nor any Private Actions Trust Beneficiary shall have any personal obligation to satisfy any such liability.

3.15.   <u>Investment and Safekeeping of Private Actions Trust Assets</u>.

The Private Actions Trustee shall invest all assets transferred to the Private Actions Trust (other than Victim Causes of Action), all Private Actions Trust Proceeds, the Private Actions Expense Fund and all income earned by the Private Actions Trust (pending periodic distributions in accordance with the provisions of the Plan) only in cash, cash equivalents, U.S. Treasury securities, money market investments, and similar temporary liquid investments; provided,

however, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684, pursuant to the Treasury Regulations, or any modification in the guidelines of the United States Internal Revenue Service (the "IRS"), whether set forth in IRS rulings, other IRS pronouncements or otherwise, (b) the Private Actions Trustee may retain any Private Actions Trust Proceeds received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets in Cash; and (c) under no circumstances, shall the Private Actions Trustee segregate the assets of the Private Actions Trust on the basis of classification of the holders of Private Actions Trust Interests.

      3.16.   Standard of Care; Exculpation.

      Neither the Private Actions Trustee nor any of his or her duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Private Actions Trustee in good faith, other than acts or omissions resulting from the Private Actions Trustee's own gross negligence, recklessness, willful misconduct, or knowing violation of law. The Private Actions Trustee may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with his or her attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Private Actions Trustee shall be under no obligation to consult with his or her attorneys, accountants, financial advisors or agents, and his or her good faith determination not to do so shall not result in the imposition of liability on the Private Actions Trustee, unless such determination is based on gross negligence, recklessness, willful misconduct, or knowing violation of law.

ARTICLE 4<br/>TAX MATTERS

      4.1.   Federal Income Tax Reporting.

      (a)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Private Actions Trustee of a private letter ruling if the Private Actions Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Private Actions Trustee), the Private Actions Trustee shall file all tax returns for the Private Actions Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article 4. The Private Actions Trustee shall also annually send to each Private Actions Trust Beneficiary a separate statement setting forth such Private Actions Trust Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct all such Private Actions Trust Beneficiaries to report such items on their federal income tax returns in a manner consistent with such statement.

      (b)    As soon as practicable after the Effective Date, but in no event later than ninety (90) days thereafter, (i) the Private Actions Trustee will determine the fair market value as

16

of the Effective Date of all assets transferred to the Private Actions Trust, and such determined fair market value shall be used by the Private Actions Trustee and the Private Actions Trust Beneficiaries for all federal income tax purposes, and (ii) the Private Actions Trustee shall apprise the Private Actions Trust Beneficiaries, in writing of such valuation.  The Private Actions Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Private Actions Trust that are required by any governmental unit and pay taxes, if any, properly payable by the Private Actions Trust.

(c)     The Private Actions Trustee may request an expedited determination of taxes of the Private Actions Trust under Section 505(b) of the Bankruptcy Code or any analogous law, to the extent applicable, for all returns filed for, or on behalf of, the Private Actions Trust for all taxable periods through the dissolution of the Private Actions Trust.

(d)     For federal income tax purposes, all parties (including the Grantors, the Private Actions Trustee and the Private Actions Trust Beneficiaries) shall treat the transfer of Victim Causes of Action to the Private Actions Trust and issuance of Private Actions Trust Interests in accordance with the terms of the Plan, as a deemed transfer of the Victim Causes of Action to the Private Actions Trust Beneficiaries (to the extent applicable), followed by a deemed transfer of such Victim Causes of Action by the Private Actions Trust Beneficiaries to the Private Actions Trust in exchange for beneficial interests in the Private Actions Trust.

(e)     For federal income tax purposes, the Private Actions Trust Beneficiaries will be treated as the grantors, deemed owners and beneficiaries of the Private Actions Trust.

4.2.    <u>Allocations of Private Actions Trust Taxable Income</u>.

Allocations of Private Actions Trust taxable income to the Private Actions Trust Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described in the Plan) if, immediately prior to such deemed distribution, the Private Actions Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Private Actions Trust Beneficiaries, taking into account all prior and concurrent distributions from the Private Actions Trust.  Similarly, taxable loss of the Private Actions Trust will be allocated to the Private Actions Trust Beneficiaries by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets of the Private Actions Trust (including Victim Causes of Action) (valued for this purpose at their tax book value) to the Private Actions Trust Beneficiaries, taking into account all prior and concurrent distributions from the Private Actions Trust (including all distributions held in escrow pending the resolution of Disputed Claims).  The tax book value of the Private Actions Trust's assets (including the Victim Causes of Action) for this purpose shall equal their fair market value on the Effective Date, adjusted in either case in accordance with tax accounting principles prescribed by the United States Internal Revenue Code, the regulations and other applicable administrative and judicial authorities and pronouncements.

ARTICLE 5
DISTRIBUTIONS

17

5.1.    <u>Distribution; Withholding</u>.

The Private Actions Trustee shall distribute, upon the settlement or other final resolution of all of the Victim Causes of Action that have been brought by the Private Actions Trustee within two years of the Effective Date, all net cash income plus all net cash proceeds (including Private Action Trust Proceeds) from the liquidation of assets; provided, however, that the Private Actions Trustee may retain and pay such amounts (i) as are reasonably necessary to meet contingent or potential liabilities and to maintain the value of the assets of the Private Actions Trust during liquidation, (ii) to pay or reserve for all administrative expenses of the Private Actions Trust, including the costs and expenses of the Private Actions Trust, the compensation, costs and expenses of the Private Actions Trustee, the fees, costs and expenses of all professionals retained by the Private Actions Trustee, including any contingency fee agreed to by the Private Actions Trustee for the purpose of litigating the Victim Causes of Action, and any taxes imposed on the Private Actions Trust or in respect of the assets of the Private Actions Trust, and (iii) to satisfy other liabilities incurred or assumed by the Private Actions Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Private Actions Trust Agreement.  After the payments or retentions by the Private Actions Trustee enumerated above have been made, the aggregate of all distributions if there is more than one distribution, or the single distribution if there is only one distribution, shall be made as follows:

**First, to repay the loans and/or other funding (including any fees, costs, or interest incurred in connection therewith) described in Sections 1.6 or 3.8(p) of this Private Actions Trust Agreement.**

**Second, to the Consolidated Estate in accordance with the following conditions and corresponding applicable amounts and/or percentages:**

**(i)  Thirty Percent (30%) for distributable amounts equal to or less than One Million Dollars ($1,000,000), plus**

**(ii) Twenty Percent (20%) for distributable amounts greater than One Million Dollars ($1,000,000) but equal to or less than Ten Million Dollars ($10,000,000), plus**

**(iii) Ten Percent (10%) for distributable amounts greater than Ten Million Dollars ($10,000,000).**

**Third, to the Private Actions Trust Beneficiaries on a prorata basis based upon the respective percentages attributable to each Private Actions Trust Beneficiary for distribution purposes in accordance with the Beneficial Interest Calculation formula and other provisions outlined in Section 2.8 of this Private Actions Trust Agreement.**

**Fourth, if all of the Private Actions Trust Beneficiaries have received the total amounts of their respective Victim Net Claim Amounts, then any remaining funds shall be distributed to the Consolidated Estate.**

All distributions will otherwise be subject to all of the terms of this Private Actions Trust Agreement.  The Private Actions Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Private Actions Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

5.2.    Manner of Payment or Distribution.

(a)    All distributions made by the Private Actions Trustee to holders of Private Actions Trust Interests shall be payable to the holders of Private Actions Trust Interests of record as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day.  If the distribution shall be in Cash, the Private Actions Trustee shall distribute such Cash by wire, check, or such other method as the Private Actions Trustee deems appropriate under the circumstances.

5.3.    Delivery of Private Actions Trust Distributions.

All distributions under this Private Actions Trust Agreement to any holder of Private Actions Trust Interests shall be made at the address of such holder as set forth in the Trust Register or at such other address or in such other manner as such holder of Private Actions Trust Interests shall have specified for payment purposes in a written notice to the Private Actions Trustee and the Registrar at least 20 days prior to such distribution date.  Each Private Actions Trust Beneficiary has the obligation to keep the Private Actions Trustee informed of his or her most current address.  In the event that any distribution to any holder is returned as undeliverable, the Private Actions Trustee shall be entitled to rely on the most current information available to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Private Actions Trustee has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such undeliverable or unclaimed distributions shall be deemed unclaimed property at the expiration of one year from the date of distribution.  The Private Actions Trustee shall reallocate the undeliverable and unclaimed distributions for the benefit of all other Private Actions Trust Beneficiaries.

5.4.    Cash Distributions.

No Cash distributions shall be required to be made to any Private Actions Trust Beneficiary in an amount less than $100.00.  Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions.  Notwithstanding the foregoing, all cash shall be distributed in the final distribution of the Private Actions Trust.

ARTICLE 6
REPORTS TO PRIVATE ACTIONS TRUST BENEFICIARIES

6.1.    Reports.

(a)    The Private Actions Trustee shall cause to be prepared, as applicable, either at such times as may be required by the Exchange Act, if applicable, or, not less than annually, financial statements of the Private Actions Trust, to be delivered to the Private Actions

19

Trust Beneficiaries together with annual income tax reporting of the Private Actions Trust. To the extent required by law, the financial statements prepared as of the end of the fiscal year shall be audited by an independent accountant in accordance with generally accepted accounting principles. The materiality and scope of audit determinations shall be established between the Private Actions Trustee and the appointed auditors with a view toward safeguarding the value of the assets of the Private Actions Trustee, but nothing relating to the mutually agreed scope of work shall result in any limitation of audit scope that would cause the auditors to qualify their opinion as to scope of work with respect to such financial statements.

(b)     If necessary and appropriate, within ten (10) Business Days after the end of the relevant report preparation period, the Private Actions Trustee shall cause any information reported pursuant to <u>Section 6.1(a)</u> to be mailed to the Private Actions Trust Beneficiaries or posted on the website outlined in <u>Section 6.1(c)</u> below, and to be filed with the Bankruptcy Court.

(c)     The Private Actions Trustee may post any report required to be provided under this <u>Section 6.1</u> on a website maintained by the Private Actions Trustee in lieu of actual notice to the Private Actions Trust Beneficiaries (unless otherwise required by law).

ARTICLE 7
TERM; TERMINATION OF THE PRIVATE ACTIONS TRUST

7.1.   <u>Term; Termination of the Private Actions Trust</u>.

(a)     The Private Actions Trust shall have an initial term of five (5) years, provided that if reasonably necessary to facilitate or complete the liquidation of the assets in the Private Actions Trust (which, for this purpose, may include preserving or enhancing the value of such assets as appropriate given the facts and circumstances) in a manner consistent with the treatment of the Private Actions Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684, the term of the Private Actions Trust may be extended for one or more one (1) year terms subject to the approval of the Bankruptcy Court (which such approval shall not occur more than six (6) months prior to the beginning of the extended term). Notice of the extension of the term of the Private Actions Trust and an opportunity for a hearing shall be given to only the United States Trustee and those Creditors who have filed with the Bankruptcy Court after the date of the Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date.

(b)     The Private Actions Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing the Chapter 11 Case pursuant to Section 350(a) of the Bankruptcy Code; and (ii) the Private Actions Trustee has administered all assets of the Private Actions Trust and performed all other duties required by the Plan and this Private Actions Trust Agreement.

7.2.   <u>Continuance of Trust for Winding Up</u>.

After the termination of the Private Actions Trust and for the purpose of liquidating and

20

winding up the affairs of the Private Actions Trust, the Private Actions Trustee shall continue to act as such until his or her duties have been fully performed.  Prior to the final distribution of all of the remaining assets of the Private Actions Trust, the Private Actions Trustee shall be entitled to reserve from such assets any and all amounts required to provide for his or her own costs and expenses, in accordance with Section 3.13 herein, until such time as the winding up of the Private Actions Trust is completed.  Upon termination of the Private Actions Trust, the Private Actions Trustee shall retain for a period of two years, as a cost of administering the Private Actions Trust, the books, records, Private Actions Trust Beneficiary lists, the Trust Register, and certificates and other documents and files that have been delivered to or created by the Private Actions Trustee.  At the Private Actions Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two years from the completion and winding up of the affairs of the Private Actions Trust.  Except as otherwise specifically provided herein, upon the termination of the Private Actions Trust, the Private Actions Trustee shall have no further duties or obligations hereunder.

ARTICLE 8
AMENDMENT AND WAIVER

8.1.    Amendment and Waiver.

(a)    The Private Actions Trustee may amend, supplement or waive any provision of, this Private Actions Trust Agreement, without notice to or the consent of any Private Actions Trust Beneficiary or the need for any approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect or inconsistency in this Private Actions Trust Agreement, provided that such amendments, supplements or waivers shall not adversely affect the distributions to be made under this Private Actions Trust Agreement to any of the Private Actions Trust Beneficiaries, or adversely affect the U.S. federal income tax status of the Private Actions Trust as a "liquidating trust"; (ii) to comply with any requirements in connection with the U.S. Federal income tax status of the Private Actions Trust as a "liquidating trust"; (iii) to comply with any requirements in connection with maintaining that the Private Actions Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act; (iv) to make the Private Actions Trust a reporting entity and, in such event, to comply with or seek relief from any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act or the Investment Company Act; and (v) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Private Actions Trust Agreement and the Plan.

(b)    Any substantive provision of this Private Actions Trust Agreement may be amended or waived by the Private Actions Trustee with the prior approval of the Bankruptcy Court upon notice and an opportunity for a hearing to only the United States Trustee and those Creditors who have filed with the Bankruptcy Court after the date of the Plan a specific request for notice requesting that notice be given to them in the Bankruptcy Case after the Effective Date; provided, however, that no change may be made to this Private Actions Trust Agreement that would adversely affect the distributions to be made under this Private Actions Trust Agreement to any of the Private Actions Trust Beneficiaries, or adversely affect the U.S. Federal income tax status of the Private Actions Trust as a "liquidating trust" within the meaning of

21

Treasury Regulation Section 301.7701-4(d) or be inconsistent with the terms of Rev. Proc. 94-45, 1994-2 C.B. 684.  Notwithstanding this Section 8.1, no amendments may be made to this Private Actions Trust Agreement if such proposed amendments are inconsistent with the purpose and intention of the Private Actions Trust to liquidate in an expeditious but orderly manner the Victim Causes of Action in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

9.1.    Intention of Parties to Establish the Private Actions Trust.

This Private Actions Trust is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Private Actions Trust Agreement may be amended in accordance with Section 8.1 to comply with such federal income tax laws and Treasury Regulations, which amendments may apply retroactively.

9.2.    Reimbursement of Trust Costs.

If the Private Actions Trustee or the Private Actions Trust is the prevailing party in a dispute regarding the provisions of this Private Actions Trust or the enforcement thereof, the Private Actions Trustee shall be entitled to collect any and all costs, reasonable and documented out-of- pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.  To the extent that the Private Actions Trust has advanced such amounts, the Private Actions Trust may recover such amounts from the non-prevailing party.

9.3.    Laws as to Construction.

This Private Actions Trust Agreement shall be governed by and construed in accordance with the laws of the State of Utah, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

9.4.    Jurisdiction.

Without limiting any Person or entity's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Private Actions Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Private Actions Trust Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereto, including the Private Actions Trust Beneficiaries, hereby jointly and severally consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

9.5.   <u>Severability</u>.

If any provision of this Private Actions Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Private Actions Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Private Actions Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.6.   <u>Notices</u>.

All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following mailing addresses or email addresses:

If to the Private Actions Trustee, to:

Gil A. Miller
Rocky Mountain Advisory, LLC
215 South State Street, Suite 550
Salt Lake City, UT  84111
gmiller@rockymountainadvisory.com

If to the Grantors, to the persons identified on their respective Private Actions Trust Elections.  Each Grantor shall be obligated to keep the Private Actions Trustee at all times informed of such Grantor's most current address.

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt.  Any party from time to time may change its mailing address, email address or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

9.7.   <u>Fiscal Year</u>.

The fiscal year of the Private Actions Trust will begin on the first day of January and end on the last day of December of each year.

9.8.   <u>Headings</u>.

The section headings contained in this Private Actions Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Private

23

Actions Trust Agreement or of any term or provision hereof.

9.9.   <u>Counterparts</u>.

This Private Actions Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

9.10.   <u>Confidentiality</u>.

The Private Actions Trustee and each successor trustee (each a "<u>Covered Person</u>") shall, during the period that they serve in such capacity under this Private Actions Trust and following either the termination of this Private Actions Trust or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Private Actions Trust relates or of which it has become aware in its capacity (the "<u>Information</u>"), except to the extent disclosure is required by applicable law, order, regulation or legal process.

9.11.   <u>Entire Agreement</u>.

This Private Actions Trust Agreement (including the Recitals), the Private Actions Trust Elections, the Plan, and the Confirmation Order constitute the entire agreement by and among the parties hereto, and there are no representations, warranties, covenants or obligations of any of such parties except as set forth herein or therein.  This Private Actions Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Private Actions Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Private Actions Trust Agreement.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Private Actions Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the date first above written.

24

**THOSE GRANTORS THAT HAVE TIMELY
EXECUTED PRIVATE ACTIONS TRUST
ELECTIONS**

**- and –**

**PRIVATE ACTIONS TRUSTEE:**

_____

By: Gil A. Miller, Original Private Actions Trustee

**EXHIBIT B TO**
**CHAPTER 11 TRUSTEE'S LIQUIDATING PLAN OF REORGANIZATION DATED**
**SEPTEMBER 9, 2013**

**LIST OF NON-INVESTOR TRADE CREDITOR UNSECURED CLAIMS OF $50,000 OR**
**LESS**

| Debtor Name | Scheduled or Claim # | Creditor Name | Scheduled Amount or Proof of Claim Amount |
|---|---|---|---|
| Horizon Mortgage & Investment Inc. | Scheduled | Sermon Service & Electric | $1,097.00 |
| Horizon Mortgage & Investment Inc. | Scheduled | A.R. Aluminum Inc. | $525.00 |
| Horizon Mortgage & Investment Inc. | Scheduled | Fuller Lock Service | $61.09 |
| Horizon Mortgage & Investment Inc. | Scheduled | Beeline Pest Control | $65.00 |
| Horizon Financial Center I, LLC | Scheduled | Schindler Elevator Corporation | $1,097.58 |
| Horizon Financial Center I, LLC | 252 | Schindler Elevator Corporation | $865.87 |
| Horizon Mortgage & Investment Inc. | 310 | Questar Gas Company | $515.25 |
| Horizon Financial & Insurance Group, Inc. | 276 | Questar Gas Company | $581.63 |
| Horizon Mortgage & Investment Inc. | 285 | Home Services at Ace | $639.00 |
| Horizon Mortgage & Investment Inc. | Scheduled | Aire Spring | $4,224.69 |
| Horizon Financial & Insurance Group, Inc. | 287 | AireSpring, Inc. | $465.90 |
| Dee Allen Randall | 567 | Valentine CPA | $1,098.00 |
| Dee Allen Randall | 568 | Valentine CPA | $622.00 |
| Dee Allen Randall | 799[2] | RJT Excavating, Inc. | $43,246.51 |

---

[2] This Claim (a mechanic's lien) was filed as a Secured Claim; however, the sales proceeds from the sale of the property to which this mechanic's lien attached may be exhausted in the payment of Claims with a higher priority than this Secured Claim.  Therefore, this Claim may end up as a Non-Investor Trade Creditor Unsecured Claim (to the extent that this Claim is Allowed).

**EXHIBIT C TO**
**CHAPTER 11 TRUSTEE'S LIQUIDATING PLAN OF REORGANIZATION DATED**
**SEPTEMBER 9, 2013**

**LIST OF ESTATE LITIGATION CLAIMS**

| DEFENDANTS | ADVERSARY NO. |
|---|---|
| Matthew Randall | 12-2377 |
| Brandon Randall | 12-2379 |
| Bank of America | 12-2380 |
| Aurora Loan Services | 12-2381 |
| Bank of America, fka Country Wide Financial Corp | 12-2382 |
| American Express Travel Related Services Co., Inc., & American Express Co.,Inc. | 12-2384 |
| Union Central Life Insurance Co. and Ameritas Life Insurance Corp. | 12-2385 |
| Jack & Paula Phillips | 12-2389 |
| James Christensen | 12-2390 |
| Tom & Peggy Tibbs | 12-2391 |
| Guy Thayne | 12-2394 |
| Lori Call | 12-2395 |
| Ryan Willden | 12-2397 |
| Bart Christensen | 12-2400 |
| Marty Wilkinson | 12-2401 |
| Randy Lang | 12-2402 |
| Donald and Joy Anderson          (Chapter 7 Filed, Stayed) | 12-2403 |
| Bevan Wilde | 12-2404 |
| Alton Minton | 12-2405 |
| Evan Warner | 12-2406 |
| Golden Green | 12-2407 |
| D. Trent Fortner | 12-2408 |
| Cynthia Clements | 12-2409 |
| R. Austin Christensen | 12-2410 |
| Mark and Tracy Dustin | 12-2411 |
| Kurt Vanderslice          (Chapter 7 Filed; stayed) | 12-2412 |
| Craig Stansfield | 12-2414 |
| Russell Morley | 12-2415 |
| Keith Garff | 12-2416 |
| JaLee Harris aka Jalee Savage | 12-2418 |
| Mark and Rebecca Bell | 12-2419 |
| Trent Harrison | 12-2420 |
| Mark and Gina Hansen | 12-2421 |

| DEFENDANTS | ADVERSARY NO. |
|---|---|
| Burke Anglin | 12-2422 |
| Gary Clayburn | 12-2423 |
| Fred Simonsen | 12-2424 |
| Randy Guest | 12-2425 |
| Chris Cruz; Jerem Eyre; Brian Eyster; Alex Gayton; Matson Magleby; Dennis Myers; Lorenzo Pope; Justin Ryan; Adam Sessions; Tom Tibbs; Ron Weeks; David Wilcox; Steven Zimmerman | 12-2429 |
| Dean Powell | 12-2432 |
| Aaron and Tammy Evans | 12-2435 |
| Harold McGuire | 12-2436 |
| Grant Aagard | 12-2437 |
| Dale Parker | 12-2438 |
| Tom and Linda Day | 12-2439 |
| Stephen Powell | 12-2440 |
| Jim and Sharon Clark | 12-2441 |
| Lamar and Elaine Cook | 12-2442 |
| Tracie Anderson | 12-2443 |
| Wayne Andreason | 12-2445 |
| Garth Anderton | 12-2446 |
| Beryle Bird | 12-2447 |
| Lesley Walker | 12-2448 |
| Bradley Boyce | 12-2449 |
| Steven and Jarolen Brough | 12-2450 |
| Matthew Randall | 12-2451 |
| Destin Lindsay Thayne | 12-2452 |
| Gladys Banks | 12-2453 |
| Paula Marine | 12-2455 |
| Seth Schenfeld | 12-2456 |
| Duane Crabtree | 12-2457 |
| Shauna Orullian | 12-2459 |
| Rhonda Wilkinson | 12-2460 |
| Clem and Donna Fullmer | 12-2461 |
| Leland R. Thompson, Phillis N. Thompson, Carl Boyington, Janice Boyington | 12-2462 |
| F.R. Satterfield, as Trustee under F.R. Satterfield Family Trust dated January 29, 1997 and D. Carol Satterfield, as Trustee under the F.R. Satterfield Family Trust dated January 29, 1997 | 12-2463 |
| Allen D. Kendell, as Trustee under The Allen D. Kendell Living Trust dated June 6, 2006 and Patricia V. Kendell as Trustee under the Allen D. Kendell Living Trust dated June 6, 2006 | 12-2464 |
| Steven D. Zimmerman | 12-2467 |

| DEFENDANTS | ADVERSARY NO. |
|---|---|
| Jack David Hatch, Trustee | 12-2468 |
| Danita Hooper | 12-2469 |
| Jared D. Beckstrand                    (Chapter 7 Filed; stayed) | 12-2471 |
| Union Central Life Insurance Company | 13-2023 |
| Victor Wright | Not Yet Filed |
| Sharman & Linda Pitcher | 13-2110 |
| Edith Clift | 13-2111 |
| Birdie Higinbotham | 13-2116 |
| Richard Call | 13-2115 |
| Mark & Alyson Brown | 13-2112 |
| Harold Howe | 13-2113 |
| Richard Hooper | 13-2114 |
| Russell Hansen | 13-2120 |
| Addie Wilcken a/k/a Addie Checketts | 13-2117 |
| Jennifer Randall   (Proof of Claim on file in Bankruptcy Case No. 12-24458) | |
| Kristina McGuire, aka Kristina Hyer, individually and as Trustee of the Kristian Mc Guire Living Trust and David B. Boyce, individually and as Trustee of the Boyce Family Trust | Not Yet Filed |
| Katherine Muller aka Katherine Rose | Not Yet Filed |
| The Church of Jesus Christ of Latter-day Saints (LDS Church) | Not Yet Filed |
| Other Causes of Action by the Debtors against Union Central Life Insurance Company, Ameritas Life Insurance Company, Ameritas Mutual Holding Company, and all Affiliates, officers, directors, agents, attorneys, and employees of the foregoing companies. | Not Yet Filed |
| Prepetition Attorneys for each of the Debtors:  Vantus Law Group, Brad Jacobsen, Bryan Cave/Holme Roberts & Owen LLP. | Not Yet Filed |
| Prepetition Accountants for each of the Debtors:  Stayner Bates & Jensen, P.C.. | Not Yet Filed |
| Prepetition Auditors for each of the Debtors:  Stayner Bates & Jensen, P.C. | Not Yet Filed |
| Prepetition Financial Advisors for each of the Debtors. | Not Yet Filed |
| **DISTRICT COURT CASE** | **CASE NUMBER** |
| Marine Credit | 2:12-cv-1041 |
| | |
| | |
| | |
| | |
| | |

1215801.12/dmm/rqn