Michael R. Johnson, Esq. (A7070)
David H. Leigh, Esq. (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  dleigh@rqn.com

*Counsel for Gil A. Miller, Chapter 11 Trustee of the Consolidated Estate*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>DEE ALLEN RANDALL, et al.,<br><br>Debtors. | **Bankruptcy Case No. 10-37546**<br>(Substantively Consolidated with Case Nos. 11-34826, 11-34830, 11-34831, 11-34833 and 11-34834)<br><br>Chapter 11<br><br>Honorable Joel T. Marker<br><br>(Filed via ECF) |

**THE TRUSTEE'S MOTION, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT WITH SHARMAN AND LINDA PITCHER**

**(Also Relates to Adv. No. 13-02110)**

Pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9019, Gil A. Miller (the "**Trustee**"), who is the post-confirmation trustee and representative of the substantively consolidated and confirmed Chapter 11 estate of Dee Allen Randall, Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon

Mortgage and Investment Inc. and Horizon Financial & Insurance Group Inc. (collectively, the "**Debtors**"), through counsel, hereby moves (the "**Motion**") the Court for entry of an order approving the form and substance of the *Settlement Agreement and Mutual Release of Claims* (the "**Agreement**") attached hereto as Exhibit "A," which Agreement is an agreement between the Trustee and each of Sharman and Linda Pitcher, jointly and severally (collectively, "**Investor**") to settle and resolve certain fraudulent transfer claims of the consolidated estate against Investor related to Investor's investments with one or more of the Debtors, and Investor's receipt of excess profits resulting from those investments.

The Trustee contends that Investor received excess, and therefore avoidable, profits on his investments in the amount of $111,515.95. Under the Agreement, Investor will pay the consolidated estate the lump sum of $3,000.00 by no later than April 30, 2014 (which payment has already been received), and the Trustee, on behalf of the consolidated estate, will provide Investor with a general release of all further claims. The Trustee also asks the Court to approve and authorize the Trustee's execution of the Agreement on behalf of the consolidated estate. Finally, if the Agreement is approved, the Trustee will dismiss Adversary Proceeding 13-02110 (the "**Adversary**") that he has filed against the Investor (or alternatively the Court will note the dismissal on its docket once the Agreement is approved by the Court).

In support of this Motion, the Trustee respectfully states as follows:

## MEMORANDUM OF LAW

### I.    JURISDICTION AND VENUE.

1.    The Court has jurisdiction respecting the Motion and the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157.

2.    The Motion presents a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0).

3.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2

4.      The legal predicates for the relief sought in the Motion are 11 U.S.C. § 105(a), and Rules 9014 and 9019 of the Federal Rules of Bankruptcy Procedure.

**II.      FACTUAL BACKGROUND.**

1.      Dee Allen Randall ("**Randall**"), a Chapter 11 debtor before this Court, commenced Chapter 11 Case No. 10-37546 (the "**Randall Case**") on or about December 20, 2010 by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with this Court.

2.      Between the Petition Date and September 29, 2011, Randall continued to operate as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      As of September 29, 2011, Randall owned and was the president or manager, as the case may be, of each of Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. and Horizon Financial & Insurance Group Inc. (hereinafter, the "**Corporate Debtors**").

4.      On or about September 29, 2011, an Order was entered by this Court approving the appointment of the Trustee in the Randall Case.  [Randall Case, Doc. 247]

5.      Upon his appointment, the Trustee stepped into Randall's shoes and became the owner, in his capacity as Chapter 11 trustee, of each of the Corporate Debtors.

6.      On October 12, 2011, the Trustee, in his capacity as Chapter 11 Trustee in the Randall Case, caused a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to be filed for each of the Corporate Debtors (the "**Corporate Debtor Cases**").

7.      On January 27, 2012, the Court entered its Order substantively consolidating the separate bankruptcy estates of each of the Debtors, with the Corporate Debtor Cases being consolidated with and into the Randall Case.

8.      By virtue of the Court's order of substantive consolidation, the Trustee became the Chapter 11 Trustee of the substantively consolidated estate (the "**Consolidated Estate**") of all of the Debtors.

9.      On October 28, 2013, the Court entered its *Order Confirming the Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1367] (the "**Confirmation Order**").

10.      The Confirmation Order confirmed the *Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1268] (the "**Plan**").

11.      As set forth in Article 6.2 of the Plan, at all relevant times, including after the entry of the Confirmation Order, the Trustee remains the representative of the Consolidated Estate and has the sole right to administer the Consolidated Estate after confirmation, including but not limited to by holding all rights, powers, and duties of a trustee under Chapter 11 of the Bankruptcy Code, as well as those rights, powers and duties afforded by the Plan and the Confirmation Order.

12.      Prior to the filing of the Randall Case, Investor placed certain monies with one or more of the Debtors pursuant to certain promissory notes or other instruments (the "**Notes**"), and received certain funds from one or more of the Debtors, purportedly as payments under the Notes.

13.      The Trustee asserts that the Debtors were engaged in a Ponzi scheme, and that Investor is required to return to the consolidated estate all amounts that she received from the Debtors in excess of his principal investments (the "**Excess Profits**").

14.      The Trustee further asserts that the amount of the Excess Profits that must be returned to the consolidated estate is equal to $111,515.95,  not including interest accruals or attorneys' fees and costs.

15.    Investor has denied that Investor is liable to the Trustee and the estate in any amount under any theory, and has asserted that the Excess Profits were paid in good faith. Investor also has raised other possible defenses to the Trustee's claims.

16.    In addition, Investor has provided the Trustee with information concerning Investor's finances and ability to repay the Excess Profits, which information raises substantial questions about Investor's solvency and ability to satisfy any judgment obtained.  Investor also has retained Anna Drake, a well-known bankruptcy practitioner, to either settle the Trustee's claims on terms Investor can accept, or file a Chapter 7 bankruptcy petition.

17.    The Trustee and Investor have engaged in settlement discussions regarding the Trustee's claims and Investor's defenses, and also Investor's ability to pay, and have agreed to settle and compromise their disputes on the terms set forth in the Agreement which the Trustee now asks the Court to approve.

18.    In general, the Agreement provides that Investor will pay the consolidated estate the total sum of $3,000.00 by no later than April 30, 2014 (which funds have already been received),  and the Trustee, on behalf of the consolidated estate, will provide Investor with a general release of all further claims.

19.    The Agreement further provides that, conditioned upon approval of the Agreement by a final and non-appealable order, the Trustee will dismiss the Adversary, and that the Trustee and the Investor will provide each other with mutual releases (with the Trustee's release being effective only upon full payment of all amounts due under the Agreement).

20.    The Trustee is seeking approval from the Court of the Agreement because, pursuant to Article 6.10(c) of the Plan, this Court "must approve the settlement of any Estate Litigation Claim where the Face Amount of the Estate Litigation Claim is more than $100,000," and the face amount of the Trustee's claims against Investor exceed this threshold.

5

**IV.    RELIEF REQUESTED.**

1.      By this Motion, the Trustee respectfully asks the Court to enter an order approving the Agreement, and ratifying the Trustee's execution of the Agreement on behalf of the consolidated estate, pursuant to Federal Rule of Bankruptcy Procedure 9019.

2.      The Trustee believes that the Agreement, and the settlement with Investor outlined therein, is in the best interests of the Debtors, their creditors and the consolidated estate.  The Trustee further believes that he has exercised sound business judgment in entering into the Agreement.

3.      Typically, in considering whether to approve a settlement of claims brought by the bankruptcy estate, courts consider the four factors outlined in *In re Kopexa Realty Venture Co.,* 213 B.R. 1020, 1022 (10th Cir. BAP 1997).  Those factors are (a) the probability of success in the litigation, (b) the difficulties to be encountered in collection, (c) the complexities and expense of the litigation involved, and (d) the interests of creditors in proper deference to their reasonable views.

4.      Considering these factors, the Trustee believes that the Agreement is fair, equitable, and in the best interests of the consolidated estate and the Debtors' creditors, and that the Agreement should be approved.  Specifically:

A.      If the Agreement is approved, the consolidated estate will receive $3,000.00.  This is admittedly a very small fraction (less than 3%) of the amount of the Excess Profits.  Without the settlement, however, the consolidated estate would need to litigate the Adversary (assuming Investor did not file for Chapter 7), obtain a judgment, and then try and collect any judgment obtained.  The consolidated estate likely would need to expend substantial fees and costs in order to obtain a judgment against Investor in the amount of the Excess Profits.

While the Trustee is confident that he would prevail in the Adversary, the Trustee acknowledges that litigation is not without risk, and that there is no guarantee of success.  Further, the Trustee is unaware of any basis he would have to recover his attorneys' fees and costs incurred in the Adversary, even if he were to succeed on the merits.  Finally, even though the Trustee would likely obtain a judgment against Investor for the amount of the Excess Profits, the Trustee has substantial questions about collectability of the judgment as set forth below.  Thus, the first *Kopexa* factor weighs in favor of approval of the Agreement.

B.     The Trustee also believes it would be difficult to collect a money judgment against Investor, in the event a judgment was obtained in the Adversary.  The Investor has provided the Trustee with information concerning the Investor's financial solvency and ability to pay, which information raises substantial questions about whether a judgment could be collected.  In short, if the Agreement is not approved, Investor will likely file for Chapter 7 relief through Anna Drake, Investor's counsel, and seek to discharge any liability regarding the Excess Profits.  Further, based upon the Trustee's review of Investor's financial information and disclosures, it is likely that any Chapter 7 case filed by Investor would be a "no asset case," meaning that the consolidated estate would receive nothing in the bankruptcy.  In short, it is likely that, if the Agreement is not approved, the Trustee and the consolidated estate will receive nothing in the Adversary.  Thus, the second *Kopexa* factor weighs in favor of approval of the Agreement as well.

C.     The Trustee also believes that continued litigation against Investor could be fairly expensive.  The Adversary raises a number of claims, primarily premised upon the Uniform Fraudulent Transfer Act.  At a minimum, the Trustee would need to put on evidence establishing that the Debtors were operating a Ponzi scheme, that the Investor received the Excess Profits, and that the Debtors were insolvent when the Excess Profits

were paid.  Further, assuming Investor does not just file for bankruptcy, Investor may assert

defenses both under the Uniform Fraudulent Transfer Act, and under general equitable

principles.  Such defenses could include defenses based upon statute of limitations

arguments related to transfers made to the Investor more than four years prior to the

Corporate Debtors' bankruptcy filing.  If the Agreement is approved, further litigation with

Investor, and its attendant costs, will be avoided.  Thus, the third *Kopexa* factor also weighs

in favor of approval of the Agreement.

   D. Finally, the interest of creditors in this case is to recover assets at a

reasonable cost, in light of the circumstances.  Under the Agreement, the consolidated estate

will receive $3,000.00, which amount has already been paid.  While $3,000 is a very small

fraction of the amount of the Excess Profits (less than 3%), the Trustee reasonably believes that

he would not recover more than that if the Agreement is not approved because, as noted above,

Investor would likely just file a Chapter 7 bankruptcy case and thereby discharge any liability

to the consolidated estate, and the case would likely be a "no asset" case.  Thus, under the

Agreement the consolidated estate will receive at least some payment from the Investor at very

little cost or expense to the estate and its creditors, in return for providing Investor with a

general release of any remaining claims.  The Trustee is unaware of any claims he would have

against Investor other than claims related to the Excess Profits.  Thus, the fourth *Kopexa* factor

also weighs in favor of approval of the Agreement.

   5. Based upon the foregoing, the Trustee believes in his business judgment that the

settlement he has negotiated with Investor should be approved.  Under the Agreement, the

consolidated estate will receive $3,000.00 in unencumbered funds (which funds have already

been paid), at very little cost or expense to the estate.   In the Trustee's view, given Investor's

precarious financial condition, this is a fair and reasonable settlement, and it should be

approved by the Court.  *See, e.g., In re George Love Farming, LC,* 2008 Bankr. LEXIS 680, at

\*18-19 (Bankr. D. Utah March 6, 2008) (approving settlement under *Kopexa* factors); *Shaw v. Anderson (In re Anderson)*, 2006 Bankr. LEXIS 4420, at \*23 (Bankr. D. Utah August 14, 2006) (noting that the Court's obligation under Rule 9019 is to "'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness' in order to determine whether the settlement is 'fair and equitable' and in the best interests of the estate") (citations omitted).

WHEREFORE, based upon the foregoing, the Trustee respectfully asks the Court to (a) approve the Agreement, (b) authorize and approve the settlement with Investor set forth therein, and (c) grant the Trustee such other and further relief as the Court deems just and proper.

DATED this 23rd day of April, 2014.

RAY QUINNEY & NEBEKER P.C.


/s/ Michael R. Johnson
Michael R. Johnson
David H. Leigh
*Counsel for the Trustee*

1280797

# Exhibit A

Michael R. Johnson, Esq. (A7070)
David H. Leigh, Esq. (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

*Counsel for Gil A. Miller, Chapter 11 Trustee of the Consolidated Estate*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>DEE ALLEN RANDALL, et al.,<br><br>　　　　Debtors. | **Bankruptcy Case No. 10-37546**<br><br>(Substantively Consolidated with Case Nos. 11-34826, 11-34830, 11-34831, 11-34833 and 11-34834)<br><br>Chapter 11<br><br>Honorable Joel T. Marker<br><br>(Filed via ECF) |

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**
**(Also Relates to Adv. No. 13-02110)**

This *Settlement Agreement and Mutual Release of Claims* ("**Agreement**") is made and

entered into this _17th_ day of April, 2014, by and between Gil A. Miller (the "**Trustee**"), who is

the post-confirmation trustee and representative of the substantively consolidated and confirmed

Chapter 11 estate of Dee Allen Randall, Horizon Auto Funding, LLC, Independent Commercial

Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. and

Horizon Financial & Insurance Group Inc. (collectively, the "**Debtors**"), on the one hand, and

each of Sharman Pitcher and Linda Pitcher, husband and wife, jointly and severally (collectively,

"**Investor**"), on the other hand.  The Trustee and Investor are sometimes collectively referred to

herein as the "**Parties**."

**RECITALS**

1.      Dee Allen Randall ("**Randall**") commenced Chapter 11 Case No. 10-37546 (the

"**Randall Case**") on or about December 20, 2010 by filing a voluntary petition for relief under

Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United

States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**").

2.      Between the Petition Date and September 29, 2011, Randall continued to operate

as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      As of September 29, 2011, Randall owned and was the president or manager, as

the case may be, of each of Horizon Auto Funding, LLC, Independent Commercial Lending,

LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. and Horizon

Financial & Insurance Group Inc. (hereinafter, the "**Corporate Debtors**").

4.      On or about September 29, 2011, an Order was entered by the Bankruptcy Court

approving the appointment of the Trustee in the Randall Case.  [Randall Case, Doc. 247]

5.      On October 12, 2011, the Trustee, in his capacity as Chapter 11 Trustee in the

Randall Case, caused a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to

2

be filed with the Bankruptcy Court for each of the Corporate Debtors (the "**Corporate Debtor Cases**").

6.   On January 27, 2012, the Bankruptcy Court entered its Order substantively consolidating the separate bankruptcy estates of each of the Debtors, with the Corporate Debtor Cases being consolidated with and into the Randall Case.

7.   By virtue of the Bankruptcy Court's Order of substantive consolidation, the Trustee became the Chapter 11 Trustee of the substantively consolidated estate (the "**Consolidated Estate**") of all of the Debtors.

8.   On October 28, 2013, the Bankruptcy Court entered its *Order Confirming the Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1367] (the "**Confirmation Order**").

9.   The Confirmation Order confirmed the *Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1268] (the "**Plan**").

10.   The Plan became Effective on November 27, 2013.

11.   As set forth in Article 6.2 of the Plan, at all relevant times, including after the entry of the Confirmation Order and after the Effective Date, the Trustee remains the representative of the Consolidated Estate and has the sole right to administer the Consolidated Estate after confirmation, including but not limited to by holding all rights, powers, and duties of a trustee under Chapter 11 of the Bankruptcy Code, as well as those rights, powers and duties afforded by the Plan and the Confirmation Order.

12.     Prior to the Petition Date, Investor placed certain monies with one or more of the Debtors, pursuant to certain promissory notes or other instruments (the "**Notes**").

13.     Prior to the Petition Date, Investor received certain funds from one or more of the Debtors, purportedly as principal and interest under the Notes.

14.     The Trustee asserts that the Debtors were engaged in a Ponzi scheme, and that Investor is required to return to the consolidated estate all amounts that he received from the Debtors in excess of his principal investments (the "**Excess Profits**").

15.     The Trustee further asserts that the amount of the Excess Profits that must be returned to the consolidated estate is equal to $111,515.95, not including interest accruals or attorneys' fees and costs.

16.     The Trustee has filed an adversary proceeding against Investor concerning the return of Excess Profits to the consolidated estate, which adversary proceeding (the "**Adversary**") is currently pending before the Bankruptcy Court as Adv. No. 13-02110.

17.     The Trustee and Investor have engaged in settlement negotiations concerning the Excess Profits and the Trustee's potential claims against Investor.

18.     Furthermore, the Investor has provided the Trustee with confidential financial and other "ability to pay" information concerning Investor's assets, liabilities and financial affairs, and Investor has requested that the Trustee consider Investor's financial situation and ability to pay as part of any settlement agreed to.  In essence, Investor contends that Investor is basically judgment proof and, unless the Trustee is willing to compromise his claims for the amounts set forth herein, Investor will need to file for bankruptcy relief.

4

19.     As a result of those settlement negotiations, and based upon the Trustee's review of Investor's financial information and ability to pay, the Trustee and Investor have reached an agreement whereby Investor will pay the Trustee, for the benefit of the substantively consolidated estate, the amount of THREE THOUSAND AND 00/100 DOLLARS ($3,000.00) (the "**Settlement Payment**") by no later than April 30, 2014.  Further, both the Trustee and Investor will release and discharge one another from all further claims and causes of action (with the Investor being released only upon full payment of the Settlement Payment).

### AGREEMENT

Based upon the foregoing Recitals, which are expressly incorporated herein by this reference, and for good and valuable other consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be bound, stipulate and agree as follows:

1.     Court Approval:  The Parties expressly acknowledge and agree that, because the Adversary seeks a money judgment against Investor in an amount in excess of $100,000.00, this Agreement, and the Trustee's performance hereunder, is subject to the approval of the Court. The Trustee shall, as soon as reasonably possible after execution of this Agreement by the Parties, seek Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "**Approval Order**").

2.     Cash Payment of Settlement Payment; Timing; Method:  Investor agrees to pay the Settlement Payment to the Trustee.  The Settlement Payment shall be made in good and sufficient funds, and such funds shall be delivered so that they are actually received by the

Trustee at Rocky Mountain Advisory, LLC, 215 South State Street, Suite 550, Salt Lake City, Utah 84111, by no later than April 30, 2014.

3.   <u>Settlement Payment Becomes Non-Refundable Upon Entry of Approval Order</u>. Investor agrees that the Settlement Payment, once paid, will become non-refundable and will become property of the Trustee for the benefit of substantively consolidated estate once the Bankruptcy Court enters its Approval Order, and the same becomes final and non-appealable.  In the event the Bankruptcy Court fails to enter the Approval Order, or in the event the Bankruptcy Court enters the Approval Order but the same does not become final and non-appealable, then the Trustee shall promptly (within five (5) business days), return the Settlement Payment, or so much of the Settlement Payment as the Trustee has received, to Investor, this Agreement shall become null and void, and the Parties shall be restored to the positions they enjoyed prior to the entry of this Agreement.

4.   <u>Release of Claims Against Investor</u>.  Effective only upon (a) full and timely payment of the Settlement Payment on the terms and conditions set forth herein, (b) the entry of the Approval Order, and (c) the Approval Order becoming final and non-appealable, the Trustee releases and forever discharges Investor and Investor's agents, attorneys, representatives, predecessors, successors and assigns (collectively, the "**Investor Release Parties**")  from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent that the Trustee may have against the Investor Release Parties, from the beginning of time to the date hereof,

based upon any claims, acts or omissions of the Investor Parties relating to the Notes or Investor's receipt of the Excess Profits; *provided however*, that the release provided under this paragraph is not a release of any claims or causes of action arising out of or resulting from a default under or breach of this Agreement.

5.  <u>Release of Claims Against Trustee, the Debtors and the Consolidated Estate.</u> Effective upon the entry of the Approval Order and the Approval Order becoming final and non-appealable, Investor releases and forever discharges the Debtors, the Debtors' estates, the Trustee and any one or all of the Trustee's associates, affiliates, predecessors, successors, heirs, assigns, managers, subsidiaries, parents, officers, directors, partners, attorneys, agents and the employees, agents, attorneys, representatives, predecessors, successors and assigns thereof (collectively, the "**Trustee Release Parties**") from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent (including but not limited to any proofs of claim that Investor has filed or asserted in either the Randall Case or the Corporate Debtor Cases) that Investor has or may have against the Trustee Release Parties from the beginning of time to the date of this Agreement; *provided, however,* the release provided under this paragraph is not a release of any claims or causes of action arising or resulting from a default under or breach of this Agreement.

6.  <u>Dismissal of Adversary.</u>  Conditioned upon (a) full and timely payment of the Settlement Payment on the terms and conditions set forth herein, (b) the entry of the Approval

Order, and (c) the Approval Order becoming final and non-appealable, the Trustee shall cause the Adversary to be dismissed (but only in the event that the Clerk of the Court doesn't simply note the dismissal of the Adversary on the Court's docket once the Bankruptcy Court enters its Order approving of this Agreement).

7.    <u>Consent to Judgment for Full Amount of Excess Profits in the Event the Settlement Payment is not Made when Due</u>.  Investor stipulates, consents and agrees that, in the event Investor fails to pay the Settlement Payment to the Trustee as and when the same comes due under this Agreement and, unless the Trustee has otherwise agreed, the Bankruptcy Court may, without further notice to Investor, enter judgment against Investor for the full amount of the Excess Profits, less any payments Investor has made.

8.    <u>Representations of Investor</u>.  Investor represents and warrants that Investor has full power and authority to enter into this Agreement, that there has been no assignment or other transfer of a claim, cause of action or other liability which might affect or impair the releases set forth in this Agreement, and that Investor has not filed any proofs of claims or asserted any claims in the Bankruptcy Case other than those disclosed in this Agreement or set forth in the records of the Debtors' bankruptcy cases.  Investor further represents and warrants that all financial and other "ability to pay" information that Investor has provided to the Trustee during settlement negotiations is true, accurate and complete to the best of Investor's information, knowledge and belief.

9.    <u>Representations of the Trustee</u>.  The Trustee represents that, as the Court-authorized representative of the Debtors and the Debtors' substantively consolidated estate

pursuant to the terms of the Plan and the Confirmation Order, he has full power and authority to enter into this Agreement on behalf of the Debtors and the Debtors' estate, subject to approval of the same by the Bankruptcy Court.

10.   Attorneys' Fees and Costs.  Each of the Parties shall bear its own respective attorneys' fees and costs incurred in connection with entering into, obtaining Court approval of, and implementing this Agreement, and in the Adversary.   In the event suit is brought by either Party to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to an award of his, or its reasonable attorneys' fees and costs incurred.

11.   Effectuation of Agreement.  The Parties agree to perform any other or further acts, and execute and deliver any other or further documents, as may be necessary or appropriate to implement this Agreement, including without limitation, to execute and deliver if appropriate, any documents necessary to obtain approval of this Agreement from the Court.  Except as specifically required by any order entered by the Court, the Trustee may execute any documents necessary to effectuate this Agreement without further notice and hearing.

12.   Binding Effect.  Subject to entry of the Approval Order, this Agreement shall be binding upon each of the Parties, and upon their respective successors-in-interest, heirs and/or assigns.  All representations and warranties made herein shall survive execution of this Agreement and shall at all times subsequent to the execution of this Agreement remain binding and fully enforceable.

13.   Bankruptcy Court Jurisdiction.  Any claims or causes of action, whether legal or equitable, arising out of or based upon this Agreement or related documents, including but not

9

limited to interpretation and/or enforcement of this Agreement, shall be commenced in the

Bankruptcy Court.  The Parties hereby consent to the jurisdiction, venue and process of the

Bankruptcy Court.

      14.    <u>Governing Law</u>.  This Agreement is made pursuant to and shall be governed by

laws of the State of Utah and, where applicable, federal bankruptcy law.

      15.    <u>Construction of Agreement</u>.  This Agreement shall be construed as a whole in

accordance with its fair meaning and in accordance with governing law.  This Agreement has

been negotiated by each of the Parties (or their respective counsel) and the language of the

Agreement shall not be construed for or against any particular party.

      16.    <u>Voluntary Agreement</u>.  This Agreement has been carefully read by the Parties and

has been reviewed by the Parties' respective legal counsel (or, if not represented, such Parties

had the opportunity to engage counsel to review the Agreement); the contents hereof are known

and understood by the Parties; and each of the Parties acknowledges that such party is under no

duress or undue influence and that each of the Parties executes this Agreement as its own free

and voluntary act.

      17.    <u>Integration and Amendments</u>.  This Agreement shall constitute the entire

agreement and understanding of and between the Parties in relation to matters described herein,

and no statements, representations, inducements or promises other than as expressly set forth

herein have been given or received by any of the Parties (nor by their respective agents,

employees, attorneys or representatives) in return for same.  All negotiations, oral conversations,

statements, representations and/or agreements leading up to the execution of this Agreement are

merged herewith and shall not be the basis for any legal rights, claims or defenses in relation to any litigation or otherwise. No parole or extrinsic evidence may be used to contradict any of the terms of this Agreement. Any amendment to this Agreement must be in writing, signed by duly authorized representatives of the Parties hereto, and specifically state the intent of the Parties to amend this Agreement.

18.    Severability. To the extent that any portion of this Agreement is held unenforceable by a court, tribunal or arbiter of competent jurisdiction, the remainder of this Agreement shall remain binding and enforceable provided that the primary purpose of the Agreement is not frustrated.

19.    Counterparts. This Agreement may be executed by the Parties hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the terms of this Agreement, will be deemed an original with all such counterparts taken together constituting one and the same instrument. Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed agreement or instrument.

[EXECUTION PAGE TO FOLLOW]

11

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date and year first above written.

**SHARMAN PITCHER**

*Sharman E. Pitcher*
By: Sharman Pitcher
Address: 551 S 1350 E Fruit Heights UT

**LINDA PITCHER**

*Linda Pitcher*
By: Linda Pitcher
Address: 551 S. 1350 E. Fruit Hts, Utah

**GIL A. MILLER, solely in his capacity as the post-confirmation trustee and representative of the substantively consolidated and confirmed Chapter 11 estate**

By: Gil A. Miller, Trustee

1277864