Michael R. Johnson, Esq. (A7070)
Douglas M. Monson, Esq. (A2293)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  dmonson@rqn.com

*Counsel for Gil A. Miller, Chapter 11 Trustee of the Reorganized Consolidated Debtors*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>DEE ALLEN RANDALL, et al.,<br><br>Debtors. | **Bankruptcy Case No. 10-37546**<br><br>(Substantively Consolidated with Case Nos. 11-34826, 11-34830, 11-34831, 11-34833 and 11-34834)<br><br>Chapter 11<br><br>Honorable Joel T. Marker<br><br>(Filed via ECF) |

**THE TRUSTEE'S MOTION, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS WITH F. R. SATTERFIELD AND D. CAROL SATTERFIELD A/K/A CAROL D. SATTERFIELD, INDIVIDUALLY AND AS TRUSTEES UNDER THE F.R. SATTERFIELD FAMILY TRUST DATED JANUARY 29, 1997**
**(Also relates to Adversary No. 12-02463)**

Pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9019, Gil A. Miller (the

"**Trustee**"), the Chapter 11 Trustee of the substantively consolidated Chapter 11 estate of Dee

Allen Randall, Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. and Horizon Financial & Insurance Group Inc. (collectively, the "**Debtors**"), through counsel, hereby moves (the "**Motion**") the Court for entry of an order approving the form and substance of the *Settlement Agreement and Mutual Release of Claims* (the "**Agreement**") attached hereto as Exhibit "A," which Agreement is an agreement between the Trustee, on the one hand, and creditors F. R. Satterfield and D. Carol Satterfield a/k/a Carol D. Satterfield, as trustees under the F.R. Satterfield Family Trust Dated January 29, 1997, and F.R. Satterfield and D. Carol Satterfield a/k/a Carol D. Satterfield in their individual capacities (collectively the "**Satterfields**" or "**Investors**"), on the other hand.

The Agreement, which has been negotiated at arm's length between the Trustee and the Investors, has been entered into in order to settle and resolve the following: (1) the Trustee's avoidance claims against the Investors related to the "**Satterfield Trust Deed**" (as defined herein), (2) the Satterfields' alleged secured claim against the Consolidated Estate of the Debtors arising from the recording of the Satterfield Trust Deed against real property of the Consolidated Estate, and (3) the amounts and allowance of the Investors' two Allowed Class 17 Victim Unsecured Claims against the Consolidated Estate. Specifically, under the Agreement, the Investors and the Trustee agree to the following:

A.      The Satterfield Trust Deed shall be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code, and the Satterfield Trust Deed shall be automatically preserved for the benefit of the Consolidated Estate pursuant to 11 U.S.C. § 551. Further, the

2

Satterfield Trust Deed shall be deemed to be transferred and assigned by the Satterfields to the Consolidated Estate.

B.      The Satterfields shall have two Allowed Class 17 Victim Unsecured Claims (collectively the "**Allowed Class 17 Victim Unsecured Claims**") against the Consolidated Estate as follows:  (1) in the amount of $198,816.77 in connection with their Proof of Claim No. 623 (the "**Claim No. 623 Allowed Unsecured Claim**"), and (2) in the amount of $47,800.21 in connection with their Proof of Claim No. 614 (the "**Claim No. 614 Allowed Unsecured Claim**").  The Allowed Class 17 Victim Unsecured Claims shall be treated and paid, if at all, only in accordance with the confirmed Plan in this Consolidated Case.

C.      Both the Trustee and the Investors shall release and discharge one another from all further claims and causes of action, including any of the Investors' filed and unfiled claims against the Consolidated Estate other than their Allowed Class 17 Victim Unsecured Claims, and the Trustee's Complaint against the Satterfields styled as *Miller v. Satterfield*, Adversary No. 12-2463 (the "**Adversary Proceeding**"), will be dismissed with prejudice.

In support of this Motion, the Trustee respectfully states as follows:

## MEMORANDUM OF LAW

### A.      JURISDICTION AND VENUE.

1.      The Court has jurisdiction respecting the Motion and the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157.

2.      The Motion presents a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief sought in the Motion are 11 U.S.C. § 105(a), and Rules 9014 and 9019 of the Federal Rules of Bankruptcy Procedure.

**B.      FACTUAL BACKGROUND.**

1.      Dee Allen Randall ("**Randall**"), a Chapter 11 debtor before this Court, commenced Chapter 11 Case No. 10-37546 (the "**Randall Case**") on December 20, 2010 (the "**Randall Petition Date**") by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with this Court.

2.      Between the Randall Petition Date and September 29, 2011, Randall continued to operate as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      As of September 29, 2011, Randall owned and was the president or manager, as the case may be, of each of Horizon Auto Funding, LLC, Independent Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. ("**Horizon Mortgage**"), and Horizon Financial & Insurance Group Inc. ("**Horizon Financial**") (hereinafter, the "**Corporate Debtors**").

4.      On or about September 29, 2011, an Order was entered by this Court approving the appointment of the Trustee in the Randall Case.  [Randall Case, Doc. 247]

5.      Upon his appointment, the Trustee stepped into Randall's shoes and became the owner, in his capacity as Chapter 11 trustee, of each of the Corporate Debtors.

6.      On October 12, 2011 (the "**Corporate Debtors Petition Date**"), the Trustee, in his capacity as Chapter 11 Trustee in the Randall Case, caused a voluntary petition for relief

under Chapter 11 of the Bankruptcy Code to be filed with the Bankruptcy Court for each of the Corporate Debtors (the "**Corporate Debtor Cases**").

7.      On January 27, 2012, the Bankruptcy Court entered its Order substantively consolidating the separate bankruptcy estates of each of the Debtors, with the Corporate Debtor Cases being consolidated with and into the Randall Case (the "**Consolidated Estate**"), but effective only as of the date of the consolidation Order.

8.      By virtue of the Court's Order of substantive consolidation, the Trustee became the Chapter 11 Trustee of the Consolidated Estate of all of the Debtors.

9.      On October 28, 2013, the Bankruptcy Court entered its *Order Confirming the Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1367] (the "**Confirmation Order**").

10.     The Confirmation Order confirmed the *Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1268] (the "**Plan**").

11.     The Plan became Effective on November 27, 2013 (the "**Effective Date**").

12.     As set forth in Article 6.2 of the Plan, at all relevant times, including after the entry of the Confirmation Order and after the Effective Date, the Trustee remains the representative of the Consolidated Estate and has the sole right to administer the Consolidated Estate after confirmation of the Plan, including but not limited to by holding all rights, powers, and duties of a trustee under Chapter 11 of the Bankruptcy Code, as well as those rights, powers and duties afforded by the Plan and the Confirmation Order.

13.     Prior to the Petition Date, the Satterfields placed certain monies with one or more of the Debtors, pursuant to certain promissory notes or other instruments (the "**Notes**").

5

14.     The Trustee asserts that the Debtors were engaged in a Ponzi scheme, and that in a Ponzi scheme any investors, including the Satterfields, are only entitled to a return of unpaid principal or, in other words, are only entitled to receive a claim for the difference between the total amount of the investment and any prior payments made on the investment, however denominated or accounted for.

15.     Prior to the Randall Petition Date, Randall executed and delivered to the Satterfields a Second Trust Deed (the **"Satterfield Trust Deed"**) dated August 14, 2008, purporting to secure payment of the indebtedness evidenced by a promissory note payable to the Satterfields in the principal sum of $200,000.00 dated August 14, 2008, and listing Randall as trustor, Bonneville Superior Title Company, Inc., as trustee, and the Satterfields as beneficiary. The legal description for the Satterfield Trust Deed describes a parcel of improved real property located at 1072 S. Lloyd in Fruit Heights, Davis County, Utah under Tax Parcel No. 07-082-0016 (referred to herein as **"Parcel 1"**).

16.     Randall was the owner of Parcel 1 at the time that the Satterfield Trust Deed was executed and delivered to the Satterfields.

17.     The Satterfield Trust Deed covering Parcel 1 was recorded with the Davis County, Utah Recorder on August 18, 2008 as Entry No. 2386868 in Book 4596 at Page 592.

18.     Prior to the execution and recording of the Satterfield Trust Deed, Randall had executed and delivered to Leland R. Thompson and Phyllis N. Thompson (collectively the "**Thompsons**") and to Carl Boyington and Janice Boyington (collectively the "**Boyingtons**") (the Thompsons and the Boyingtons are referred to collectively herein as the "**Thompsons and Boyingtons**") a Trust Deed (the **"Thompson and Boyington Trust Deed"**) dated July 22,

2008, which states that it secures payment of the indebtedness evidenced by a promissory note payable in the principal sum of $250,000.00 dated July 22, 2008.

19.      The Thompson and Boyington Trust Deed lists Randall as trustor, Bonneville Superior Title Company, Inc., as trustee, and the Thompsons and the Boyingtons as the beneficiaries.  The Thompson and Boyington Trust Deed was recorded with the Davis County, Utah Recorder on July 23, 2008 as Entry No. 2381448 in Book 4579 at Page 458.  The legal description of the Thompson and Boyington Trust Deed covers Parcel 1.

20.      At the time that the Satterfield Trust Deed was executed and delivered to the Satterfields, the Satterfields acknowledged that the Thompson and Boyington Trust Deed was a senior trust deed lien on Parcel 1.

21.      The improved real property located at 1072 S. Lloyd in Fruit Heights, Davis County, Utah, also includes a separate parcel under Tax Parcel No. 07-082-0040 that was owned by Horizon Financial (referred to herein as **"Parcel 2"**).  The legal description of the Satterfield Trust Deed did not describe Parcel 2.

22.      Subsequent to his appointment, the Trustee, pursuant to a written Order of the Bankruptcy Court (the "**1072 S. Lloyd Sale Order**") [Docket 535], sold both Parcel 1 and Parcel 2 (collectively the "**1072 S. Lloyd Property**") to a third party, and the Trustee received certain net sales proceeds (the "**1072 S. Lloyd Net Proceeds**") relating to such sale, with the disposition of the 1072 S. Lloyd Net Proceeds being subject to the terms set forth in the 1072 S. Lloyd Sale Order.

23.      The 1072 S. Lloyd Net Proceeds are $485,827.69.

24.     The allocation of the 1072 S. Lloyd Net Proceeds to the sale of Parcel 1 that was originally owned by Randall and against which both the Thompson and Boyington Trust Deed and the Satterfield Trust Deed were recorded is $242,913.84 (the "**Parcel 1 Allocated Proceeds**").

25.     The allocation of the 1072 S. Lloyd Net Proceeds to the sale of Parcel 2 that was owned by Horizon Financial is $242,913.84 (the "**Parcel 2 Allocated Proceeds**").

26.     The Trustee has filed a Complaint with the Bankruptcy Court against the Satterfields styled as _Miller v. Satterfield_, Adversary No. 12-02463 (the "**Satterfield Adversary Proceeding**"), whereby the Trustee has asserted that the execution, delivery, and recording of the Satterfield Trust Deed against Parcel 1 was a fraudulent transfer to the Satterfields that should be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code.

27.     The Trustee also filed an Amended Complaint with the Bankruptcy Court against the Thompsons and the Boyingtons styled as _Miller v. Thompson & Boyington_, Adversary No. 12-02462 (the "**Thompson and Boyington Adversary Proceeding**"), whereby the Trustee asserted that (among other claims) the execution, delivery, and recording of the Thompson and Boyington Trust Deed against Parcel 1 was a fraudulent transfer to the Thompsons and the Boyingtons that should be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code.

28.     On August 16, 2013, the Bankruptcy Court entered its _Order Granting the Trustee's Motion, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for Entry of an Order Approving a Settlement Agreement and Mutual Release of Claims with Leland R. Thompson, Phyllis N. Thompson, Lee Thompson, Laura Thompson, Carl Boyington and Janice_

8

*Boyington, and Authorizing the Trustee to Consummate the Settlement Agreement and Mutual Release of Claims* [Docket 1225] (the "**Thompson and Boyington Settlement Order**"), whereby (among other settlement terms) the recording of the Thompson and Boyington Trust Deed against Parcel 1 was avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code, the Thompsons and the Boyingtons were paid the amount of One Hundred Eighty Five Thousand Dollars ($185,000.00) (the **"Thompson and Boyington Settlement Payment"**) from the Parcel 1 Allocated Proceeds, the Thompsons and the Boyingtons transferred and assigned the Thompson and Boyington Trust Deed to the Consolidated Estate, and the Thompson and Boyington Trust Deed was ordered automatically preserved for the benefit of the Consolidated Estate pursuant to 11 U.S.C. § 551.

29.    The Trustee and the Investors have engaged in settlement negotiations concerning the recording of the Satterfield Trust Deed, the merits of the Trustee's avoidance claims against the Satterfields, and the allowance of Class 17 Victim Unsecured Claims for the Satterfields against the Consolidated Estate.

30.    As a result of these settlement negotiations, the Trustee and Investors have reached an agreement whereby Investors and the Trustee agree that the recording of the Satterfield Trust Deed against Parcel 1 will be deemed to be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code, the Satterfields will transfer and assign the Satterfield Trust Deed to the Consolidated Estate, and the Investors shall have two Allowed Class 17 Unsecured Claims against the Consolidated Estate, their Claim No. 623 Allowed Unsecured Claim in the amount of $198,816.77, and their Claim No. 614 Allowed Unsecured Claim in the amount of $47,800.21.  Further, both the Trustee and Investors will release and

discharge each other from all further claims and causes of action, including all of the Investors'

filed and unfiled claims against the Consolidated Estate other than their Allowed Class 17

Unsecured Claims, and the Adversary Proceeding will be dismissed with prejudice.

### C.    RELIEF REQUESTED.

1.    By this Motion, the Trustee respectfully asks the Court to enter an order

approving the Agreement, and ratifying the Trustee's execution of the Agreement on behalf of

the Consolidated Estate, pursuant to Federal Rule of Bankruptcy Procedure 9019.

2.    The Trustee believes that the Agreement, and the settlement outlined therein,

are in the best interests of the Debtors, their creditors and the Consolidated Estate.  The

Trustee further believes that he has exercised sound business judgment in entering into the

Agreement.

3.    Typically, in considering whether to approve a settlement, courts consider

the four factors outlined in *In re Kopexa Realty Venture Co.,* 213 B.R. 1020, 1022

(10th Cir. BAP 1997).  Those factors are (a) the probability of success in the litigation, (b) the

difficulties to be encountered in collection, (c) the complexities and expense of the litigation

involved, and (d) the interests of creditors in proper deference to their reasonable views.

4.    Considering these factors, the Agreement is fair, equitable, and in the best

interests of the Consolidated Estate and the Debtors' creditors.

A.    If the Agreement is approved, the Investors shall have two Allowed Class 17

Unsecured Claims against the Consolidated Estate, their Claim No. 623 Allowed Unsecured

Claim in the amount of $198,816.77, and their Claim No. 614 Allowed Unsecured Claim in

the amount of $47,800.21.  In return, the Satterfield Trust Deed will be deemed avoided

pursuant to the Trustee's avoidance powers under the Bankruptcy Code, and the Satterfield

Trust Deed against Parcel 1 will be automatically preserved for the benefit of the Consolidated

Estate pursuant to 11 U.S.C. § 551.  Further, the Satterfield Trust Deed will be deemed to be

transferred and assigned by the Satterfields to the Consolidated Estate.  Thus, in return for the

allowance of the Satterfields' two Allowed Class 17 Unsecured Claims, the Consolidated

Estate will obtain a transfer of the Satterfield Trust Deed.   Accordingly, the Consolidated

Estate is obtaining substantial property rights in return for the allowance of the Satterfields'

two Allowed Class 17 Unsecured Claims.

Without the settlement, the Consolidated Estate would need to expend funds to

litigate the Consolidated Estate's claims against the Investors in order to obtain the relief

obtained through the Agreement.  While the Trustee is confident that he would prevail in

such litigation, the Trustee acknowledges that litigation is not without risk, and that there is

no guarantee of success.  Further, the Trustee is unaware of any basis he would have to

recover his attorneys' fees and costs incurred in litigation against the Investors, even if he

were to succeed on the merits.  Thus, the first *Kopexa* factor weighs in favor of approval of

the Agreement.

B.      The second *Kopexa* factor—difficulties in collection of a judgment—also

weighs in favor of approval of the settlement or at worst is neutral.  In the Adversary

Proceeding, the Trustee is seeking a determination that the execution, delivery, and recording

of the Satterfield Trust Deed against Parcel 1 was a fraudulent transfer to the Satterfields that

should be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code.

The Trustee does not seek money regarding his fraudulent transfer claims; instead, he seeks a

determination that the Satterfield Trust Deed be avoided and preserved for the benefit of the

Consolidated Estate.  The Trustee has obtained this same result under the Agreement.  Thus,

the second *Kopexa* factor either is irrelevant to whether or not the Agreement

should be approved or, in the alternative, it also weighs in favor of approval of the

Agreement.

C.     The Trustee also believes that litigation of his claims against the Investors

could be fairly expensive.  The transactions that the Debtors had with the Investors which

gave rise to recording of the Satterfield Trust Deed are fairly complicated and document

intensive.  Furthermore, there are numerous factual and legal issues which currently exist

with respect to the claims at issue in the Adversary Proceeding, as the foregoing detailed

factual recitations show.  Thus, the third *Kopexa* factor also weighs in favor of approval of

the Agreement.

D.     Finally, the interest of creditors in this Consolidated Case is to recover

assets at a reasonable cost, in light of the circumstances.  Under the Agreement, the

Consolidated Estate will receive substantial property interests (i.e., the assignment of the

Satterfield Trust Deed and preservation of the Satterfield Trust Deed lien for the benefit of the

Consolidated Estate), and will avoid the cost and expense of protracted litigation with the

Investors.  In return, the Consolidated Estate will recognize the Satterfields' two Allowed

Class 17 Unsecured Claims against the Consolidated Estate.  The Trustee reasonably believes

that the results of his settlement would approximate the results that he could hope to obtain at

trial, but without having to incur the cost, expense and further delay of litigation.  Thus, the

fourth *Kopexa* factor also weighs in favor of approval of the Agreement.

5.      Based upon the foregoing, the Trustee believes in his business judgment that the settlement he has negotiated with the Investors should be approved.  Under the Agreement, the Consolidated Estate will receive substantial property interests at very little cost or expense to the Consolidated Estate.   In the Trustee's view, this is a fair and reasonable settlement, and it should be approved by the Court.  *See, e.g., In re George Love Farming, LC,* 2008 Bankr. LEXIS 680, at *18-19 (Bankr. D. Utah March 6, 2008) (approving settlement under *Kopexa* factors); *Shaw v. Anderson (In re Anderson)*, 2006 Bankr. LEXIS 4420, at *23 (Bankr. D. Utah August 14, 2006) (noting that the Court's obligation under Rule 9019 is to "'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness' in order to determine whether the settlement is 'fair and equitable' and in the best interests of the estate") (citations omitted).

WHEREFORE, based upon the foregoing, the Trustee respectfully asks the Court to (a) approve the Agreement, (b) authorize and approve the settlement with the Investors set forth therein, (c) authorize the Trustee to consummate the Agreement according to its terms, and (d) grant the Trustee such other and further relief as the Court deems just and proper.

DATED this 24th day of June, 2014.

                              RAY QUINNEY & NEBEKER P.C.


                              /s/ Douglas M. Monson
                              Michael R. Johnson
                              Douglas M. Monson
                              *Counsel for the Trustee*

**1287594.01/dmm/rqn**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of June, 2014, I caused a true and correct copy of the

foregoing to be served upon the following via first class mail, postage prepaid, addressed as follows:

James W. Anderson
Miller Toone
165 Regent Street
Salt Lake City, UT  84111

Brenda L. Flanders
Lewis Hansen Waldo Belshe & Flanders
8 East Broadway, Suite 410
Salt Lake City UT 84111

David B. Boyce
Attorney at Law
2115 Dallin Street
Salt Lake City UT 84109

Stephen K. Christensen
311 South State Street, Suite 250
Salt Lake City UT 84111

Judith W. Miller
207 Jacob Ryan Ct
Brandon FL 33510

George W. Pratt
Jones Waldo Holbrook & McDonough
170 South Main Street, Suite 1500
Salt Lake City UT 84101

Steven R. Bailey
2454 Washington Boulevard
Ogden UT 84401

and that all attorneys of record in this case also were served electronically via the Court's electronic

noticing system.

/s/ Tricia Pahl_____

# Exhibit A

Michael R. Johnson, Esq. (A7070)
Douglas M. Monson, Esq. (A2293)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email: mjohnson@rqn.com
Email: dmonson@rqn.com

*Counsel for Gil A. Miller, Chapter 11 Trustee of the Reorganized Consolidated Debtors*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>DEE ALLEN RANDALL, et al.,<br><br>Debtors. | **Bankruptcy Case No. 10-37546**<br><br>(Substantively Consolidated with Case Nos. 11-34826, 11-34830, 11-34831, 11-34833 and 11-34834)<br><br>Chapter 11<br><br>Honorable Joel T. Marker<br><br>(Filed via ECF) |

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**
**(Also Relates to Adv. No. 12-02463)**

This *Settlement Agreement and Mutual Release of Claims* (the "**Agreement**") is made

and entered into this 30th day of May, 2014, by and between Gil A. Miller (the "**Trustee**"), who

1

is the post-confirmation trustee and representative of the substantively consolidated and

confirmed Chapter 11 estate of Dee Allen Randall, Horizon Auto Funding, LLC, Independent

Commercial Lending, LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment

Inc. and Horizon Financial & Insurance Group Inc. (collectively, the "**Debtors**"), on the one

hand, and creditors F. R. Satterfield and D. Carol Satterfield a/k/a Carol D. Satterfield, as

trustees under the F.R. Satterfield Family Trust Dated January 29, 1997, and F.R. Satterfield and

D. Carol Satterfield a/k/a Carol D. Satterfield in their individual capacities (collectively the

"**Satterfields**" or "**Investors**"), on the other hand.  The Trustee and the Satterfields are

sometimes collectively referred to herein as the "**Parties**," and individually as a "**Party**."

## RECITALS

1.     Dee Allen Randall ("**Randall**") commenced Chapter 11 Case No. 10-37546 (the

"**Randall Case**") on or about December 20, 2010 (the "**Randall Petition Date**") by filing a

voluntary petition for personal bankruptcy relief under Chapter 11 of Title 11 of the United

States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the District

of Utah (the "**Bankruptcy Court**").

2.     Between the Randall Petition Date and September 29, 2011, Randall continued to

operate as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.     As of September 29, 2011, Randall owned and was the president or manager, as

the case may be, of each of Horizon Auto Funding, LLC, Independent Commercial Lending,

LLC, Horizon Financial Center I, LLC, Horizon Mortgage and Investment Inc. ("**Horizon**

2

Mortgage"), and Horizon Financial & Insurance Group Inc. ("**Horizon Financial**") (hereinafter, collectively the "**Corporate Debtors**").

4.      On or about September 29, 2011, an Order was entered by the Bankruptcy Court approving the appointment of the Trustee in the Randall Case.  [Randall Case, Doc. 247]

5.      On October 12, 2011 (the "**Corporate Debtors Petition Date**"), the Trustee, in his capacity as Chapter 11 Trustee in the Randall Case, caused a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to be filed with the Bankruptcy Court for each of the Corporate Debtors (the "**Corporate Debtor Cases**").

6.      On January 27, 2012, the Bankruptcy Court entered its Order substantively consolidating the separate bankruptcy estates of each of the Debtors, with the Corporate Debtor Cases being consolidated with and into the Randall Case (the "**Consolidated Estate**"), but effective only as of the date of the consolidation Order.

7.      On October 28, 2013, the Bankruptcy Court entered its *Order Confirming the Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1367] (the "**Confirmation Order**").

8.      The Confirmation Order confirmed the *Chapter 11 Trustee's Liquidating Plan of Reorganization Dated September 9, 2013* [Docket No. 1268] (the "**Plan**").

9.      The Plan became Effective on November 27, 2013 (the "**Effective Date**").

10.     As set forth in Article 6.2 of the Plan, at all relevant times, including after the entry of the Confirmation Order and after the Effective Date, the Trustee remains the representative of the Consolidated Estate and has the sole right to administer the Consolidated

Estate after confirmation of the Plan, including but not limited to by holding all rights, powers,

and duties of a trustee under Chapter 11 of the Bankruptcy Code, as well as those rights, powers

and duties afforded by the Plan and the Confirmation Order.

11.    Prior to the Petition Date, the Satterfields placed certain monies with one or more

of the Debtors, pursuant to certain promissory notes or other instruments (the "**Notes**").

12.    The Trustee asserts that the Debtors were engaged in a Ponzi scheme, and that in

a Ponzi scheme any investors, including the Satterfields, are only entitled to a return of unpaid

principal or, in other words, are only entitled to receive a claim for the difference between the

total amount of the investment and any prior payments made on the investment, however

denominated or accounted for.

13.    Prior to the Randall Petition Date, Randall executed and delivered to the

Satterfields a Second Trust Deed (the "**Satterfield Trust Deed**") dated August 14, 2008,

purporting to secure payment of the indebtedness evidenced by a promissory note payable to the

Satterfields in the principal sum of $200,000.00 dated August 14, 2008, and listing Randall as

trustor, Bonneville Superior Title Company, Inc., as trustee, and the Satterfields as beneficiary.

The legal description for the Satterfield Trust Deed describes a parcel of improved real property

located at 1072 S. Lloyd in Fruit Heights, Davis County, Utah under Tax Parcel No. 07-082-

0016 (referred to herein as "**Parcel 1**").

14.    The legal description of Parcel 1 is attached hereto as **Exhibit A** and incorporated

herein.  Randall was the owner of Parcel 1 at the time that the Satterfield Trust Deed was

executed and delivered to the Satterfields.

15.    The Satterfield Trust Deed covering Parcel 1 was recorded with the Davis County, Utah Recorder on August 18, 2008 as Entry No. 2386868 in Book 4596 at Page 592.

16.    Prior to the execution and recording of the Satterfield Trust Deed, Randall had executed and delivered to Leland R. Thompson and Phyllis N. Thompson (collectively the "**Thompsons**") and to Carl Boyington and Janice Boyington (collectively the "**Boyingtons**") (the Thompsons and the Boyingtons are referred to collectively herein as the "**Thompsons and Boyingtons**") a Trust Deed (the "**Thompson and Boyington Trust Deed**") dated July 22, 2008, which states that it secures payment of the indebtedness evidenced by a promissory note payable in the principal sum of $250,000.00 dated July 22, 2008.

17.    The Thompson and Boyington Trust Deed lists Randall as trustor, Bonneville Superior Title Company, Inc., as trustee, and the Thompsons and the Boyingtons as the beneficiaries.  The Thompson and Boyington Trust Deed was recorded with the Davis County, Utah Recorder on July 23, 2008 as Entry No. 2381448 in Book 4579 at Page 458.  The legal description of the Thompson and Boyington Trust Deed covers Parcel 1.

18.    At the time that the Satterfield Trust Deed was executed and delivered to the Satterfields, the Satterfields acknowledged that the Thompson and Boyington Trust Deed was a senior trust deed lien on Parcel 1.

19.    The improved real property located at 1072 S. Lloyd in Fruit Heights, Davis County, Utah, also includes a separate parcel under Tax Parcel No. 07-082-0040 that was owned by Horizon Financial (referred to herein as "**Parcel 2**").  The legal description of the Satterfield Trust Deed did not describe Parcel 2.

20.    Subsequent to his appointment, the Trustee, pursuant to a written Order of the Bankruptcy Court (the "**1072 S. Lloyd Sale Order**") [Docket 535], sold both Parcel 1 and Parcel 2 (collectively the "**1072 S. Lloyd Property**") to a third party, and the Trustee has since received certain net sales proceeds (the "**1072 S. Lloyd Net Proceeds**") relating to such sale, with the disposition of the 1072 S. Lloyd Net Proceeds being subject to the terms set forth in the 1072 S. Lloyd Sale Order.

21.    The 1072 S. Lloyd Net Proceeds are $485,827.69.

22.    The allocation of the 1072 S. Lloyd Net Proceeds to the sale of Parcel 1 that was originally owned by Randall and against which both the Thompson and Boyington Trust Deed and the Satterfield Trust Deed were recorded is $242,913.84 (the "**Parcel 1 Allocated Proceeds**").

23.    The allocation of the 1072 S. Lloyd Net Proceeds to the sale of Parcel 2 that was owned by Horizon Financial is $242,913.84 (the "**Parcel 2 Allocated Proceeds**").

24.    The Trustee has filed a Complaint with the Bankruptcy Court against the Satterfields styled as *Miller v. Satterfield*, Adversary No. 12-2463 (the "**Satterfield Adversary Proceeding**"), whereby the Trustee has asserted that the execution, delivery, and recording of the Satterfield Trust Deed against Parcel 1 was a fraudulent transfer to the Satterfields that should be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code.

25.    The Trustee also filed an Amended Complaint with the Bankruptcy Court against the Thompsons and the Boyingtons styled as *Miller v. Thompson & Boyington*, Adversary No. 12-2462 (the "**Thompson and Boyington Adversary Proceeding**"), whereby the Trustee

6

asserted that (among other claims) the execution, delivery, and recording of the Thompson and Boyington Trust Deed against Parcel 1 was a fraudulent transfer to the Thompsons and the Boyingtons that should be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code.

26. On August 16, 2013, the Bankruptcy Court entered its *Order Granting the Trustee's Motion, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for Entry of an Order Approving a Settlement Agreement and Mutual Release of Claims with Leland R. Thompson, Phyllis N. Thompson, Lee Thompson, Laura Thompson, Carl Boyington and Janice Boyington, and Authorizing the Trustee to Consummate the Settlement Agreement and Mutual Release of Claims* [Docket 1225] (the "**Thompson and Boyington Settlement Order**"), whereby (among other settlement terms) the recording of the Thompson and Boyington Trust Deed against Parcel 1 was avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code, the Thompsons and the Boyingtons were paid the amount of One Hundred Eighty Five Thousand Dollars ($185,000.00) (the "**Thompson and Boyington Settlement Payment**") from the Parcel 1 Allocated Proceeds, the Thompsons and the Boyingtons transferred and assigned the Thompson and Boyington Trust Deed to the Consolidated Estate, and the Thompson and Boyington Trust Deed was ordered automatically preserved for the benefit of the Consolidated Estate pursuant to 11 U.S.C. § 551.

27. The Trustee and the Satterfields have engaged in settlement negotiations concerning the recording of the Satterfield Trust Deed and the merits of the Trustee's avoidance claims against the Satterfields asserted in the Satterfield Adversary Proceeding.

28.    As a result of these settlement negotiations, the Trustee and the Satterfields have reached an agreement whereby the Satterfields and the Trustee agree that the recording of the Satterfield Trust Deed against Parcel 1 will be deemed to be avoided pursuant to the Trustee's avoidance powers under the Bankruptcy Code, the Satterfields will transfer and assign the Satterfield Trust Deed to the Consolidated Estate, and the Satterfields shall have their respective Allowed Class 17 Victim Unsecured Claims against the Consolidated Estate in the Victim Net Claim Amounts set forth in Section D below.  Further, both the Trustee and Satterfields will release and discharge each other from all further claims and causes of action, including all of the Satterfields' filed and unfiled claims against the Consolidated Estate, and the Satterfield Adversary Proceeding will be dismissed with prejudice.

### AGREEMENT

Based upon the foregoing Recitals, which are expressly incorporated herein by this reference, and for good and valuable other consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be bound, stipulate and agree as follows:

A.    Court Approval:  The Parties expressly acknowledge and agree that this Agreement and the Trustee's performance hereunder is subject to the approval of the Bankruptcy Court.  The Trustee shall, as soon as reasonably possible after execution of this Agreement by the Parties, seek Bankruptcy Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "**Approval Order**").

B.    Avoidance of the Satterfield Trust Deed:  The Satterfields and the Trustee agree that the Approval Order shall order and decree that the Satterfield Trust Deed is avoided

8

pursuant to the Trustee's avoidance powers under the Bankruptcy Code, and the Satterfield Trust

Deed against Parcel 1 is automatically preserved for the benefit of the Consolidated Estate

pursuant to 11 U.S.C. § 551. The Approval Order shall further order and decree that the

Satterfield Trust Deed is deemed to be transferred and assigned by the Satterfields to the

Consolidated Estate.

      C.    <u>Dismissal of the Adversary Proceeding with Prejudice</u>. After the Bankruptcy

Court has entered its Approval Order in the form contemplated by this Agreement, and the same

becomes final and non-appealable, the Trustee and the Satterfields shall (unless the Bankruptcy

Court has administratively dismissed the Satterfield Adversary Proceeding already) execute and

file with the Bankruptcy Court a Stipulation for the Dismissal with Prejudice of the Satterfield

Adversary Proceeding pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and

Bankruptcy Rule 7041 (the "**Dismissal Stipulation**"), with each of the Parties to bear their

respective attorney's fees and costs, or alternatively, the Trustee shall ensure that the Satterfield

Adversary Proceeding is dismissed by the Bankruptcy Court.

      D.    <u>The Satterfields' Allowed Class 17 Victim Unsecured Claims</u>: The Approval

Order shall also order and decree that the Investors have two Allowed Class 17 Victim

Unsecured Claims (collectively the "**Allowed Class 17 Victim Unsecured Claims**") against the

Consolidated Estate as follows: (1) in the amount of $198,816.77 in connection with their Proof

of Claim No. 623 (the "**Claim No. 623 Allowed Unsecured Claim**"), and (2) in the amount of

$47,800.21 in connection with their Proof of Claim No. 614 (the "**Claim No. 614 Allowed

Unsecured Claim**"). The Allowed Class 17 Victim Unsecured Claims are in the amounts of the

Victim Net Claim Amounts for the Satterfields that have been calculated by the Trustee as follows:  (3) the total cash invested with the Debtors by the Satterfields in connection with Claim No. 623, which was $200,000.00, minus the total cash disbursed by the Debtors to the Satterfields in connection with Claim No. 623 (whether designated as interest, repayment of principal, or any other designation), which was $1,183.23, for an Allowed Class 17 Victim Unsecured Claim of **$198,816.77** (which is equal to a 1% return of the Satterfields' total cash investment in connection with Claim No. 623); and (4) the total cash invested with the Debtors by the Satterfields in connection with Claim No. 614, which was $200,000.00, minus the total cash disbursed by the Debtors to the Satterfields in connection with Claim No. 614 (whether designated as interest, repayment of principal, or any other designation) which was $152,199.97, for an Allowed Class 17 Victim Unsecured Claim of **$47,800.03** (which is equal to a 76% return of the Satterfields' total cash investment in connection with Claim No. 614).  The Allowed Class 17 Victim Unsecured Claims will be treated and paid, if at all, only in accordance with the confirmed Plan.

  E. <u>Entry of Approval Order</u>.  In the event the Bankruptcy Court fails to enter the Approval Order in the form contemplated by this Agreement, or in the event the Bankruptcy Court enters the Approval Order in the form contemplated by this Agreement but the same does not become final and non-appealable, then the avoidance of the Satterfield Trust Deed shall be null and void, the transfer and assignment of the Satterfield Trust Deed to the Consolidated Estate shall be null and void, the Parties shall have no obligation to execute and file the Dismissal Stipulation, the Investors shall not be deemed to have the Allowed Class 17 Victim

10

Unsecured Claims contemplated by this Agreement, this Agreement shall become null and void, and the Parties shall be restored to the positions they enjoyed prior to their entering into this Agreement.

   F. <u>Release of Claims Against the Satterfields</u>.  Effective only upon (1) the entry of the Approval Order in the form contemplated by this Agreement, and (2) the Approval Order in the form contemplated by this Agreement becoming final and non-appealable, the Trustee releases and forever discharges the Satterfields and the Satterfields' trustees, beneficiaries, agents, attorneys, representatives, predecessors, successors and assigns (collectively, the "**Satterfield Release Parties**") from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent, that the Trustee may have against the Satterfield Release Parties, from the beginning of time to the date hereof, based upon any claims, acts or omissions of the Satterfield Release Parties relating to the Notes or the execution, delivery and recording of the Satterfield Trust Deed; *provided, however*, that the release provided under this paragraph is not a release of any claims or causes of action arising out of or resulting from a default under or breach of this Agreement.

   G. <u>Representations of the Satterfields</u>.  The Satterfields jointly and severally represent and warrant that the Satterfields (including F.R. Satterfield and Carol D. Satterfield in their capacities as trustees of the the F.R. Satterfield Family Trust Dated January 29, 1997) have full power and authority to enter into this Agreement, that there has been no assignment or other

transfer of the Satterfields' asserted lien against Parcel 1 of the 1072 S. Lloyd Property pursuant

to the Satterfield Trust Deed or the assignment or other transfer of any other claim, cause of

action or other liability which might affect or impair the releases set forth in this Agreement, and

that the Satterfields have not filed any proofs of claims or asserted any claims in the Bankruptcy

Case other than those disclosed in this Agreement or set forth in the records of the Debtors'

bankruptcy cases.

   H.   <u>Release of Claims Against Trustee and the Consolidated Estate</u>. Effective upon

the entry of the Approval Order in the form contemplated by this Agreement, and the Approval

Order in the form contemplated by this Agreement becoming final and non-appealable, the

Satterfields jointly and severally release and forever discharge the Consolidated Estate and the

Trustee, and any one or all of the Trustee's associates, affiliates, predecessors (other than the

Debtors), successors, heirs, assigns, managers, subsidiaries, parents, officers, directors, partners,

attorneys, and agents, and the employees, agents, attorneys, representatives, predecessors,

successors and assigns thereof (collectively, the "**Trustee Release Parties**") from any and all

manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities,

claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of

any nature whatsoever, known or unknown, fixed or contingent (including but not limited to

Claim No. 614 filed on March 9, 2012 by F.R. Satterfield, Trustee of the F.R. Satterfield Family

Trust in the amount of $258,789.04 in the Randall Case, Claim No. 623 filed on March 9, 2012

by F.R. Satterfield and Carol D. Satterfield, Trustees of the F.R. Satterfield Family Trust Dated

January 29, 1997 in the amount of $269,611.28, and any other proofs of claim that the

Satterfields have filed or asserted or could have filed or asserted in either the Randall Case or the Corporate Debtor Cases) that the Satterfields have or may have against the Trustee Release Parties from the beginning of time to the date of this Agreement; *provided, however,* the release provided under this paragraph is not a release of any claims or causes of action arising or resulting from a default under or breach of this Agreement, and *provided further* that this release is not a release of the Allowed Class 17 Victim Unsecured Claims granted to the Satterfields pursuant to Section D of this Agreement.  As part of this release, the Satterfields acknowledge and agree that they are releasing any claim that the Trustee is obligated to distribute any of the 1072 S. Lloyd Net Proceeds to them, and this Agreement, upon entry of the Approval Order, shall satisfy all requirements and conditions imposed by the Bankruptcy Court in the 1072 S. Lloyd Sale Order for the disposition by the Trustee of the 1072 S. Lloyd Net Proceeds.

I.    Reservation of Rights:  The Trustee and the Satterfields hereby expressly reserve all of their rights and claims against all other parties, including an express reservation by the Satterfields of all of the rights and claims of the Satterfields against The Union Central Life Insurance Company or any of its affiliates (collectively "**Union Central**") and against any other Facilitators (as defined in the confirmed Plan).

J.    Representations of the Trustee.  The Trustee represents that, as the Court-authorized representative of the Debtors and the Debtors' substantively Consolidated Estate, he has full power and authority to enter into this Agreement on behalf of the Debtors and the Debtors' Consolidated Estate, subject to approval of the same by the Bankruptcy Court.

13

K.    Attorneys' Fees and Costs. Each of the Parties shall bear their own respective

attorneys' fees and costs incurred in connection with entering into, obtaining Court approval of,

and implementing this Agreement.   In the event suit is brought by either Party to enforce or

interpret the terms of this Agreement, the prevailing Party shall be entitled to an award of his or

her reasonable attorneys' fees and costs incurred.

L.    Effectuation of Agreement. The Parties agree to perform any other or further

acts, and execute and deliver any other or further documents, as may be necessary or appropriate

to implement this Agreement, including without limitation, to execute and deliver if appropriate,

any documents necessary to obtain approval of this Agreement from the Bankruptcy Court.

Except as specifically required by any order entered by the Bankruptcy Court, the Trustee may

execute any documents necessary to effectuate this Agreement without further notice and

hearing.

M.    Binding Effect. Subject to entry of the Approval Order in the form contemplated

by this Agreement, this Agreement shall be binding upon each of the Parties, and upon their

respective successors-in-interest, heirs and/or assigns.  All representations and warranties made

herein shall survive execution of this Agreement and shall at all times subsequent to the

execution of this Agreement remain binding and fully enforceable.

N.    Bankruptcy Court Jurisdiction. Any claims or causes of action, whether legal or

equitable, arising out of or based upon this Agreement or related documents, including but not

limited to interpretation and/or enforcement of this Agreement, shall be commenced in the

14

Bankruptcy Court. The Parties hereby consent to the jurisdiction, venue and process of the

Bankruptcy Court.

O.    Governing Law. This Agreement is made pursuant to and shall be governed by

laws of the State of Utah and, where applicable, federal bankruptcy law.

P.    Construction of Agreement. This Agreement shall be construed as a whole in

accordance with its fair meaning and in accordance with governing law. This Agreement has

been negotiated by each of the Parties (or their respective counsel), and the language of the

Agreement shall not be construed for or against any particular Party.

Q.    Voluntary Agreement. This Agreement has been carefully read by the Parties and

has been reviewed by the Parties' respective legal counsel (or, if not represented, such Parties

had the opportunity to engage counsel to review the Agreement); the contents hereof are known

and understood by the Parties; and each of the Parties acknowledges that such Party is under no

duress or undue influence and that each of the Parties executes this Agreement as his or her own

free and voluntary act.

R.    Integration and Amendments. This Agreement shall constitute the entire

agreement and understanding of and between the Parties in relation to matters described herein,

and no statements, representations, inducements or promises other than as expressly set forth

herein have been given or received by any of the Parties (nor by their respective agents,

employees, attorneys or representatives) in return for same. All negotiations, oral conversations,

statements, representations and/or agreements leading up to the execution of this Agreement are

merged herewith and shall not be the basis for any legal rights, claims or defenses in relation to

15

any litigation or otherwise.  No parol or extrinsic evidence may be used to contradict any of the terms of this Agreement.  Any amendment to this Agreement must be in writing, signed by duly authorized representatives of the Parties hereto, and specifically state the intent of the Parties to amend this Agreement.

     S.    <u>Severability</u>.  To the extent that any portion of this Agreement is held unenforceable by a court, tribunal or arbiter of competent jurisdiction, the remainder of this Agreement shall remain binding and enforceable, provided that the primary purpose of the Agreement is not frustrated.

     T.    <u>Counterparts</u>.  This Agreement may be executed by the Parties hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the terms of this Agreement, will be deemed an original, with all such counterparts taken together constituting one and the same instrument.  Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed Agreement.

    IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date and year first above written.

                                   F.R. SATTERFIELD, as Trustee under the F.R. Satterfield Family Trust Dated January 29, 1997

                                   F.R. SATTERFIELD, an individual

16

*D. Carol Satterfield*

**D. CAROL SATTERFIELD** a/k/a Carol D.
**Satterfield, as Trustee under the F.R. Satterfield**
**Family Trust Dated January 29, 1997**


*D. Carol Satterfield*

**D. CAROL SATTERFIELD** a/k/a **Carol D.**
**Satterfield, an individual**


**GIL A. MILLER, solely in his capacity as**
**the post-confirmation Trustee and representative**
**of the substantively consolidated and confirmed**
**Chapter 11 Estate**

*Gil Miller, Trustee*

By:   Gil A. Miller, Trustee

**EXHIBIT A to SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**

**Legal Description of Parcel 1 of the 1072 S. Lloyd Property**

**1072 S. Lloyd Property**

**Parcel 1:**

The following real property located in Davis County, State of Utah, having a street address of
1072 South Lloyd Road, Fruit Heights, Utah 84037 (also known as 1100 South Highway 89,
Fruit Heights, Utah 84037):

Beginning 50.0 feet North of the Southwest corner of Section 1, Township 3 North, Range 1
West, Salt Lake Meridian, in the City of Fruit Heights, and running thence North 200.0 feet;
thence East 352.7 feet, more or less, to a point 50.0 feet perpendicular Westerly from the West
no-access line of Highway F-212 (also 135.0 feet perpendicular Westerly from the center line of
Highway F-212); thence Southerly 212.23 feet along a curve to the right parallel to said Highway
to a point due East of the point of beginning, thence West 281.7 feet, more or less, to the point of
beginning.

Tax Parcel No. 07-082-0016

1275347.02/rqn

18